**THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF IOWA**

| | |
|---|---|
| In re MercyOne Data Breach Litigation | Case No. 4:23-cv-00195-SHL-SBJ |
| | **JURY TRIAL DEMANDED** |

## DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' CLASS ACTION COMPLAINT

Dated: December 1, 2023                Respectfully submitted,


Gordon Rees Scully Mansukhani LLP
666 Grand Avenue, Suite 1701
Des Moines, Iowa 50309

*Attorneys for Mercy Health Network, Inc. and*
*Mercy Medical Center – Clinton, Inc.*

## TABLE OF CONTENTS

Introduction ............................................................................................................................. 1

Overview of Plaintiffs' Complaint .......................................................................................... 2

Argument ................................................................................................................................. 6

    I.    Plaintiffs' Complaint Must Be Dismissed Because Plaintiffs Lack Standing. ................... 6

        **A.**    Alleging a Fear of Harm Does Not Suffice to Establish Standing. ............................. 7

        **B.**    Plaintiffs' Sole Allegations of Injury Are Not Compensable Under Iowa Law and/or Eighth Circuit Authority. ........................................................................................................ 9

        **C.**    Plaintiffs Do Not Trace Any Alleged Harm to Mercy. .............................................. 11

    II.    Plaintiffs' Complaint Should Be Dismissed For Failure To State Legally Cognizable Claims And Damages. ............................................................................................................. 12

        **A.**    Plaintiffs Fail to Plead a Cognizable Negligence Claim. ........................................... 12

        **B.**    Plaintiffs Fail to Allege Viable Contract Claims. ....................................................... 14

        **C.**    Plaintiffs' Unjust Enrichment Claim Must Be Dismissed Because Mercy Has Retained No Unjust Benefit. ................................................................................................... 17

        **D.**    Plaintiffs' Breach of Confidence and Breach of Fiduciary Duty Counts Fail Because any Such Duties Do not Apply. ............................................................................................. 18

        **E.**    Count VIII Must be Dismissed for Failure to Adequately Plead Declaratory Relief. 19

Conclusion ............................................................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*Adams v. Eureka Fire Prot. Dist.*,
  352 F. App'x 137 (8th Cir. 2009) ........................................................................... 13

*Aetna Casualty & Surety Co. v. General Dynamics Corp.*,
  968 F.2d 707 (8th Cir.1992) ................................................................................... 20

*Blankenship v. USA Truck, Inc.*,
  601 F.3d 852 (8th Cir. 2010) ................................................................................. 13

*Brown v. Kerkhoff*,
  279 F.R.D. 479 (S.D. Iowa 2012). .......................................................................... 17

*Carlsen v. GameStop, Inc.*,
  833 F.3d 903 (8th Cir. 2016) ........................................................................... 15, 18

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013) .......................................................................................... 1, 6, 9

*Clark v. Estate of Rice ex rel. Rice*,
  653 N.W.2d 166 (Iowa 2002) ............................................................................ 2, 10

*Cnty. of Mille Lacs v. Benjamin*,
  361 F.3d 460 (8th Cir. 2004) ................................................................................. 19

*Des Moines Flying Serv., Inc. v. Aerial Servs. Inc.*,
  880 N.W.2d 212 (Iowa 2016) ................................................................................ 14

*Dodd v. Jones*,
  623 F.3d 563 (8th Cir. 2010) ................................................................................. 13

*Fed. Ins. Co. v. Sammons Fin. Grp., Inc.*,
  595 F. Supp. 2d 962 (S.D. Iowa 2009) .................................................................. 20

*Fox v. Iowa Health Sys.*,
  399 F. Supp. 3d 780 (W.D. Wis. 2019) .................................................................. 14

*FTC v. Johnson*,
  800 F.3d 448 (8th Cir. 2015) ................................................................................. 13

*In re SuperValu, Inc.*,
  870 F.3d 763 (8th Cir. 2019) .......................................................................... passim

*In re SuperValu, Inc.*,
  925 F.3d 955 (8th Cir. 2019) ................................................................. 7, 10, 13, 18

*In re Target Corp. Data Sec. Breach Litig.*,
  66 F. Supp. 3d 1154 (D. Minn. 2014) .................................................................. 14

*Iowa Waste Sys., Inc. v. Buchanan Cnty.*,
  617 N.W.2d 23 (Iowa Ct. App. 2000) .................................................................. 17

*J.A.H. ex rel. R.M.H. v. Wadle & Assocs., P.C.*,
  589 N.W.2d 256 (Iowa 1999) .............................................................................. 13

*Kosmacek v. Farm Serv. Co-op. of Persia*,
  485 N.W.2d 99 (Iowa Ct. App. 1992) .................................................................... 8

*Kuhns v. Scottrade, Inc.*,
  868 F.3d 711 (8th Cir. 2017) ............................................................................... 15

*Kunde v. Estate of Bowman*,
  920 N.W.2d 803 (Iowa 2018) .............................................................................. 16

*Kurth v. Van Horn*,
  380 N.W.2d 693 (Iowa 1986) .............................................................................. 19

*Maasdam v. Estate of Maasdam*,
  24 N.W.2d 316 (Iowa 1946) ................................................................................ 16

*Meardon v. Reg.*,
  994 F.3d 927 (8th Cir. 2021), .............................................................................. 14

*Mills* to *v. Guthrie Cnty. Rural Elec. Coop. Ass'n*,
  454 N.W.2d 846 (Iowa 1990) ........................................................................ 2, 10

*Nelson v. Todd's Ltd.*,
  426 N.W.2d 120 (Iowa 1988) .............................................................................. 14

*Nw. Airlines, Inc. v. Am. Airlines, Inc.*,
  989 F.2d 1002 (8th Cir. 1993) ............................................................................. 20

*Olson v. Neiman's Ltd.*,
  579 N.W.2d 299 (Iowa 1998) ................................................................................ 8

*Orkin Exterminating Co. v. Burnett*,
  160 N.W.2d 427 (Iowa 1968) ................................................................................ 8

*Richards v. Midland Brick Sales Co., Inc.*,
  551 N.W.2d 649 (Iowa App.1996) ....................................................................... 14

*Scott v. Grinnell Mut. Reinsurance Co.*,
  653 N.W.2d 556 (Iowa 2002) .............................................................................. 16

*Scottsdale Ins. Co. v. Avery Tech. Res., Inc.*,
   2023 WL 2441628 (S.D. Iowa Jan. 17, 2023) .......................................................... 19

*Spokeo, Inc. v. Robins*,
   136 S.Ct. 1540 (2016) ................................................................................................... 1

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) .................................................................................................. 6

*Tsao v. Captiva MVP Rest. Partners, LLC*,
   986 F.3d 1332 (11th Cir. 2021) .................................................................................... 7

*Wilson v. J.B. Hunt Transport, Inc.*,
   2022 WL 20273042 (W.D. Ark., Oct. 6, 2022) ............................................... 7, 8, 19

**Statutes**

Iowa Code Ann. §§ 715D ........................................................................................... 13

**Other Authorities**

Iowa Senate File 262 ................................................................................................... 13

U.S. Gov't Accountability Office, GAO-07-737, Personal Information: Data Breaches
   are Frequent, but Evidence of Resulting Identity Theft is Limited; However the
   Full Extent is Unknown (2007) ............................................................................ 9, 11

## INTRODUCTION

Following public disclosure of a data breach, Plaintiffs filed a class action against Mercy—a medical network operating various hospitals and clinics in the Midwest.  Reciting generalized allegations about data breaches, the Plaintiffs purport to allege a series of common law.  While Plaintiffs volley multiple theories of relief, those claims all suffer from two overarching flaws.  First, the Plaintiffs fail to allege cognizable damages—a  prerequisite to all of Plaintiffs' claims.  Second, the Plaintiffs do not allege the elements of their purported claims.

First, pursuant to Supreme Court authority, Plaintiffs can only pursue a claim where they suffered an existing injury amenable to redress.  The allegation of a risk of future injuries does not suffice absent an imminent and substantial risk that actual harm will occur. *Clapper v. Amnesty Int'l USA,* 568 U.S. 398, 409 (2013); *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1548 (2016).  Applying that standard to a data breach, the Eighth Circuit affirmed dismissal of analogous claims following a data breach precisely because the plaintiffs solely allege the risk of future harm and did not allege current financial harm.  *In re SuperValu, Inc.*, 870 F.3d 763 (8th Cir. 2017).

As in *SuperValu*, Plaintiffs in this case do not allege any current injury.  For example, they do not allege that they bore personal liability for fraudulent purchases perpetrated by a cyber-criminal.  Nor do Plaintiffs allege that they incurred out-of-pocket expenses remedying any fraudulent use of their personal information.  Instead, Plaintiffs simply allege that there is a "risk" of future injury and they "fear" the potential for future injury.  (Complaint, ¶¶ 107-109, 126, 173).  This is the type of speculation *SuperValu* deemed insufficient to support a valid claim: "[b]ecause plaintiffs have not alleged a substantial risk of future identity theft, the time they spent protecting themselves against this speculative threat cannot create an injury." *Id.*, 870 F.3d at 771-2.

Anticipating the impact of *SuperValu*, the Plaintiffs allege that they suffered "anxiety" or other emotional distress following the data breach.  However, emotional distress damages are not

1

recoverable absent intentional conduct by the defendant or a physical injury to the plaintiff.  *Clark v. Estate of Rice ex rel. Rice*, 653 N.W.2d 166, 169 (Iowa 2002); *Mills v. Guthrie Cnty. Rural Elec. Coop. Ass'n*, 454 N.W.2d 846, 852 (Iowa 1990).  Plaintiffs do not allege that Mercy engaged in intentional conduct, let alone that they suffered a physical injury.  Accordingly, their allegations of emotional distress (even if true) do not support a viable claim against Mercy. Because such damages are required to establish standing, their claims fail and must be dismissed.

Second, in addition to failing to allege a cognizable injury, Plaintiffs also fail to plead the requisite elements of a valid claim.  First, their claims for negligence (Counts I and II) fail because Iowa does not recognize a common law duty to protect personal information and the economic loss doctrine bars any common law claims for negligence.  Second, any alleged claims for breach of contract (Count III and IV) fail because the Plaintiffs do not plead that Mercy contractually agreed to protect personal information and breached any express contractual obligations.  Third, any alleged claim for unjust enrichment (Count V) fails because the Plaintiffs have not alleged that Mercy received and retained any alleged unjust enrichment from the data breach.  Finally, any claims for breach of confidence (Count VI) and breach of fiduciary duty (Count VII) fail because Iowa law does not recognize any such claims.

While cyber criminals breached one of Mercy's computers, Mercy quickly remedied that breach—thereby avoiding injury to the Plaintiffs.  Therein lies why the Plaintiffs have not alleged any actual injuries.  Under Eighth Circuit authority, the Plaintiffs cannot circumvent the absence of a cognizable injury by pleading civil claims contrary to established precedent.  Accordingly, Mercy respectfully requests that this Court dismiss the Plaintiffs' claims with prejudice.

## OVERVIEW OF PLAINTIFFS' COMPLAINT

Prior to detailing the legal deficiencies in Plaintiffs' purported claims, Mercy will briefly detail the Plaintiffs' allegations.  Mercy does not agree with those allegations or admit those

allegations, but instead summarizes them because even if those allegations were true, the Plaintiffs still cannot plead a valid claim against Mercy.

***

On or about April 4, 2023, Mercy learned of unauthorized access to one of its computer systems.  (Complaint, ¶ 33).  Thereafter, Mercy notified prior patients of the breach and the potential exposure of "Private Information."  (*Id.* at ¶ 34).[1]  Mercy's notice provided impacted patients the option to participate in free security prevention measures (such as credit monitoring), advised on protecting themselves from injury, and provided access to a free call center to inquire about the breach and protection against injury. (*Id.* at ¶ 35).  Plaintiffs do not allege whether they availed themselves of these free options (and if not, how they can viably claim that they in fact feared any injury whatsoever), but instead, broadly claim that they fear the potential for future injury.  Of note, none of the Plaintiffs actually allege that they in fact have suffered a penny of financial injury.  To illustrate the point, Mercy will identify each Plaintiff and summarize their individual allegations of alleged injury.

*Tiffany Harris*: Ms. Harris alleges that the breach resulted in the disclosure of her name, date of birth, address, and social security number. (*Id.* at ¶ 121).  She does not allege that she in fact suffered any financial loss from the alleged disclosure of information, but instead alleges a "loss of privacy," "damages to and diminution in the value of her Private Information" and the risk of "imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse" of personal information.  (*Id.* at ¶¶ 122-124).  Even though she was offered free credit monitoring, Ms. Harris alleges that she "spend[s] significant time … self-monitoring her

---

[1] The Plaintiffs do not allege whether the threat actors exfiltrated particular information, but instead reference "Private Information"—a term defined to broadly include virtually every form of information.  (*Id.* at ¶ 1).

accounts and credit reports to ensure no fraudulent activity has occurred." (*Id.* at ¶ 125). As in *SuperValu*, Ms. Harris predicates her claim on "[t]he substantial risk of imminent harm and loss of privacy…" (*Id.* at ¶ 126).

**Rebecca Oberdorf**:  Like Ms. Harris, Ms. Oberdorf alleges that Mercy possesses personal identification information and personal health information.  Like Ms. Harris, Ms. Oberdorf does not allege that she in fact suffered any financial loss from the alleged disclosure of information. Instead, Ms. Oberdorf copies Ms. Harris' allegations verbatim and alleges "damages to and diminution in the value of her Private Information" and the risk of "imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse" of personal information.  (*Id.* at ¶¶ 133-134). Ms. Oberdorf predicates her claim on an "increased, substantial, and continuing risk" of potential identity theft—as opposed to an actual injury from an actual incident of identity theft. (*Id.* at ¶ 137).

**Michael Prins**: Like Ms. Harris, Mr. Prins alleges that Mercy possesses personal identification information and personal health information.  Like the plaintiff in *SuperValu*, Mr. Prins claims actual injury due to "time spent dealing with the Data Breach and the increased risk of fraud resulting from the Data Breach and/or monitoring his accounts for fraud." (*Id.* at ¶ 141). Like Ms. Harris and Ms. Oberdorf, Mr. Prins does not allege that he in fact suffered any financial loss from the alleged disclosure of information.  Instead, he copies Ms. Harris' allegations and alleges "damages to and diminution in the value of his Private Information" and the risk of "imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse" of personal information.  (*Id.* at ¶¶ 144-145). As in *SuperValu*, Mr. Prins predicates his claim on an "increased, substantial, and continuing risk" of potential identity theft— as opposed to an actual injury from an actual incident of identity theft. (*Id.* at ¶ 148).

*Jennifer Medenblik*: Like the other Plaintiffs, Ms. Medenblik alleges that Mercy possesses personal identification information and personal health information.  Like the plaintiff in *SuperValu*, Ms. Medenblik claims actual injury due to "time spent dealing with the Data Breach and the increased risk of fraud resulting from the Data Breach and/or monitoring her accounts for fraud." (*Id.* at ¶ 152).  Like Ms. Harris, Ms. Oberdorf and Mr. Prins, Ms. Medenblik does not allege that she in fact suffered any financial loss from the alleged disclosure of information.  Instead, she copies Ms. Harris' allegations verbatim and alleges "damages to and diminution in the value of her Private Information" and the risk of "imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse" of personal information.  (*Id.* at ¶¶ 155-156). As in *SuperValu*, Ms. Medenblik predicates her claim on an "increased, substantial, and continuing risk" of potential identity theft—as opposed to an actual injury from an actual incident of identity theft. (*Id.* at ¶ 159).

*Jeremy Shine*: Like the other Plaintiffs, Mr. Shine alleges that Mercy possesses personal identification information and personal health information. Like the plaintiff in *SuperValu*, Mr. Shine claims actual injury due to "time spent" dealing with the Data Breach and the "increased risk of fraud" resulting from the Data Breach and/or monitoring his accounts for fraud. (*Id.* at ¶¶ 171-172).  Like the other Plaintiffs, Mr. Shine does not allege that he in fact suffered any financial loss from the alleged disclosure of information.  Instead, he copies Ms. Harris' allegations verbatim and alleges that a "loss of privacy," "damages to and diminution in the value of his Private Information" and the risk of "imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse" of personal information.  (*Id.* at ¶¶ 166-167, 171). Mr. Shine alleges that he received identified "fraudulent vehicles on his credit report" and

that a "third party attempted to obtain a new line of credit," but does not allege that he suffered any financial injury.  (*Id.* at ¶¶ 169-170).

## ARGUMENT

### I.   PLAINTIFFS' COMPLAINT MUST BE DISMISSED BECAUSE PLAINTIFFS LACK STANDING.

A plaintiff must plead standing to sue by alleging that he suffered an injury fairly traceable to the defendant's conduct and that is likely to be redressed by the requested relief. *SuperValu*, 870 F.3d at 768. Supreme Court precedent limits standing for alleged future injuries only where the plaintiff demonstrates that the threatened injury is "certainly impending" or that there is a "substantial risk" such harm will occur. *Clapper,* 568 U.S. at 409, 411. It is not therefore enough for the plaintiff to allege the "risk of" an injury or fear of a future injury; instead, the plaintiff must allege that he in fact already suffered an injury and that such an injury is likely to be redressed by the relief he seeks. *Spokeo*, 136 S.Ct. at 1548.

A plaintiff must allege a concrete injury.  A "'concrete' injury must be 'de facto'; that is, it must actually exist"; it must be "'real,' and not 'abstract.'" *Id*. The mere risk of future harm alone does not suffice: "[I]n a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm...'" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2210-11 (2021). Plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending," *Clapper*, 568 U.S. at 416.  Thus, a risk of future harm does not confer standing unless the risk is imminent and substantial. *See id.* (costs incurred in reaction to a risk of harm did not confer standing "because the harm [the plaintiffs sought] to avoid [was] not certainly impending.").

In this instance, Plaintiffs do not allege sufficient facts to support a cognizable injury because they have not alleged an actual injury and have not alleged that any injury is traceable to

Mercy's data breach.  Instead, they allege a fear of future economic harm and emotional distress.

Even if true, these allegations do not suffice to plead a cognizable injury because: (1) fear of future

economic injury does not establish a cognizable injury; (2) emotional distress is not actionable

absent an intentional tort or physical injury; and (3) Plaintiffs do not trace their alleged fear of

future harm to the Mercy data breach.  Each flaw mandates dismissal of Plaintiffs' claims.

### A.      Alleging a Fear of Harm Does Not Suffice to Establish Standing.

Applying the standing principle to data breach cases, the Eighth Circuit and other courts

have held that a plaintiff cannot pursue a claim solely because they fear future injury or suffer an

increased risk of an injury.  Instead, the Eighth Circuit and other courts have held that a plaintiff

must plead the existence of a cognizable injury at the time of their filing.  Absent such an allegation

of an actual injury, courts routinely dismiss analogous cases for failure to plead standing and/or a

cognizable injury.  *In re SuperValu, Inc.*, 925 F.3d 955, 961 (8th Cir. 2019); *Tsao v. Captiva MVP

Rest. Partners, LLC*, 986 F.3d 1332 (11th Cir. 2021); *Wilson v. J.B. Hunt Transport, Inc.*, 2022

WL 20273042 (W.D. Ark., Oct. 6, 2022).

*SuperValu* affirmed the granting of a Rule 12(b)(6) motion to dismiss on this basis.  As

here, the plaintiffs filed a civil action following a data breach.  While plaintiffs adequately alleged

a data breach, the majority of the plaintiffs did not allege that they in fact suffered any financial

harm from the breach.  870 F.3d at 768.  Affirming the dismissal of those claims, the Eighth Circuit

held that a risk of future injury (or time spent preventing future injury) did not suffice:

> Plaintiffs also argue that the costs they incurred to mitigate their risk of identity theft,
> including time they spent reviewing information about the breach and monitoring their
> account information, constitute an injury in fact for purposes of standing. Because plaintiffs
> have not alleged a substantial risk of future identity theft, the time they spent protecting
> themselves against this speculative threat cannot create an injury.

*Id.* at 771.  The Eighth Circuit only permitted a single plaintiff to pursue a claim and only because

that plaintiff alleged that his personal information was actually misused and the actual misuse was

plausibly connected to the alleged data breach. *Id.*

Following *SuperValu*, other courts have dismissed analogous cases. *Wilson* addressed an analogous claim following a data breach. As here, the plaintiffs in that action alleged that they feared injury from the data breach and incurred time and expense monitoring their credit. Those allegations did not suffice to state a viable claim:

> Plaintiffs Wilson, Brown and Baker's final argument is that the costs of identity-theft mitigation or monitoring are sufficient, in and of themselves, to establish standing. This argument is also rejected in SuperValu. … They cannot meet Article III's standing requirements simply "by making an expenditure based on a nonparanoid fear" or by incurring costs "in response to a speculative threat."

*Id.*, 2022 WL 20273042 at *6. Applying *SuperValu*, the court held that plaintiffs could only establish standing by alleging actual misuse of their data and *traced that stolen data to the claimed breach* to pursue claims. *See id.* at *6-7 (emphasis added).

The *SuperValu* conclusion comports with Iowa law. Iowa law confirms that plaintiffs must plead and then prove actual damages. *Orkin Exterminating Co. v. Burnett*, 160 N.W.2d 427, 430 (Iowa 1968). Iowa law denies recovery where damages are speculative and uncertain. *Olson v. Neiman's Ltd.*, 579 N.W.2d 299, 309 (Iowa 1998). That includes the risk of future harm. Under Iowa precedent, the mere possibility of future harm is not sufficient to state a claim for damages. *Kosmacek v. Farm Serv. Co-op. of Persia*, 485 N.W.2d 99, 104 (Iowa Ct. App. 1992).

As in *SuperValu*, none of the Plaintiffs allege any financial injury. Instead, they allege the risk of future incidents and the anticipation of spending time and money, as well as diminution in the value of their personal information. Although Plaintiffs extensively review what *could* happen with their personal information, their allegations do not establish that such harm actually occurred or is imminent. To be sure, Plaintiffs admit that there is a "substantial time lag…between when PII and/or PHI is stolen and when it is misused." (Complaint, ¶ 102). Such a substantial time has

already lapsed.  Despite the almost six months that have passed since the alleged events, Plaintiffs are still unable to establish any injury arising from misuse.

Plaintiffs' own cited authority supports the conclusion that Plaintiffs may never suffer any injury.  Plaintiffs cite a U.S. Government Accountability Office Report (Complaint, ¶102) to support the alleged risk of future harm, that the same report cedes that "most [data] breaches have not resulted in detected incidents of identity theft." U.S. GOV'T ACCOUNTABILITY OFFICE, GAO-07-737, PERSONAL INFORMATION: DATA BREACHES ARE FREQUENT, BUT EVIDENCE OF RESULTING IDENTITY THEFT IS LIMITED; HOWEVER THE FULL EXTENT IS UNKNOWN (2007). The Eighth Circuit, in reviewing the same U.S. Government Accountability Office Report, held that absent more detailed factual support connecting data breaches and identity theft, the "mere possibility" of identity theft or fraud is not enough for standing. *In re SuperValu, Inc.*, 870 F.3d at 771.

Like the plaintiffs in *SuperValu*, Plaintiffs in this case alleged increased risk of fraud, identity theft, and misuse, spending time dealing with the data breach, and stress, fear, and anxiety. The time spent protecting themselves from or otherwise dealing with the breach does not create an injury because Plaintiffs cannot "manufacture standing by inflicting harm on themselves through their fears of hypothetical future harm." *Id.* (citing *Clapper,* 568 U.S. at 409).

**B.     Plaintiffs' Sole Allegations of Injury are Not Compensable Under Iowa Law and/or Eighth Circuit Authority.**

Despite *SuperValu*, Plaintiffs do not allege any current financial injury.  Instead, they repetitively allege they suffered emotional distress and potential for fraudulent charges.  Even if the Court accepted all of the allegations as true, Plaintiffs still do not establish a viable claim because emotional distress damages are not cognizable under Iowa law absent intentional conduct or physical injury, and Plaintiffs have not alleged that that fraudulent charges actually occurred.

First, Plaintiffs repeatedly allege that they suffered emotional distress (such as anxiety) following the breach.  Iowa law does not generally permit a plaintiff to pursue a claim for emotional distress absent intentional conduct or physical injury to a plaintiff. *Clark*, 653 N.W.2d at 169; *Mills*, 454 N.W.2d at 852.  The Plaintiffs do not allege either intentional conduct by Mercy or physical injury.  Accordingly, any allegation that they suffered emotional distress does not suffice to allege a cognizable injury sufficient to survive a motion to dismiss.

Second, Mr. Shine alleges that he identified attempts to create a new line of credit and detected fraudulent purchases (Complaint, ¶¶ 169-170), but he never alleges that he had any financial responsibility for any alleged purchases or suffered any financial injury.  Instead, he attempts to support a claim with the supposition that he might one day bear financial responsibility. *SuperValu* considered and rejected an analogous argument.  As here, the plaintiff in *SuperValu* alleged a fraudulent charge on his credit card, but did not allege that he paid that charge or suffered any financial injury.  Absent an allegation that the plaintiff in fact paid the fraudulent charge, the Eighth Circuit held that the plaintiff failed to allege actual damages:

> Holmes does not directly allege that the fraudulent charge to his credit card resulted in any pecuniary loss. Instead, he asserts that we must presume that he was required to pay the fraudulent charge even though he has not directly alleged that fact.

*Id.*, 925 F.3d at 964-5.  The plaintiff argued that the court should have inferred injury from the mere existence of a fraudulent charge, but the Eighth Circuit rejected that notion:

> As the nonmovant, Holmes is entitled to the benefit of all reasonable inferences that may be drawn from the complaint's allegations. *Martin v. Iowa*, 752 F.3d 725, 727 (8th Cir. 2014). But the inference Holmes seeks is not a reasonable one. The complaint alleges that Holmes "immediately" reported the suspicious charge and was issued a new credit card. In such a situation, federal law and card-issuer contracts ordinarily absolve the consumer from any obligation to pay the fraudulent charge. *See Schnuck Mkts.*, 887 F.3d at 807. Holmes asks us to draw from his conspicuous omission an inference that runs counter to established law and common experience. We decline to do so. Holmes is in the best position to know whether he was ever obligated to pay this unauthorized charge. He is the master of his own complaint, and we are not required to draw unreasonable inferences in his favor.

*Id.*

Plaintiffs' sole allegations of alleged injury do not establish a cognizable injury under Iowa law because Plaintiffs allege emotional distress (without alleging an intentional tort by Mercy or physical injury) and allege the potential for a fraudulent charge (without alleging financial responsibility for any such charge). Accordingly, even if the Court accepts Plaintiffs' allegations as true, they do not suffice to allege a cognizable injury and Plaintiffs claims should be dismissed.

### C.      Plaintiffs Do Not Trace Any Alleged Harm to Mercy.

Even if Plaintiffs' claimed injuries were concrete enough to meet the requirements for "actual injury" (which they are not), the Plaintiffs' claims still fail because any alleged injury is not traceable nor causally connected to Mercy's conduct. The very report that Plaintiffs cite in support of their Complaint, as discussed *supra*, indicates the small number of misuse incidents arising from data breaches. *See* U.S. GOV'T ACCOUNTABILITY OFFICE, GAO-07-737 (2007). In twenty-four of the largest data breaches reported between January 2000 and June 2005, the U.S. Government Accountability Office found evidence of identity theft in four cases, which was less than 17% of cases examined. *Id.* at 24-26. Plaintiffs' failures to plead any additional facts that would suggest a connection between Mercy's conduct, the alleged breach, and Plaintiffs' alleged injuries, are fatal. *See In re SuperValu, Inc.*, 870 F.3d 763 at 768.

Mr. Shine's allegations illustrate the point. He purports to allege that he noticed the attempts to open new lines of credit on his account or fraudulent vehicles, but he does not identify the data of the alleged lines of credit and fraudulent purchases. He also does not, however, link the alleged misuse of his information to any information compromised by the Mercy data breach. Even assuming someone attempted to create a credit line, Mr. Shine asks this Court to leap to the conclusion that the new credit line was created using information compromised during the Mercy data breach. He does not allege that occurred, or allege any facts that would support such an

inference.  He therefore does not establish any causal nexus between these events and one of a potential thousand data breaches that may have involved exposure of his data.

Under *Clapper* and *SuperValu*, Plaintiffs cannot pursue a claim based upon pure speculation.  To the extent that they contend that they suffered an injury and that their alleged injury is due to Mercy's data breach, they must allege a means to trace their alleged injury to the Mercy data breach. Because they failed to plead an actual injury linked to the Mercy data breach, Plaintiffs do not sufficiently allege standing and their claims must be dismissed.

## II.   PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED FOR FAILURE TO STATE LEGALLY COGNIZABLE CLAIMS AND DAMAGES.

Even if this Court finds the Plaintiffs had damages and standing, their claims should still be dismissed because their alleged theories of relief contradict Iowa law.  First, Plaintiffs' negligence (Counts I and II) claims fail because Iowa does not recognize a common law duty to protect personal information and the economic loss doctrine bars any negligence claim.  Second, Plaintiffs' breach of contract (Count III and IV) claims fail because they do not plead that Mercy contractually agreed to protect personal information and breached any express contractual obligations.  Third, Plaintiffs' unjust enrichment (Count V) claim fails because they have not alleged that Mercy received and retained any alleged unjust enrichment from the data breach. Finally, Plaintiffs' breach of confidence (Count VI) and breach of fiduciary duty (Count VII) claims fail because Iowa law does not recognize any such claims.

### A.   Plaintiffs Fail to Plead a Cognizable Negligence Claim.

Plaintiffs allege that Mercy owed a common law duty to exercise reasonable care in safeguarding and handling patient data.  Even if the Court accepts those allegations as true, Plaintiffs' negligence claims should still be dismissed because Iowa has not recognized a common law duty to protect personal information and the economic loss doctrine bars any negligence claim.

First, Plaintiffs' negligence claims presuppose a duty to protect personal information. The Eighth Circuit rejected the notion that any such duty exists in *SuperValu*. *SuperValu* affirmed dismissal of the plaintiffs' negligence claim because the defendant lacked a duty to protect personal information. 925 F.3d at 963-4. The Eighth Circuit examined state law and predicted that the state law would not recognize any owed legal duty to protect personal information. *See id.; see also Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 856 (8th Cir. 2010).

Iowa courts have not officially recognized any common law duty to safeguard personal information. While Plaintiffs were patients of Mercy, any special relationship between them was grounded in the undertaking of the patients' care and treatment. *J.A.H. ex rel. R.M.H. v. Wadle & Assocs., P.C.,* 589 N.W.2d 256, 260 (Iowa 1999). To be sure, the Iowa legislature has considered whether to hold healthcare providers responsible for a data breach and decided not to do so. To that end, the Iowa Consumer Data Protection Act exempts HIPAA-covered entities and protected health information, as defined under HIPAA. *See* Iowa Code Ann. §§ 715D.1 to 715D.9; Iowa Senate File 262.[2] Given that the legislature declined to impose a duty to protect information and to recognize a remedy following a data breach, this Court should not expand on the intent of the legislature by establishing a common law or ordinary duty for healthcare entities to safeguard or protect personal information from unauthorized access by third parties. Instead, it should find that there is no common law duty imposed upon Mercy.

Second, even if a duty existed, Plaintiffs' negligence claims would still fail under the economic loss doctrine. The economic loss doctrine prohibits tort recovery for purely economic

---

[2] Plaintiffs' negligence per se claims are entrenched in purported violations of the Federal Trade Commission Act and HIPAA. The FTCA and HIPAA do not provide a private right of action. *FTC v. Johnson*, 800 F.3d 448, 452 (8th Cir. 2015); *Adams v. Eureka Fire Prot. Dist.*, 352 F. App'x 137, 138-9 (8th Cir. 2009); *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010).

losses. *Des Moines Flying Serv., Inc. v. Aerial Servs. Inc.*, 880 N.W.2d 212, 218 (Iowa 2016); *Nelson v. Todd's Ltd.*, 426 N.W.2d 120, 123 (Iowa 1988); *Richards v. Midland Brick Sales Co., Inc.*, 551 N.W.2d 649, 650-52 (Iowa App.1996). The economic loss doctrine has been applied to dismiss negligence claims in several data breach cases across the country, including certain claims brought under Iowa law. *See In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1171–76 (D. Minn. 2014); *Fox v. Iowa Health Sys.*, 399 F. Supp. 3d 780, 794 (W.D. Wis. 2019).

Plaintiffs fail to allege any cognizable injuries, let alone damages to their person or their property. Instead, they assert that Mercy's duties to protect their information arose from a contractual relationship. Although their breach of contract and implied contract claims fail on other bases, any relationship between Mercy and Plaintiffs would not arise out of a tort context. Plaintiffs cannot allege any damages in negligence beyond economic loss, and consequently, their tort claims are barred by the economic loss doctrine.

**B.      Plaintiffs Fail to Allege Viable Contract Claims.**

Plaintiffs seek to pursue a claim for breach of contract and breach of implied contract, but fail to adequately plead either claim. Specifically, Plaintiffs do not sufficiently state the contract they were a part of, what the terms and conditions were, performance and/or breach of the contract, and damages therefrom. Accordingly, they fail to allege a viable claim for breach of contract.

First, in order to properly claim a breach of contract, Plaintiffs must plead: (1) the existence of a contract; (2) the terms and conditions of the contract; (3) performance of those terms and conditions; (4) breach of the contract; and (5) damages from the breach of the contract. *Meardon v. Reg.*, 994 F.3d 927, 935 (8th Cir. 2021), *reh'g denied* (May 26, 2021). Plaintiffs allege that Mercy was obligated by contract to keep Plaintiffs' private information "confidential and to protect it from unauthorized access and disclosure." (Complaint, ¶ 37). Plaintiffs do not, however, allege that they failed to receive the medical services, but instead claim that the contract included

promises by Defendants to secure, safeguard, and not disclose Plaintiffs' and Class Members' Private Information."[3] (Complaint, ¶ 224).

Plaintiffs here attempt to prove the existence of a contract by the mere assertion that the Privacy Policy was incorporated into a contract, but fail to allege any facts regarding the existence of such a contract, other than to say that the contract included promises by Mercy to "secure, safeguard, and not disclose" private information. (*Id*.). Even if Plaintiffs properly alleged the existence of an express contract, the Privacy Policy does not address the terms and conditions propounded by Plaintiffs, namely, commitments to secure, safeguard and/or keep private Plaintiffs' personal information. That is why the Eighth Circuit has twice rejected analogous claims. *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 717 (8th Cir. 2017); *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 912 (8th Cir. 2016) (rejecting breach of contract claim following a data breach because alleged protections were not among the protections for which he bargained).

In *Kuhns*, the Eighth Circuit again addressed a breach of contract claim in connection with a data breach and subsequent class action lawsuits. Plaintiffs claimed that the governing agreement between the parties incorporated a privacy statement that represented the use of security measures, including computer safeguards, and secured files and buildings to protect personal information from unauthorized access. The court held that plaintiffs did not plausibly allege a breach of contract in claiming that defendant did not comply with applicable laws and regulations, or maintain sufficient security measures and procedures against unauthorized access. 868 F.3d at 717-19. The court found that even if the security representations could be construed as promises

---

[3] Plaintiffs further claim that MercyOne's Privacy Policy memorialized the rights and obligations of the parties, and that it was provided in such a manner that it became a part of the agreement for services. (Complaint, ¶ 225). However, the indicated Privacy Policy does not address the issues that Plaintiffs are raising.

of contract performance, plaintiffs failed to allege any affirmative promises by defendant that its data would not be hacked, and such promises could not be plausibly implied from the privacy statement representations.  *Id.*  It further noted that "class action litigation should be based on more than allegations of worry and inconvenience."  *Id.* at 718.

As in *Kuhns*, Mercy's Notice of Privacy Practices does not address or incorporate any representations about the use of security measures to protect personal information from unauthorized access, nor can such promises be plausibly implied from the Notice.  Although it is clear that the terms and conditions of any suggested contract between the parties did not address unauthorized access of private information by a third party, Plaintiffs have still failed to plausibly allege actual damages, which is a well-founded element of breach of contract claims.  As such, Plaintiffs' contractual claim at Count III must be dismissed.

Second, Plaintiffs' breach of implied contract claim must be dismissed because Plaintiffs are asserting an express contract that governs the parties' relationship, and because Plaintiffs do not plead any damages that would adequately support an implied contract claim.  The Eighth Circuit has routinely rejected the argument that an implied contract can coexist with an express contract.  *See Kunde v. Estate of Bowman*, 920 N.W.2d 803, 807–08 (Iowa 2018); *Scott v. Grinnell Mut. Reinsurance Co.*, 653 N.W.2d 556, 561 n.2 (Iowa 2002) (rejecting generally claims of implied contracts in the presence of express contracts).  Although Iowa recognizes that some implied contracts may include matters not covered by an express contract, there is no implied contract here.  *See Maasdam v. Estate of Maasdam*, 24 N.W.2d 316, 321 (Iowa 1946) ("But there may be an implied contract on a point not covered by an express contract.").

Plaintiffs allege that Mercy provided medical services to Plaintiffs, and that Plaintiffs formed an "implied contract" with Mercy regarding the provision of those services.  (Complaint,

¶ 236).  They further allege that Defendants, through their sale and provision of medical services knew or should have known that it must protect PII "in accordance with MercyOne's policies, practices, and applicable law."  (Complaint, ¶ 237).  As consideration for the provision of medical services, Plaintiffs allege they paid money and turned over valuable Private Information to Mercy. In the same paragraph, Plaintiffs claim they accordingly bargained with MercyOne for it to securely maintain and store their Private Information (Complaint, ¶ 238).  The same points are raised by the alleged express contract, and therefore cannot stand.

    **C.**    **Plaintiffs' Unjust Enrichment Claim Must Be Dismissed Because Mercy Has Retained No Unjust Benefit.**

Mercy did not benefit in any way from the alleged data breach, nor from Plaintiffs' alleged loss.  Plaintiffs allege that Mercy should have any profits, benefits and other compensation obtained from its wrongful conduct disgorged, but Plaintiffs fail to recognize that Mercy was also a victim of a cyberattack.  Mercy did not financially benefit from the data breach in any way, but instead expended considerable time and money to mitigate the effects of the attack.

To recover on an unjust enrichment claim in Iowa, a plaintiff must show (1) defendant was enriched by the receipt of a benefit; (2) the enrichment was at the expense of the plaintiff; and (3) it is unjust for the defendant to retain the benefit under the circumstances.  *Brown v. Kerkhoff*, 279 F.R.D. 479, 488 (S.D. Iowa 2012).  Damages under a claim of unjust enrichment are limited to the value of what was inequitably retained.  *Iowa Waste Sys., Inc. v. Buchanan Cnty.*, 617 N.W.2d 23, 30 (Iowa Ct. App. 2000).  The critical inquiry is whether the benefit the defendant received was at the expense of the plaintiffs.

The Eighth Circuit applied a similar test in *SuperValu.*  There, the plaintiff alleged the benefit that the defendant grocery store retained was the money the plaintiff spent on groceries. The court affirmed dismissal of the unjust enrichment claim where the plaintiff did not allege that

any specific portion of his payment went toward data protection, that he did not allege any benefit conferred in exchange for protection of his personal information, and he did not show how defendants' retention of his payment would be inequitable.  925 F.3d at 966; *see also Carlsen,* 833 F.3d 903, 912 (8th Cir. 2016).

Despite the Eighth Circuit's standard, Plaintiffs fail to allege that their medical fees were conferred in exchange for protection of personal information, or fail to allege that any specific part of their payments were actually allocated to cybersecurity protection.  Instead, they allege that the services they paid for *should* have included funds toward security measures.  (Complaint, ¶ 263).  Even if that were true, there was no additional benefit conferred upon Mercy because (a) it utilized the payments for the provision of medical services, and (b) Mercy itself did not retain any payments under unjust circumstances.  For the same reason the Eighth Circuit rejected these claims in *SuperValu and Carlsen*, Plaintiffs' unjust enrichment claim fails, and should be dismissed with prejudice.

### D.   Plaintiffs' Breach of Confidence and Breach of Fiduciary Duty Counts Fail Because Any Such Duties Do Not Apply.

Plaintiffs attempt to assert a claim for breach of confidence—a claim that has not been recognized since the early 1900s and is applied to trade secret claims.  Yet, even though no other court has permitted such a claim, the Plaintiffs allege that Mercy has a special fiduciary relationship with its patients as a healthcare provider, and because of that relationship, Mercy had a duty to maintain Plaintiffs' Private Information in confidence.  (Complaint, ¶ 272).  Plaintiffs are clearly alluding to the confidences arising from a physician-patient relationship, which is misplaced and improperly duplicative of Plaintiffs' breach of fiduciary duty claim.

Plaintiffs inaccurately attempt to conflate the fiduciary relationship between a provider and a patient with a duty to protect personal identification information.  A breach of a fiduciary duty

requires Plaintiffs to plead that "(1) [the defendant] owed a fiduciary duty to [the plaintiff]; (2) [the defendant] breached the fiduciary duty . . . ; (3) the breach of fiduciary duty was a proximate cause of damage to [the plaintiff]; and (4) the amount of damages, if any." *Meardon v. Reg.*, 994 at 937.  A fiduciary duty exists between two entities "when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation[ship]." *Horras v. Am. Cap. Strategies*, 729 F.3d 798, 802 (8th Cir. 2013); *Kurth v. Van Horn*, 380 N.W.2d 693, 695 (Iowa 1986).

While Plaintiffs allege that Mercy had a medical relationship with them (Complaint, ¶¶ 272, 282), they never allege why those medical services created a fiduciary relationship or why the provision of medical services expanded the relationship beyond the traditional relationship between a doctor and patient.  They have not therefore established the existence of a fiduciary duty or a duty of confidence, nor have they established that any such claim is recognized and permitted under Iowa law.  The provision of medical services (or provision of personal information in the ordinary course of medical services) does not expand upon the duties owed by Mercy to Plaintiffs.

### E.    Count VIII Must be Dismissed for Failure to Adequately Plead Declaratory Relief.

Plaintiffs allege that Mercy owes a duty of care to Plaintiffs that requires it to adequately secure their information, and then seek declaratory relief to the same point, but fail to allege the bases for that duty.  (Complaint, ¶ 293).  Although Plaintiffs seek relief under the Declaratory Judgment Act, it only provides relief "[i]n a case of actual controversy within its jurisdiction," which is equivalent to the standing requirement set forth in Article III of the Constitution. *Scottsdale Ins. Co. v. Avery Tech. Res., Inc.*, 2023 WL 2441628, at *3 (S.D. Iowa Jan. 17, 2023) (*citing* 28 U.S.C. § 2201(a); *Cnty. of Mille Lacs v. Benjamin*, 361 F.3d 460, 463 (8th Cir. 2004)). As part of the declaratory relief claim, Plaintiffs request this Court to order Mercy to change its

business practices with additional security measures.  (Complaint, ¶ 297).   In evaluating declaratory judgment actions, the Eighth Circuit has found declaratory judgment actions justiciable even though facts remain unresolved in underlying, pending litigation so long as the dispute presented is real and immediate, rather than abstract.[4]  *Fed. Ins. Co. v. Sammons Fin. Grp., Inc.*, 595 F. Supp. 2d 962, 972 (S.D. Iowa 2009) (citing *Aetna Casualty & Surety Co. v. General Dynamics Corp.*, 968 F.2d 707, 709 (8th Cir.1992)).

Plaintiffs would have this Court believe that "actual harm" has arisen, but they have not pled any sufficient facts demonstrating present or impending harm.  (Complaint, ¶ 295).  They allege that there is "no reason to believe" that Mercy's security measures are "any more adequate now," but do not elaborate to suggest anything more than hypothetical harm of "additional or further harm due to the exposure of their private information..."  (Complaint, ¶ 296).  Like in Plaintiffs' failures to sufficiently plead standing, they have not demonstrated that their declaratory judgment claim is of sufficient immediacy to justify immediate Court intervention.  Their declaratory relief claim must be dismissed for their failures to establish grounds for Court intervention.

## CONCLUSION

WHEREFORE, Defendant respectfully requests that this Court enter an Order granting its Motion to Dismiss Plaintiffs' Consolidated Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

---

[4] Notably, the Eighth Circuit has suggested that declaratory judgment actions warrant a "closer look" because such actions are more indicative of a preemptive strike than a suit for damages or equitable relief. *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1007 (8th Cir. 1993). The court's contention, when applied to this matter, is correct—the declaratory judgment action evidences that Plaintiffs have not brought a proper suit for damages or equitable relief elsewhere.

Dated: December 1, 2023                    Respectfully submitted,


                                           /s/ *Thomas J. Joensen*_____
                                           Scott Schmookler (admitted *pro hac vice*)
                                           Thomas J. Joensen  AT0003868
                                           Jenna M. Miller (admitted *pro hac vice*)
                                           **Gordon Rees Scully Mansukhani LLP**
                                           666 Grand Avenue, Suite 1701
                                           Des Moines, Iowa 50309
                                           Telephone: (515) 204-2845
                                           Fax: (515) 466-2710
                                           sschmookler@grsm.com
                                           tjoensen@grsm.com
                                           jmmiller@grsm.com

                                           *Attorneys for Mercy Health Network, Inc. and*
                                           *Mercy Medical Center – Clinton, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 1, 2023, I e-filed the foregoing document with the Clerk

of Court, thus serving all attorneys of record.

/s/  Thomas J. Joensen
ATTORNEY