# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF IOWA

| In re MercyOne Data Breach Litigation | Case No. 3:23-cv-00195-SHL-SBJ |
| --- | --- |
| | |

## PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT (ECF 33)

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................................1

FACTUAL BACKGROUND ...................................................................................................2

   A.   Defendants Collected the Private Information of Plaintiffs and the Class and Failed to

   Protect It..................................................................................................................................2

   B.   Plaintiffs Suffered Damages as a Result of the Data Breach. ........................................2

ARGUMENT .............................................................................................................................3

   A.   Plaintiffs Have Article III Standing. ..............................................................................3

      i.   Plaintiffs Suffered a Concrete Injury. ....................................................................3

      ii.   Plaintiffs' Injuries are Fairly Traceable to Defendants and Their Data Breach. ...................10

   B.   Plaintiffs Plead Legally Cognizable Claims and Damages Sufficient to Withstand Defendants'
      Challenge under Fed. R. Civ. P. 12(b)(6) ...................................................................11

      i.   Plaintiffs State a Plausible Claim for Negligence.................................................11

      ii.   Plaintiffs Sufficiently Allege Claims for Breach of Contract and Breach of Implied Contract
      Based on Defendants' Conduct. ...........................................................................14

      iii.   Plaintiffs Adequately Plead a Claim for Unjust Enrichment. ...............................17

      iv.   Plaintiffs' Claim for Breach of Fiduciary Duty/Breach of Confidence is Sound.............18

      v.   Plaintiffs' Claim for Declaratory/Injunctive Relief is Adequately Pled ...................19

CONCLUSION.........................................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Attias v. Carefirst, Inc.*,
    865 F.3d 620 (D.C. Cir. 2017) .................................................................................... 5, 10

*Bohnak v. Marsh & McLennan Cos., Inc.*,
    79 F.4th 276  (2d Cir. 2023) ....................................................................................... 4, 5, 6

*Carlsen v. GameStop, Inc.*,
    833 F.3d 903 (8th Cir. 2016) ............................................................................................ 16

*Castillo v. Seagate Technology, LLC*,
    No. 16-CV-01958-RS, 2016 U.S. Dist. LEXIS 187428 (N.D. Cal. Sept. 14, 2016) ........... 16

*Charlie v. Rehoboth McKinley Christian Health Care Servs.*,
    598 F. Supp. 3d 1145 (D.N.M. 2022) ............................................................................... 17

*Cnty. of Mille Lacs v. Benjamin*,
    361 F.3d 460 (8th Cir. 2004) ............................................................................................ 19

*Coffey v. OK Foods Inc.*,
    No. 2:21-CV-02200, 2022 WL 738072 (W.D. Ark. Mar. 10, 2022) ..................................... 7

*Dolmage v. Combined Ins. Co. of Am.*,
    2016 U.S. Dist. LEXIS 22472 (N.D. Ill. Feb. 23, 2016) ................................................... 15

*Est. of Anderson ex rel. Herren v. Iowa Dermatology Clinic, PLC*,
    819 N.W.2d 408 (Iowa 2012). ......................................................................................... 18

*Finesse Express, LLC v. Total Quality Logistics, LLC*,
    1:20cv235. 2021 WL 1192521 (S.D. Ohio Mar. 30, 2021) .................................................. 9

*First Bank of Wakeeney v. Moden*,
    235 Kan. 260, 681 P.2d 11 (1984) .................................................................................... 18

*Fox v. Iowa Health Sys.*,
    399 F. Supp. 3d 780 (W.D. Wis. 2019) ............................................................................. 14

*Green-Cooper v. Brinker Int'l, Inc.*,
    73 F.4th 883  (11th Cir. 2023) ........................................................................................... 5

*Greenstate Credit Union v. Hy-Vee, Inc.*,
    549 F. Supp. 3d 969 (D. Minn. 2021) ............................................................................... 14

*Hagen v. Siouxland Obstetrics & Gynecology, P.C.*,
   964 F. Supp. 2d 951 (N.D. Iowa 2013) .................................................................14

*Hall v. Centerspace, LP*,
   No. 22-CV-2028 (KMM/DJF), 2023 WL 3435100 (D. Minn. May 12, 2023)....................................9

*Haupt v. Miller*,
   514 N.W.2d 905 (Iowa 1994) ...........................................................................14

*In re Adobe Sys., Inc. Priv. Litig.*,
   66 F. Supp. 3d 1197 (N.D. Cal. 2014) ...................................................................19

*In re Cap. One Consumer Data Sec. Breach Litig.*,
   488 F. Supp. 3d 374 (E.D. Va. 2020) ...................................................................15

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.,*,
   440 F. Supp. 3d 447 (D. Md. Feb 21, 2020) ........................................................ 13, 15

*In re Netgain Tech., LLC*,
   No. 21-CV-1210 (SRN/LIB), 2022 WL 1810606  (D. Minn. June 2, 2022) ...................................7

*In re Pawn Am. Consumer Data Breach Litig.*,
   No. 21-CV-2554 (PJS/JFD), 2022 WL 3159874 (D. Minn. Aug. 8, 2022)................................passim

*In re SuperValu*,
   870 F.3d 763 (8th Cir. 2017) ..................................................................... 7, 8, 17

*In re SuperValu, Inc.*,
   925 F.3d 955 ( 8th Cir. 2019)............................................................................5

*In re Zappos.com, Inc.*,
   888 F.3d 1020 (9th Cir. 2018)..........................................................................11

*Koll v. Manatt's Transp. Co.*,
   253 N.W.2d 265 (Iowa 1977) ...........................................................................14

*Kuhns v. Scottrade, Inc*,
   868 F.3d 711 (8th Cir. 2017)....................................................................... 15, 16

*Kurth v. Van Horn*,
   380 N.W.2d 693 (Iowa 1986) ...........................................................................18

*Larsen v. United Fed. Sav. & Loan Ass'n of Des Moines*,
   300 N.W.2d 281 (Iowa 1981) ...........................................................................13

*Lewert v. P.F. Chang's China Bistro, Inc.*,
   819 F.3d 963 (7th Cir. 2016) ...................................................................... 7, 11

*Lexmark Int'l, Inc. v. Static Control Components, Inc.,*
    572 U.S. 118 (2014) ................................................................................................................10

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ...............................................................................................................10

*Mackey v. Belden, Inc.,*
    No. 4:21-CV-00149-JAR, 2021 WL 3363174 (E.D. Mo. Aug. 3, 2021) ......................... 7,10

*Merrell v. 1st Lake Props., Inc.,*
    No. CV 23-1450, 2023 WL 6316257, E.D. La. Sept. 28, 2023) ..........................................5

*Nationwide Agribusiness v. Structural Restoration, Inc.,*
    705 F. Supp. 2d 1070 (S.D. Iowa 2010) ............................................................................13

*Opris v. Sincera Reprod. Med.,*
    2022 WL 1639417 (E.D. Pa. May 24, 2022) .......................................................................19

*Perry v. Bay & Bay Transport. Servs., Inc.,*
    650 F. Supp. 3d 743 (D. Minn. 2023) ........................................................................passim

*Peterson v. Aaron's, Inc.,*
    No. 1:14-CV-1919, 2017 WL 4390260 (N.D. Ga. Oct. 3, 2017) .........................................5

*Preferred Mktg. Associates Co. v. Hawkeye Nat'l Life Ins. Co.,*
    452 N.W.2d 389 (Iowa 1990) .............................................................................................14

*Pub. Water Supply Dist. No. 8 of Clay Cnty., Mo. v. City of Kearney, Mo.,*
    401 F.3d 930 (8th Cir. 2005) ..............................................................................................19

*Purvis v. Aveanna Healthcare, LLC,*
    563 F. Supp. 3d 1360 (N.D. Ga. 2021) ......................................................................... 18, 19

*Remijas v. Neiman Marcus Grp., LLC,*
    794 F.3d 688 (7th Cir. 2015) ................................................................................................6

*Rodriguez v. Mena Hosp. Comm.,*
    No. 2:23-CV-2002, 2023 WL 7198441 (W.D. Ark. Nov. 1, 2023) ......................................9

*Rudolph v. Hudson's Bay Co.,* No.
    2019 U.S. Dist. LEXIS 77665  (S.D.N.Y. May 7, 2019) ....................................................17

*Smallman v. MGM Resorts Int'l,*
    638 F. Supp. 3d 1175 (D. Nev. 2022) ...................................................................................9

*Spokeo, Inc. v. Robins,*
    578 U.S. 330 (2016) ........................................................................................................ 3, 4

*Stasi v. Inmediata Health Grp. Corp.*,
  501 F. Supp. 3d 898 (S.D. Cal. 2020) .......................................................4

*Stotts v. Eveleth*,
  688 N.W.2d 803 (Iowa 2004) ................................................................13

*Thompson v. Kaczinski*,
  774 N.W.2d 829 (Iowa 2009) ................................................................13

*TransUnion LLC v. Ramirez*,
  594 U.S. 413 (2021) ......................................................................... 3, 4, 6

*Webb v. Injured Workers Pharm., LLC*,
  72 F.4th 365 (1st Cir. 2023)...........................................................5, 6, 7, 10

*Weisenberger v. Ameritas Mut. Holding Co.*,
  597 F. Supp. 3d 1351 (D. Neb. 2022) .......................................... 6, 10, 11

*Wilson v. J.B. Hunt Transp., Inc.*,
  5:21-CV-5194, 2022 WL 20273042 (W.D. Ark. Oct. 6, 2022) .............8

## Other Authorities

Driver's Privacy Protection Act of 1994..............................................12

Family Educational Rights and Privacy Act........................................12

United States Constitution, Article III.......................................... 4, 8, 10

Iowa Admin. Code, Section 653-13.7 (147,148,272C) ......................12

Restatement (Second) of Torts § 652C...............................................5

Restatement (Second) of Torts § 874 comment,  300 (1979)...............18

Restatement (Second) Torts § 652D);.................................................4

Title II of HIPAA and Section 5 of the Federal Trade Commission Act. ...........................16

## Rules

Fed. R. Civ. P. 12(b)(1)........................................................................1

Fed. R. Civ. P. 12(b)(6)........................................................................1

## INTRODUCTION

Defendants Mercy Health Network, Inc. and Mercy Medical Center – Clinton, Inc. ("MercyOne" or "Defendants") store sensitive personally identifiable information ("PII") and protected health information ("PHI") (collectively, "Private Information") on its network servers. The patients who entrust MercyOne with their Private Information, including Plaintiffs Tiffany Harris, Jennifer Medenblik, Rebecca Oberdorf, Michael Prins and Jeremy Shine, expect that MercyOne, a sophisticated healthcare institution, will properly maintain, safeguard and protect their Private Information. Instead of treating the highly sensitive Private Information with the care and caution required, MercyOne failed to adequately protect the Private Information in their care. As a result, cybercriminals were able to access MercyOne's unencrypted network and access and exfiltrate the Private Information stored on it, including names, addresses, dates of birth, driver's license/state identification numbers, Social Security numbers, financial account information, medical record numbers, encounter numbers, Medicare or Medicaid identification numbers, mental or physical treatment/condition information, diagnosis code/information, dates of service, admission/discharge dates, prescription information, billing/claims information, personal representative or guardian names, and health insurance information. After acquiring the Private Information from MercyOne's unencrypted and inadequately defended network, these cybercriminals leaked the Private Information onto the Dark Web, opening Plaintiffs and other similarly situated persons ("Class Members") up to a substantial risk of identity fraud for the rest of their lives (a risk which has already been realized in Plaintiff Shine's case). MercyOne's failure to protect Plaintiffs' and Class Members' Private Information has led to irreparable harms to Plaintiffs and Class Members that have been recognized time and time again as more than sufficient to establish Article III standing under Federal Rule of Civil Procedure 12(b)(1) and damages under Rule 12(b)(6) within the data breach context. The same

1

result should be reached here, and Defendants' Motion to Dismiss Class Action Complaint (ECF 33) and Memorandum in Support (ECF 33-1) (the "Motion" or "Mot.")  should be denied.

## FACTUAL BACKGROUND

### A.  Defendants Collected the Private Information of Plaintiffs and the Class and Failed to Protect It.

Defendants constitute "an integrated system of hospitals, clinics and other health care facilities[,]with more than 2,000 physicians and advanced practice clinicians, across 18 medical centers and 23 affiliated organizations." Consolidated Class Action Complaint (the "CCAC" or "Compl.") ¶ 2.  Plaintiffs are patients of Defendants who, as part of the process of receiving healthcare from Defendants, entrusted their Private Information to Defendants. *Id.* ¶¶ 1, 27.

On or about June 2, 2023, MercyOne sent out data breach notice letters to approximately 20,000 individuals whose Private Information was compromised between March 7 and April 4, 2023 (the "Data Breach"), with the Data Breach having resulted from the inadequate data security provided by Defendants.  *Id.* ¶¶ 3, 4, 12, 58, 68-70, 80-81, 83-84, 121, 129, 140, 151, 165, 179.  The Private Information taken by cybercriminals in the Data Breach included personal information such as names, addresses, dates of birth, and Social Security numbers, as well as financial and health insurance information.  *Id.* ¶¶ 1, 34, 101, 121, 129, 140, 151, 165. Defendants failed to notify Plaintiffs and Class Members of the Data Breach for nearly three months from the first compromise. *Id.* ¶¶ 33-35. These and other failures by Defendants both leading up to and including the Data Breach resulted in the multitude of harms suffered by Plaintiffs.

### B.  Plaintiffs Suffered Damages as a Result of the Data Breach.

By way of the Data Breach, Defendants injured Plaintiffs and Class Members by subjecting them to actual identity theft, along with a significant present (and continuing) risk of identity theft and other harms, including emotional harm, diminished value to their Private Information, and the need

2

to now engage in life-long mitigatory efforts to protect themselves, resulting in lost time and money that could otherwise be spent on other more beneficial activities, such as work and/or recreation. Id. ¶¶ 9, 86, 107-10, 112-15, 122-24, 132-34, 138, 141-49, 152, 154-60, 166-72. In fact, Plaintiff Shine has already reported actual fraudulent misuse of his compromised Private Information, and Plaintiff Medenblik has been informed that her personal data is on the Dark Web. Id. ¶¶ 96, 103, 154, 168-70. The exposure of the Private Information at issue here creates an enduring and immediate, substantial risk of identity theft and fraud. Id. ¶¶ 98–104. After all, exposed personal information like the Private Information lost by Defendants here is a goldmine which provides endless opportunities for cybercriminals to commit identity theft and fraud against its victims, and allows cybercriminals to take the stolen information and expand upon it. Id. ¶¶ 89-91, 102-104. As such, the Private Information that Defendants lost already has, and will continue to be, used by cybercriminals to perpetuate substantial identity theft and fraud against Defendants' current and former patients impacted by the Data Breach. Plaintiffs now seek to remedy such harms.

## ARGUMENT

### A. Plaintiffs Have Article III Standing.

#### i. Plaintiffs Suffered a Concrete Injury.

An injury is concrete for purposes of Article III if it has a "'close relationship' to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 340-41 (2016)). Courts "'do not require an exact duplicate' between 'a plaintiff's asserted harm' and 'a harm traditionally recognized as providing a basis for a lawsuit in American courts.'" *In re Pawn Am. Consumer Data Breach Litig.*, No. 21-CV-2554 (PJS/JFD), 2022 WL 3159874, at *2 (D. Minn. Aug. 8, 2022) (quoting *TransUnion* at 433). "The most obvious are traditional tangible harms, such as physical harms and monetary harms." *TransUnion* at 425. "But 'concrete' is not synonymous with 'tangible.' Intangible

3

injuries … may also be concrete." *In re Pawn Am.* at *2 (citing *Spokeo* at 340). "Those include, for example, reputational harms, disclosure of private information, and intrusion upon seclusion." *TransUnion* at 425.

As discussed below, Plaintiffs allege several concrete injuries that, independently, are sufficient to confer standing, including privacy injuries, the lost or diminished value of Private Information, the lost benefit of their implied bargain for data security, and the misuse of their Private Information in the form of theft, fraud, and publication on the dark web. Plaintiffs also allege several injuries that, in combination with the substantial risk of harm they face, are sufficient to confer Article III standing. This includes time and effort spent mitigating the risk of harm, future costs to mitigate the risk of harm, and the stress, fear, and anxiety caused by the knowledge that their Private Information is in the possession of malicious cybercriminals who have already used this information to commit fraud.

### a. Plaintiffs Suffered Concrete Privacy Injuries.

Plaintiffs allege that their Private Information has been exfiltrated by cybercriminals and published on the Dark Web. *See, e.g.,* Compl. ¶¶ 13, 31, 122, 154, 168. "This alleged injury has a 'close relationship' to disclosure of private information, one of the 'harms traditionally recognized as providing a basis for lawsuits in American courts.'" *In re Pawn Am.*, 2022 WL 3159874, at *3 (quoting *TransUnion*, 594 U.S. at 425); *see also Bohnak v. Marsh & McLennan Cos., Inc.*, 79 F.4th 276, 285 (2d Cir. 2023) ("[T]he core injury here—exposure of Bohnak's private PII to unauthorized third parties— bears some relationship to a well-established common-law analog: public disclosure of private facts.") (citing Restatement (Second) Torts § 652D); *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 912 (S.D. Cal. 2020) (theft of PHI causes privacy injury). Plaintiffs suffered this injury the moment their Private Information was exfiltrated by cybercriminals. *Peterson v. Aaron's, Inc.*, No. 1:14-CV-1919,

2017 WL 4390260, at *3 (N.D. Ga. Oct. 3, 2017) ("[T]he victim suffers a harm as soon as their privacy is violated. That remains true whether . . . the victim knows about it or not.").[1]

Moreover, Plaintiffs suffered—and will continue to suffer—additional privacy injuries "analogous to the common law tort of invasion of privacy by appropriation of name or likeness" each time their Private Information is unlawfully sold or misused. *Merrell v. 1st Lake Props., Inc.*, No. CV 23-1450, 2023 WL 6316257, at *3 (E.D. La. Sept. 28, 2023) (citing *Restatement (Second) of Torts* § 652C; *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 889 (11th Cir. 2023); *Webb v. Injured Workers Pharm., LLC*, 72 F.4th 365, 374 (1st Cir. 2023)).

And contrary to Defendant's argument throughout their Motion, including their heavy (and misplaced) reliance on a payment card data breach case, *In re SuperValu, Inc.*, 925 F.3d 955, 961 (8th Cir. 2019), misuse does not need to also result in monetary harm to be concrete. *Webb*, 72 F.4th at 374 ("We reject IWP's argument that the alleged actual misuse is not itself a concrete injury absent even more resulting harm to *Webb*.") (collecting cases); *Attias v. Carefirst, Inc.*, 865 F.3d 620, 627 (D.C. Cir. 2017) ("Nobody doubts that identity theft, should it befall one of these plaintiffs, would constitute a concrete and particularized injury."); *Merrell*, 2023 WL 6316257, at *3 ("[C]ourts have recognized that exposure, theft, and misuse of PII itself constitutes sufficient injury to confer Article III standing." (collecting cases); *Perry v. Bay & Bay Transport. Servs., Inc.*, 650 F. Supp. 3d 743, 752 (D. Minn. 2023) (finding standing on the basis that plaintiff had "alleged and described how his [Private Information] has already been misused ….").

The Court should find standing based on Plaintiffs' privacy injuries alone. *See Bohnak*, 79 F.4th at 286 ("We recognize that Bohnak does not in this case assert a common law claim for public disclosure of private facts . . . [W]hat matters is that the intangible harm arising from disclosure of

---

[1] Defendant's motion does not address the injury to Plaintiffs' privacy despite being clearly alleged. Compl. ¶¶ 43, 117, 122, 126, 166, 173.

one's PII bears a relationship to an injury with a 'close historical or common-law analogue.' And that

analog need not be 'an exact duplicate.'") (quoting *TransUnion*, 594 U.S. at 433).

> b. <u>Plaintiffs Face a Substantial Risk of Harm that has Caused<br>Additional Concrete Injuries.</u>

Plaintiffs have adequately alleged that they faced, and continue to face, a substantial risk of

harm from the theft of their Private Information, which is "the worst kind of private data that one

could lose, at least when it comes to creating a risk of identity theft." *In re Pawn Am.*, 2022 WL 3159874,

at *4; *see also Weisenberger v. Ameritas Mut. Holding Co.*, 597 F. Supp. 3d 1351, 1359 (D. Neb. 2022) ("the

plaintiff argued that the type of PII compromised in the data breach supports a finding that the data

breach created a substantial risk of future harm. At this early stage of the proceedings, the Court finds

the plaintiff's argument persuasive.") (internal citation omitted).[2] Indeed, multiple Plaintiffs have

already suffered fraud or received confirmation their data is on the dark web. *Compare* Compl. ¶¶ 154,

168-70 *with Webb*, 72 F.4th at 376 ("That at least some information stolen in a data breach has already

been misused also makes it likely that other portions of the stolen data will be similarly misused.").

"Typically, 'in a suit for damages, the mere risk of future harm, standing alone, cannot qualify

as a concrete harm....'" *In re Pawn Am.*, 2022 WL 3159874, at *2 (ellipsis in original) (quoting

*TransUnion*, 594 U.S. at 436). "But if 'the exposure to the risk of future harm itself causes a separate

concrete harm'—then that separate harm may establish standing for a damages claim." *In re Pawn Am.*

at *2 (emphasis in original) (quoting *TransUnion* at 436 & n.7); *see also Bohnak*, 79 F.4th at 289–90

("Bohnak's alleged injury arising from the increased risk of harm *is* cognizable for standing purposes,

and thus could support a claim for damages.") (emphasis in original).

---

[2] Defendant tacitly acknowledged the risk to Plaintiffs by providing them with limited subscriptions to credit monitoring services. *Compare* Compl. ¶ 36 *with Remijas v. Neiman Marcus Grp.*, LLC, 794 F.3d 688, 694 (7th Cir. 2015)k ("It is telling in this connection that Neiman Marcus offered one year of credit monitoring and identity-theft protection to all customers .... It is unlikely that it did so because the risk is so ephemeral that it can safely be disregarded.").

Courts within the Eighth Circuit routinely hold that time and effort spent mitigating a substantial risk of harm or responding to fraud following a data breach is sufficient to confer Article III standing. *See, e.g., Perry*, 650 F. Supp. 3d at 752 (finding that "time monitoring the effects of the data breach" was a concrete injury based on misuse that already occurred); *see also Mackey v. Belden, Inc.*, No. 4:21-CV-00149-JAR, 2021 WL 3363174, at *5 (E.D. Mo. Aug. 3, 2021) (similar); *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 967 (7th Cir. 2016) ("Even if those fraudulent charges did not result in injury to his wallet (he stated that his bank stopped the charges before they went through), he has spent time and effort resolving them."); *Webb*, 72 F.4th at 377 ("We join other circuits in concluding that time spent responding to a data breach can constitute a concrete injury sufficient to confer standing ….") (collecting cases); *cf. In re SuperValu*, 870 F.3d 763, 771 (8th Cir. 2017) ("*Because plaintiffs have not alleged a substantial risk of future identity theft*, the time they spent protecting themselves against this speculative threat cannot create an injury.") (emphasis added).

Defendants' reliance on *In re SuperValu* is misguided. "Unlike in *in re SuperValu* … where the stolen information was limited to credit and debit card information, here the amended complaint pleads stolen social security numbers which create a higher risk of identity theft, and, therefore, Plaintiff has a substantial risk of identity theft." *Coffey v. OK Foods Inc.*, No. 2:21-CV-02200, 2022 WL 738072, at *3 (W.D. Ark. Mar. 10, 2022); *see also In re Netgain Tech., LLC*, No. 21-CV-1210 (SRN/LIB), 2022 WL 1810606, at *5 (D. Minn. June 2, 2022) (distinguishing *SuperValu*); *Perry*, 650 F. Supp. 3d 743, at 751-52 (same); *In re Pawn Am.*, 2022 WL 3159874, at *4 n.5 (same); *Mackey*, 2021 WL 3363174, at *5 (same).

*SuperValu* focused on the specific type of information breached and distinguished between the risks created in a breach involving the theft of sensitive static PII (like a combination of names, dates of birth, health information, and Social Security numbers) versus the risk created in a breach involving the mere theft of payment card data. *See SuperValu*, 870 F.3d at 770 ("Initially, we note that the alleged

7

stolen Card information does not include any personally identifying information, *such as social security numbers, birthdates, or driver's license numbers*" and card information "cannot be used to open unauthorized new accounts") (emphasis added). In other words, the Eighth Circuit noted that the unlawful disclosure of Social Security numbers, *by itself*, and/or other information that provides a route to create new accounts may indeed warrant Article III standing based upon a substantial risk of future harm. In basing their argument upon *SuperValu*, Defendants make the mistake of completely ignoring the critical factual distinction that many courts (including the *SuperValu* court itself) have recognized – there is not a substantial risk of future harm when payment cards are compromised. But when Social Security numbers, combined with other data (including PHI) are stolen, there is.[3]

Here, Plaintiffs' most sensitive data has been stolen by cybercriminals and published on the Dark Web. As a result, Plaintiffs have spent, and will continue to spend, significant time dealing with the consequences of the Data Breach and mitigating the substantial risk of imminent harm that they have faced since its occurrence. Compl. ¶¶ 9, 108, 115, 125, 130, 136, 138, 141, 147, 149, 152, 158, 160, 172. Such mitigation steps are reasonable and necessary following a data breach of this nature. *Id.* ¶¶ 88-104. Even Defendants' letters to Plaintiffs recommended that they take these steps. *Id.* ¶ 36. This Court should follow the majority of other federal courts, within the Eighth Circuit and elsewhere, to hold that mitigation efforts are sufficient to confer standing following a data breach that poses a substantial risk of harm.

c.  <u>Plaintiffs Were Injured from the Diminished Value of Their PII.</u>

---

[3] Defendant's reliance on *Wilson v. J.B. Hunt Transp., Inc.*, 5:21-CV-5194, 2022 WL 20273042 (W.D. Ark. Oct. 6, 2022) is similarly misguided. There was no data breach in *Wilson*, but rather a website misconfiguration that may have allowed persons to view job applicants' PII. The reason the *Wilson* court found no risk of future harm is because it concluded that "Plaintiffs have no facts to indicate a data breach occurred and that their PII 'was ... accessed by unknown, unauthorized actors.'" *Id.* at *4 (ellipsis in original) (citation omitted). Where, as here, unauthorized actors took files containing Plaintiffs' Social Security numbers, there is a particularized, actual, and imminent injury sufficient to support Article III standing.

The value of Social Security numbers, PHI, and other information accessed in the Data Breach is largely "derive[d] from the fact that it is private …." *See In re Pawn Am.*, 2022 WL 3159874, at *3. Accordingly, courts have held that a "loss in value of personal information supports a finding that a plaintiff has suffered an injury in fact." *Finesse Express, LLC v. Total Quality Logistics, LLC*, 1:20cv235. 2021 WL 1192521, at *3 (S.D. Ohio Mar. 30, 2021). This "growing trend" is particularly strong in the Eighth Circuit where several courts have found it sufficient to confer standing in a data breach action. *See, e.g., Perry*, 650 F. Supp. 3d at 757 ("Lastly, Perry can arguably establish damages because he allegedly suffered injuries that included … diminution of value of the PI."); *Hall v. Centerspace, LP*, No. 22-CV-2028 (KMM/DJF), 2023 WL 3435100, at *8 (D. Minn. May 12, 2023) (noting that the "growing trend" across courts that have considered this issue is "to recognize the lost property value" of personal information); *Rodriguez v. Mena Hosp. Comm.*, No. 2:23-CV-2002, 2023 WL 7198441, at *6 (W.D. Ark. Nov. 1, 2023) ("This Court … joins *Hall* and numerous other courts in a trend of recognizing 'the lost property value of personal information.'"). Plaintiffs make express diminution of value allegations. Compl. ¶¶ 113-14, 123, 133, 144, 155, 167.  Yet, Defendants barely mention this alleged injury in their Motion. The Court should find standing on this uncontested basis alone.

### d.  Plaintiffs Lost the Benefit of Their Bargain for Data Security.

Plaintiffs had an implied bargain for data security that was breached when Plaintiffs' Private Information was stolen as a result of Defendants' failure to adequately protect this data. Compl. ¶¶ 9, 86, 112, 120, 131, 142, 153, 164, 231. Plaintiffs paid consideration for this data security in the form of their Private Information and/or money. *See Smallman v. MGM Resorts Int'l*, 638 F. Supp. 3d 1175, 1189 (D. Nev. 2022) (finding cognizable harm where plaintiffs alleged that part of the money they paid should have been used for adequate data security); *Perry*, 650 F. Supp. 3d at 757 ("Perry provided consideration by providing valuable property, his PI…. Perry can arguably establish damages because

he allegedly suffered injuries that included loss of the benefit of the bargain ….”). Defendants’ Motion fails to address this injury as it relates to standing.

### ii.   Plaintiffs’ Injuries are Fairly Traceable to Defendants and Their Data Breach.

The burden to demonstrate traceability “is relatively modest at this stage of the litigation.” *In re Pawn Am.*, 2022 WL 3159874, at *5 (citations omitted). “Court[s] must ‘presum[e] that general allegations embrace those specific facts that are necessary to support the claim.’” *Mackey*, 2021 WL 3363174, at *6 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). Moreover, Article III standing does not require that the defendant be the most immediate cause, or even a proximate cause, of plaintiff’s injuries; it requires only that those injuries be fairly traceable to the defendant. *Attias*, 865 F.3d at 629 (citing *Lexmark Int’l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014)); *see also Weisenberger*, 597 F. Supp. 3d at 1359 (“The fairly traceable standard does not equate to a standard of tort causation.”).

Defendants do not contest the traceability of most of Plaintiffs’ alleged injuries, instead electing to argue only that the theft and fraud allegedly suffered by Plaintiff Shine is not traceable to the Data Breach. See Mot. at 11-12. However, Plaintiff Shine clearly alleges that, despite taking precautionary measures leading up to and following the Data Breach, he suffered from the misuse of his Private Information after the Data Breach. Compl. ¶ 163, 168-70. Such allegations are sufficient to demonstrate traceability at this stage. *Webb*, 72 F.4th at 374 (“The complaint also alleges that Webb is ‘very careful about sharing her PII,’ ‘has never knowingly transmitted unencrypted PII over the internet or any other unsecured source,’ and stores documents containing her PII in a secure location. The obvious inference to be drawn from these allegations is that the criminal or criminals who filed the false tax return obtained Webb’s PII from the IWP data breach, not from some other source.”).

Defendants' traceability arguments seem to be "less about standing and more about the merits of causation and damages." *See In re Zappos.com, Inc.*, 888 F.3d 1020, 1029-30 (9th Cir. 2018); *see also, e.g., Lewert*, 819 F.3d at 969 (traceability is a defense to pursue at the merits phase). In *Weisenberger*, the District of Nebraska rejected the same argument that Defendants make here, holding that:

> The problem with the defendant's argument is that it narrowly focuses on what the plaintiff didn't specifically allege and ignores what the plaintiff did allege in her amended complaint. The kind of PII that the plaintiff alleged was compromised in the data breach—Social Security numbers, addresses, birth dates, names, addresses, and email addresses—is the kind of information, unlike mere credit card information, that can lead to a wide range of identity fraud. … The Court finds it plausible … a hacker could gain access to the plaintiff's credit records and credit card accounts and cause the damages that the plaintiff alleged in her amended complaint.

*Weisenberger*, 597 F. Supp. 3d at 1358–59; *see also Perry*, 650 F. Supp. 3d at 753 ("Perry became the victim of a bank scam after the data breaches…. Bay & Bay's argument that Perry did not provide his bank information is of no moment for establishing standing; Perry provided certain information to Bay & Bay that was stolen and thereafter misused. Therefore, Perry pleads an injury in fact that is fairly traceable to Bay & Bay's conduct …."). Like *Weisenberger* and *Perry*, this Data Breach exposed highly sensitive information, including (but not limited to) full names, dates of birth, financial information, and Social Security numbers. Accordingly, Defendants' traceability argument should be rejected.

## B. Plaintiffs Plead Legally Cognizable Claims and Damages Sufficient to Withstand Defendants' Challenge under Fed. R. Civ. P. 12(b)(6)

### i.   *Plaintiffs State a Plausible Claim for Negligence*

#### a.   The implications of a lack of duty to protect sensitive information leads to an absurd conclusion.

Defendants state that Iowa courts "have not officially recognized any common law duty to safeguard personal information." Mot. at 13. Interestingly, Defendants cite recently passed laws that address data security *that are not currently in effect* in order to attempt to demonstrate what it considers the will of the legislature regarding protection of PHI to be. However, the statutes in question also

exempt "[p]ersonal data collected, processed, sold, or disclosed in compliance with the federal Driver's Privacy Protection Act of 1994;" "[p]ersonal data regulated by the federal Family Educational Rights and Privacy Act[; and p]ersonal data collected, processed, sold, or disclosed in compliance with the federal Farm Credit Act." A fairer reading of this statute, rather than Defendants' interpretation, is that the Legislature chose not to define duties where other statutory schemes and established principles were already clearly in place; adding additional protections would be redundant, or risk interfering with federal statutes. It is not reasonable to assume that the legislature is endorsing the proposition that a hospital has no duty to protect the confidentiality of its patient's information, but rather more likely that it is recognizing this duty pre-exists the new statute. *See, e.g.* Iowa Admin. Code 653-13.7 (147,148,272C) ("A physician shall maintain the confidentiality of all patient information obtained in the practice of medicine. Information shall be divulged by the physician when authorized by law or the patient or when required for patient care.").

That the confidential relationship between a medical provider and patient differs from a standard commercial arm's-length transaction, and the risks of failure to maintain confidentiality should not be controversial. *See, e.g.* CAC ¶¶ 11, 28, 31-32, 43-45, 48, 57-58, 74, 95; *see also* Amer. Medical Assoc., AMA Code of Medical Ethics, https://code-medical-ethics.ama-assn.org/principles ("A physician shall … safeguard patient confidences and privacy within the constraints of the law.'"). Surely Defendants do not deny that doctor-patient confidentiality is an important feature of the relationship between them and Plaintiffs, and a foundational part of the medical profession distinct from and above the sharp practices found, for instance, in the marketplace for the sale of goods.

But the Court need not get so granular with the concept of a duty in the context of a claim for negligence. The absence of a specific identified and particularized duty does not eliminate the general duty "to conform to a standard of conduct to protect others." *Nationwide Agribusiness v. Structural Restoration, Inc.*, 705 F. Supp. 2d 1070, 1077–78 (S.D. Iowa 2010). "[I]n negligence cases the duty is

always the same, to conform to the legal standard of reasonable conduct in the light of the apparent risk...." *Id.* at 1078 (quoting *Larsen v. United Fed. Sav. & Loan Ass'n of Des Moines,* 300 N.W.2d 281, 285 (Iowa 1981)).  "Our cases have suggested three factors should be considered in determining whether a duty to exercise reasonable care exists: '(1) the relationship between the parties, (2) reasonable foreseeability of harm to the person who is injured, and (3) public policy considerations.'" *Thompson v. Kaczinski,* 774 N.W.2d 829, 834 (Iowa 2009) (*Stotts v. Eveleth,* 688 N.W.2d 803, 807 (Iowa 2004)). Plaintiffs have pleaded each of these considerations. CAC ¶¶ 30-32 (the relationship between the parties establishes a duty); ¶¶ 11, 41-54, 87-101 (harm was foreseeable and in fact known); ¶¶ 57-76 (safeguarding PHI is a matter of substantial public policy). Defendants cannot demonstrate the absence of a duty and, as such, their argument for dismissal on this ground should be rejected.

> b.  The principles underlying the economic loss rule do not apply.

Defendants next assert application of the economic loss rule precludes a claim for negligence. Defendants state that "Plaintiffs cannot allege any damages in negligence beyond economic loss, and consequently, their tort claims are barred by the economic loss doctrine."  Mot. at 14.  This is simply mistaken.

Plaintiffs have pleaded damage to a property interest in their PHI, loss of privacy, and emotional distress damages, which are personal injuries.[4] The mere fact that these are compensable by

---

[4] At least one court has questioned the applicability of the economic loss rule in a data breach context based on its general principles and the idiosyncrasies of data breach litigation. *See In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.,* 440 F. Supp. 3d 447, 475–76 (D. Md. 2020) ("Data security breach cases are unique in many ways. First, they are of recent origin, inasmuch as the transition to a vast digital economy has happened only recently. Second, as this case amply shows, data security breach cases do not fit neatly into the paradigm of the cases that led to the adoption of the economic loss doctrine. When a consumer logs onto the website of a hotel to book a room, the "product" purchased is a hotel room, not the secure storage of the personal and financial information required to complete the transaction."). The court raised numerous questions about the relationship of the parties and possibility of contracting to allocate the risks.  Application of the economic loss rule here does nothing to address the aims of the rule.  *Greenstate Credit Union v. Hy-Vee, Inc.,* 549 F. Supp. 3d 969, 976 (D.

monetary damages does not render them "economic loss." *See Fox v. Iowa Health Sys.*, 399 F. Supp. 3d 780, 794 (W.D. Wis. 2019) ("The rationale is that tort law affords a remedy for losses occasioned by personal injuries or damage to one's property.") (internal quotation omitted). But it is also the case that "Iowa law holds that 'where a duty recognized by the law of torts exists between the plaintiff and defendant distinct from a duty imposed by the contract ... a tort action [will] lie for conduct in breach of the contract.'" *Hagen v. Siouxland Obstetrics & Gynecology, P.C.*, 964 F. Supp. 2d 951, 972 (N.D. Iowa 2013) (quoting *Haupt v. Miller*, 514 N.W.2d 905, 910 (Iowa 1994) (quoting *Preferred Mktg. Associates Co. v. Hawkeye Nat'l Life Ins. Co.*, 452 N.W.2d 389, 397 (Iowa 1990))). Iowa law recognizes the duties established under a negligence *per se* theory, a "duty recognized by the law of torts," pleaded here. *See, e.g. Koll v. Manatt's Transp. Co.*, 253 N.W.2d 265, 270 (Iowa 1977) ("a violation of OSHA and IOSHA standards was evidence of negligence on the part of Manatt's Transportation Co."). The parties cannot contract over the statutory duties, rendering them separate from the contract interest implicit in the economic loss rule. The Court should therefore decline to invoke the economic loss rule to preclude Plaintiffs' claims under negligence theories.

### ii. *Plaintiffs Sufficiently Allege Claims for Breach of Contract and Breach of Implied Contract Based on Defendants' Conduct.*

To receive medical services, Plaintiffs were required to provide their Private Information to Defendants. CAC ¶ 27. Plaintiffs entrusted Defendants with their Private Information based on the terms and objective manifestations contained in Defendants' "Notice of Privacy Practices"[5] and "HIPAA Policy."[6] Defendants' HIPAA Policy states that they "will not disclose any of the information contained in your medical records to anyone other than those involved in your care . . . unless you

---

Minn. 2021) ("The rule aims to limit potentially limitless liability resulting from economic reverberations and encourages parties to enter into contracts.") (internal quotations omitted).
[5]https://www.mercyone.org/desmoines/_assets/documents/portals/mercyonedesmoinesnoticeofprivacy7-19.pdf (last visited Jan. 25, 2024).
[6] *See* https://www.mercyone.org/for-patients/hipaa-policy (last visited Jan. 25, 2024).

have given us advance written permission." *Id.* ¶ 28. Plaintiffs performed their requisite duties by providing Defendants with their Private Information in exchange for services. However, Defendants breached the contract by failing to adequately safeguard the Private Information entrusted to it resulting in the unauthorized disclosure of Plaintiffs' Private Information. *Id.* ¶¶ 226-27. As a result of Defendants' conduct, Plaintiffs have been harmed. *Id.* ¶¶ 86, 107-73.

Plaintiffs and Defendants formed an enforceable contract when Plaintiffs provided their PII to Defendants subject to their Privacy Policy. Compl. ¶ 224. Courts routinely find that a plaintiff's adequate allegations regarding the formation of a contract support a claim for breach of contract in data breach litigation, particularly when the business has a public-facing privacy policy. *See, e.g., In re Cap. One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 410-411 (E.D. Va. 2020) (holding plaintiffs sufficiently alleged a breach of contract claim based on the bank's breach of contractual obligations under its privacy policy); *In re Marriott Int'l, Inc.*, 440 F. Supp. 3d 447, 484 (D. Md. Feb. 21, 2020) (holding statements in defendant hotel's privacy policy "constitute objective offers to protect the personal information that it collects under the terms of the privacy statements"); *Dolmage v. Combined Ins. Co. of Am.*, 2016 U.S. Dist. LEXIS 22472, at *32 (N.D. Ill. Feb. 23, 2016) (denying a motion to dismiss an express contract claim based on similar representations made in a privacy policy).

The *Kuhns v. Scottrade, Inc.* case cited by Defendants on page 15 of their Motion is easily distinguishable because, unlike Defendants' HIPAA Policy here, Scottrade's Privacy Policy did not objectively promise non-disclosure subject to written permission. 868 F.3d 711, 717 (8th Cir. 2017). Defendants' Privacy Policy, on the other hand, makes clear that Plaintiffs' Private Information will not be disclosed absent written permission—an objective manifestation Defendants failed to uphold. In addition, the plaintiffs in the *Kuhns* case did "not identify a single 'applicable law and regulation' that Scottrade allegedly breached regarding its data security practices." *Id.* Here, Plaintiffs alleged

multiple laws and regulations that Defendants violated, including Title II of HIPAA and Section 5 of the Federal Trade Commission Act. Compl. ¶¶ 57, 58, 69, 71.

On page 15 of their Motion, Defendants also cite to *Carlsen v. GameStop, Inc.*, which is inapposite given *Carlsen* did not involve the unauthorized disclosure of private information following a data breach as Defendants suggest, and the types of information disclosed were not protected in GameStop's privacy policy from disclosure. 833 F.3d 903, 907-11 (8th Cir. 2016). The unauthorized disclosure of Plaintiffs' PHI here falls squarely within Defendants' Notice of Privacy Practices' definition for "protected health information." Compl. ¶ 1. Therefore, Plaintiffs entrusted their Private Information to Defendants under the belief and reasonable expectation that the terms outlined in the Privacy Policy would be implemented.

Furthermore, Plaintiffs adequately pled their breach of implied contract claim, which is pled in the alternative to their breach of contract claim, for the many of the same reasons the breach of contract claim is adequately pled. By providing Defendants with their PII and PHI, Defendants were obligated to protect Plaintiffs' Private Information in accordance with their policies, practices, and applicable law. Compl. ¶ 237. *See Castillo v. Seagate Technology, LLC*, No. 16-CV-01958-RS, 2016 U.S. Dist. LEXIS 187428, at *29 (N.D. Cal. Sept. 14, 2016) (explaining that the mandatory receipt of Social Security numbers or other sensitive personal information implies the recipient's assent to protect the information sufficiently).

Similar federal courts have accurately articulated, when evaluating a breach of implied contract claim, especially in the data breach context, that "an implied contract is formed when a person discloses sensitive information in order to receive a benefit, with the expectation that such information will be protected." *Rudolph v. Hudson's Bay Co.*, No. 2019 U.S. Dist. LEXIS 77665, at *34 (S.D.N.Y. May 7, 2019) (denying defendant's motion to dismiss a breach of implied contract claim when

defendant's conduct and surrounding circumstances indicated defendant's agreement to protect plaintiff's personal information). That is the case here, and the Motion should be dismissed.

### iii.    Plaintiffs Adequately Plead a Claim for Unjust Enrichment.

Defendants grossly mischaracterize Plaintiff's claim for unjust enrichment at page 17 of their Motion, arguing that they did not benefit from the cyberattack and, for that reason, Plaintiffs' unjust enrichment claim should fail. However, nowhere in the Complaint do Plaintiffs make such a nonsensical claim; rather, Plaintiffs claim that Defendants received a benefit from their (and Class Members') Private Information and/or money paid for medical services, which benefits should have included cybersecurity protection that Defendants failed to implement. Compl. ¶260.

*SuperValu* is, once again, relied upon by Defendants and, once again, is distinguishable given the fact the court dismissed the unjust enrichment claim because the plaintiff did not allege that his payment went toward data protection. Conversely, Plaintiffs here allege that Defendants' data security is funded from its general revenue, including from payments made to it by Plaintiffs and Class Members. Compl. ¶¶ 261, 262. Because Defendants fund their data security practices with their general revenue, which is made up, at least in part, by the money paid by Plaintiffs, the benefits received by Defendants were at Plaintiff's expense. Other courts have ruled that allegations of money paid by patients for medical services, a portion of which were to be used for data security, are sufficient to survive a motion to dismiss. *See Charlie v. Rehoboth McKinley Christian Health Care Servs.*, 598 F. Supp. 3d 1145 (D.N.M. 2022) (denying motion to dismiss where Plaintiff alleged that a portion of money paid for medical services was to be used to secure patient data).[7]

---

[7] *See also In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130 (C.D. Cal. 2021) (denying motion to dismiss where Plaintiff alleged that a portion of money paid for genetic testing services was expected to be used for adequate data security); *In re Banner Health Data Breach Litig.*, No. CV-16-02696-PHX-SRB, 2017 WL 6763548 (D. Ariz. Dec. 20, 2017) (denying motion to dismiss where Plaintiff alleged that part of the money used to pay for healthcare services "was supposed to be used for the administrative costs of data security"); *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, 198 F.

> ### iv.   Plaintiffs' Claim for Breach of Fiduciary Duty/Breach of Confidence is Sound.

"A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Kurth v. Van Horn*, 380 N.W.2d 693, 695 (Iowa 1986) (quoting Restatement (Second) of Torts § 874 comment a, at 300 (1979)).  "Some of the indicia of a fiduciary relationship include the acting of one person for another; the having and the exercising of influence over one person by another; the reposing of confidence by one person in another; the dominance of one person by another; the inequality of the parties; and the dependence of one person upon another."  *Id.* at 696 (quoting *First Bank of Wakeeney v. Moden*, 235 Kan. 260, 262, 681 P.2d 11, 13 (1984)).

Defendants argue that the traditional fiduciary duties owed by a physician to a patient[8] should not be expanded to a hospital in the context of securing a patient's PII or PHI.  While apparently an issue of first impression in Iowa, when faced with the same issue, the court in *Purvis v. Aveanna Healthcare*, LLC, 563 F. Supp. 3d 1360 (N.D. Ga. 2021) denied a similar motion to dismiss, ruling that the plaintiffs had stated a claim for breach of fiduciary duty against the defendant hospital following a data breach: "Plaintiffs' alleged relationship with Defendant . . . necessarily entailed the patient-Plaintiffs sharing and disclosing private health information with Defendant that was akin to the health information that would be communicated to a physician when receiving medical care."  *Id.* at 1383.

---

Supp. 3d 1183 (D. Or. 2016) (denying motion to dismiss where Plaintiffs allege that part of the funds paid to Defendant were "supposed to be allocated to data security"); *Foster v. Health Recovery Servs., Inc.*, 493 F. Supp. 3d 622 (S.D. Ohio 2020) (denying motion to dismiss where "Plaintiff alleges that he conferred a benefit on Defendant by paying Defendant for health care services pursuant to an implied contract which required Defendant to safeguard Plaintiff's sensitive medical information); *Fox v. Iowa Health Sys.*, 399 F. Supp. 3d 780 (W.D. Wis. 2019) (denying a motion to dismiss where plaintiffs alleged they did not receive the full benefit of the bargain when they did not receive data protection that was expected to come with payment for medical services.)

[8] A doctor-patient relationship gives rise to fiduciary duties in Iowa.  *Est. of Anderson ex rel. Herren v. Iowa Dermatology Clinic, PLC*, 819 N.W.2d 408, 415 (Iowa 2012).

"Accordingly, when viewing Plaintiffs' allegations in the light most favorable to them, the Court finds that there is an issue of fact—at least at this stage—as to whether the patient-Plaintiffs were 'justified in reposing confidence' in Defendant with regard to the security of their private information, including their medical information and PHI." *Id.*

Similarly, in *Opris v. Sincera Reprod. Med.*, 2022 WL 1639417 (E.D. Pa. May 24, 2022), another data breach case, the court ruled that the plaintiffs stated a claim against a hospital for breach of fiduciary duty for the same reason: "Plaintiffs have sufficiently alleged a confidential, patient-doctor relationship between themselves and Defendant sufficient to satisfy the definition of a fiduciary relationship under Pennsylvania law." *Id.* at \*11.

Here, Plaintiffs allege they established a special relationship with Defendants by virtue of providing, and Defendants correspondingly accepting, their Private Information in the course of medical treatment.  Compl. ¶¶ 282-284. Plaintiffs also allege Defendants violated this duty by failing to protect Plaintiffs' Private Information from outside intrusion. *Id.* ¶¶ 285-288. For these reasons, Plaintiffs have stated a claim for breach of fiduciary duty/confidence.

### v.   *Plaintiffs' Claim for Declaratory/Injunctive Relief is Adequately Pled*

A plaintiff has standing to bring a declaratory judgment action if faced with an impending future injury. *Pub. Water Supply Dist. No. 8 of Clay Cnty., Mo. v. City of Kearney, Mo.*, 401 F.3d 930, 932 (8th Cir. 2005); *see Cnty. of Mille Lacs v. Benjamin*, 361 F.3d 460, 463 (8th Cir. 2004) ("A party has standing to bring a claim if it has suffered some actual or threatened injury."). Declaratory relief is available to address a defendant's deficient data-protection practices following a security breach. *See, e.g., In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1221 (N.D. Cal. 2014) ("Plaintiffs plausibly allege that they face a substantial risk of future harm if Adobe's security shortcomings are not redressed, making this dispute sufficiently real and immediate, and the dispute underlying Plaintiffs'

declaratory relief claim concerns Adobe's current security practices, rather than a hypothetical set of acts or omissions."); *Perry*, 650 F. Supp. 3d at 751 ("An increased risk of identity theft is more likely to constitute an injury in fact where there is evidence that a third party has accessed PI and/or already fraudulently used the data.").

Defendants argue that Plaintiffs lack standing because they have not "pled any sufficient facts demonstrating present or impending harm." Mot. at 20. To the contrary, Plaintiffs alleged in detail that Defendants' substandard data security practices led to the prior breach, and that there is no reason to believe Defendants have taken *any* additional precautions—e.g., additional employee training and/or security measures—to prevent a subsequent breach. *Id.* ¶¶295-296. Having successfully breached Defendants' data system once (and thus having proved its infirmity), data thieves are more likely to breach it again absent additional security measures. Accordingly, Plaintiffs have standing to bring a declaratory judgment claim to force these additional measures to protect their PII and PHI.

CONCLUSION

For the reasons set forth herein, Defendant's Motion to Dismiss should be denied.

Respectfully Submitted,

Dated: January 30, 2024

/s/ Brian O. Marty
J Barton Goplerud, AT0002983
Brian O. Marty, AT0011622
SHINDLER, ANDERSON, GOPLERUD &
WEESE P.C.
5015 Grand Ridge Drive, Suite 100
West Des Moines, IA 50265
Telephone: (515) 223-4567
Facsimile: (515) 223-8887
*marty@sagwlaw.com*
*goplerud@sagwlaw.com*

Jeffrey O'Brien, AT0014827
Bryan L. Bleichner (admitted *pro hac vice*)
Philip J. Krzeski (admitted *pro hac vice*)

CHESTNUT CAMBRONNE PA
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Telephone: (612) 339-7300Fax: (612) 336-2940
jobrien@chestnutcambronne.com
bbliechner@chestnutcambronne.com
pkrzeski@chestnutcambronne.com

Dylan J. Gould (admitted *pro hac vice*)
Terance R. Coates (admitted *pro hac vice*)
MARKOVITS STOCK & DEMARCO, LLC
119 E. Court Street, Suite 530
Cincinnati, OH 45202
dgould@msdlegal.com
tcoates@msdlegal.com

Josh Sanford (admitted *pro hac vice*)
SANFORD LAW FIRM, PLLC
10800 Financial Centrre, Pkwy., Ste 510
Little Rock, AK 72211
Telephone: (501) 787-2040
josh@sanfordlawfirm.com

Mason A. Barney (admitted *pro hac vice*)
Tyler J. Bean (admitted *pro hac vice*)
SIRI & GLIMSTAD LLP
745 Fifth Avenue, Suite 500
New York, NY 10151
mbarney@sirillp.com
tbean@sirillp.com

*Counsel for Plaintiff and Putative Rule 23 Class*