# EXHIBIT 1

2018 WL 2387078 (C.A.8) (Appellate Brief)
United States Court of Appeals, Eighth Circuit.

Melissa ALLERUZZO; Heidi Bell; Rifet Bosnjak; John Gross; Kenneth Hanff; David Holmes; Steve McPeak; Gary Mertz; Katherin Murray; Christopher Nelson; Carol Puckett; Alyssa Rocke; Timothy Roldan; Ivanka Soldan; Melissa Thompkins; Darla Young, Plaintiffs-Appellants,

v.

SUPERVALU, INC.; AB Acquisition, LLC; New Albertsons, Inc., Defendants-Appellees.

No. 18-1648.
May 17, 2018.

Appeal from the Judgment of the United States District Court for the
District of Minnesota in Civil Action No. 14-md-2586 (Montgomery, J.)

**Brief of Plaintiffs-Appellants**

Ben Barnow, Barnow and Associates, P.C., One N. LaSalle Street, Ste. 4600, Chicago, IL 60602, (312) 621-2000 (p), (312) 641-5504 (f), b.barnow @barnowlaw.com, for plaintiffs-appellants.

**\*ii  TABLE OF CONTENTS**

| | |
|---|---|
| Summary of the Case | i |
| Table of Contents | ii |
| Table of Authorities | iv |
| Jurisdictional Statement | 1 |
| Statement of Issues | 1 |
| Statement of the Case | 3 |
| A. Statement of Facts | 3 |
| B. Procedural History | 4 |
| C. Rulings Presented For Review | 7 |
| Summary of Argument | 7 |
| Argument | 10 |
| I. The District Court Erred In Dismissing Holmes' Claims Under Fed. R. Civ. P. 12(b)(6) | 10 |
| A. Legal Standard | 10 |
| B. Holmes Plausibly Alleges Cognizable Damages | 12 |
| C. Under The Collateral Source Doctrine, Whether Holmes Was Reimbursed Is Irrelevant | 15 |
| D. Mitigation And Remediation Costs In Time And Money Justify Money Damages | 16 |
| E. Defendants Owed A Duty To Implement And Maintain Commercially Reasonable Cybersecurity Over Customer Data | 19 |
| \*iii  F. The Economic Loss Doctrine Does Not Bar Holmes' Negligence Claim | 22 |
| G. The CAC States A Claim For Breach of Implied Contract | 23 |
| H. The CAC States A Claim For Unjust Enrichment | 25 |
| I. The District Court Committed Several Other Errors That Require Reversal | 26 |
| II. The District Court Erred In Denying Plaintiffs' Motion For Leave To Amend Their Complaint | 27 |
| A. Legal Standard | 27 |
| B. The District Court Should Have Granted Plaintiffs Leave To Amend Their Complaint Because Amendment Would Not Be Futile | 28 |
| C. Defendants Did Not Meet Their Burden To Establish Significant Prejudice | 35 |
| Conclusion | 38 |

**\*iv  TABLE OF AUTHORITIES**

*Cases*

| | |
|---|---|
| *2314 Lincoln Park West Condo. Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 555 N.E.2d 346 (Ill. 1990) | 22 |
| *Arthur v. Catour*, 833 N.E.2d 847 (Ill. 2005) | 15 |
| *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) | 11 |
| *Attias v. Carefirst, Inc.*, 865 F.3d 620 (D.C. Cir. 2017) | 32 |
| *Bennett v. Spear*, 520 U.S. 154 (1997) | 8, 29, 35 |
| *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) | 11 |
| *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585 (8th Cir. 2009) | 11 |
| *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015) | 30 |
| *Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 644 F.2d 690 (8th Cir. 1981) | 37, 38 |
| *Cooney v. Chi. Pub. Sch.*, 347 N.E.2d 23 (Ill. App. Ct. 2010) | 21 |
| *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778 (8th Cir. 2008) | 28 |
| *Couzens v. Donohue*, 854 F.3d 508 (8th Cir. 2017) | 11 |
| *v *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826 (7th Cir. 2018) | passim |
| *Dennis v. Dillard Dep't Stores, Inc.*, 207 F.3d 523 (8th Cir. 2000) | 37 |
| *Fed. Ins. Co. v. Sammons Fin. Grp., Inc.*, 320 F.R.D. 192 (S.D. Iowa 2013) | 28 |
| *Fed. Trade Comm'n v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015) | 20 |
| *Fogel v. Zell*, 221 F.3d 955 (7th Cir. 2000) | 17 |
| *Foman v. Davis*, 371 U.S. 178 (1962) | 27 |
| *Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384 (6th Cir. 2016) | 32 |
| *Hertz Corp. v. Friend*, 559 U.S. 77 (2010) | 29 |
| *Hopkins v. Saunders*, 199 F.3d 968 (8th Cir. 1999) | 11 |
| *HPI Health Care Serv., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672 (Ill. 1989) | 25 |
| *Hughes v. City of Cedar Rapids, Iowa*, 840 F.3d 987 (8th Cir. 2016) | 10 |
| *In re LabMD*, No. 9357, 2016 WL 4128215 (F.T.C. July 28, 2016) | 20 |
| *In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942 (S.D. Cal. 2014) | 19 |
| *vi *In re SuperValu, Inc.*, 870 F.3d 763 (8th Cir. 2017) | passim |
| *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154 (D. Minn. 2014) | passim |
| *In re Zappos.com, Inc.*, No. 16-16860, 2018 WL 1883212 (9th Cir. Apr. 20, 2018) | 14, 26, 33 |
| *In re Zappos.com, Inc.*, No. 3:12-cv-00325-RCJ, 2013 WL 4830497 (D. Nev. Sept. 9, 2013) | 19, 20 |
| *Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064 (C.D. Ill. 2016) | 24 |
| *Iverson v. Wells Fargo Bank, N.A.*, 502 F. App'x 624 (8th Cir. 2013) | 10 |
| *Klesowitch v. Smith*, 52 N.E.3d 365 (Ill. App. Ct. 2016) | 15 |
| *Kozlov v. Associated Wholesale Grocers, Inc.*, 818 F.3d 380 (8th Cir. 2016) | 36, 37 |
| *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963 (7th Cir. 2016) | 14, 17, 18 |
| *Lewert v. P.F. Chang's China Bistro, Inc.*, No. 1:14-cv-04787 (N.D. Ill. Apr. 26, 2017) | 17, 24 |
| *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014) | 29 |
| *Libertarian Party of S. Dakota v. Krebs*, 312 F.R.D. 523 (D.S.D. 2016) | 27 |
| *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) | 8, 29 |

Case 4:23-cv-00195-SHL-SBJ   Document 43-1   Filed 03/05/24   Page 4 of 20

Melissa ALLERUZZO; Heidi Bell; Rifet Bosnjak; John..., 2018 WL 2387078...

| | |
|---|---|
| *vii  *McGrady v. Chrysler Motors Corp.*, 360 N.E.2d 818 (Ill. App. Ct. 1977) .................. | 17 |
| *Moorman Manuf. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443 (Ill. 1982) ... | 22 |
| *Osborn v. United States*, 918 F.2d 724 (8th Cir. 1990) ................ | 30 |
| *Popp Telcom v. Am. Sharecom, Inc.*, 210 F.3d 943 (8th Cir. 2000) ...... | 27 |
| *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989) .......................... | 14 |
| *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688 (7th Cir. 2015) .. | 16, 18 |
| *Remijas v. The Neiman Marcus Grp., LLC*, No. 1:14-cv-01735 (N.D. Ill. Jan. 13, 2016) ................ | *passim* |
| *Resnick v. AvMed, Inc.*, 693 F.3d 1317 (11th Cir. 2012) ...................... | 19 |
| *Roberson v. Hayti Police Dep't*, 241 F.3d 992 (8th Cir. 2001) ............. | 28 |
| *Sanders v. Clemco Indus.*, 823 F.2d 214 (8th Cir. 1987) ..................... | 28, 37 |
| *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) .................................. | 29 |
| *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334 (2014) ................ | 30, 31, 33, 35 |
| *Thompson v. CACH, LLC*, No. 14CV 0313, 2014 WL 5420137 (N.D. Ill. Oct. 24, 2014) ................ | 17 |
| *viii  *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843 (8th Cir. 2014) ................ | 10, 11 |
| *Wills v. Foster*, 892 N.E.2d 1018 (Ill. 2008) ........................................ | 15 |
| **Statutes, Rules, and Regulations** | |
| 15 U.S.C. § 45 ..................................................................................... | 20 |
| 28 U.S.C. § 1291 ................................................................................. | 1 |
| 28 U.S.C. § 1332 ................................................................................. | 1 |
| Fed. R. Civ. P. 8 ................................................................................. | 11, 12, 14, 27 |
| 815 Ill. Comp. Stat. 505/2 .................................................................. | 20 |
| 815 Ill. Comp. Stat. 530/45 ................................................................ | 21 |

*i  **SUMMARY OF THE CASE**

This case is now before this Court for the second time. During the summer of 2014, hackers exploited Defendants-Appellees' ("Defendants") lax cybersecurity and installed RAM scraper malware on multiple point-of-sale terminals in multiple locations, enabling the hackers to harvest payment card data from Defendants' stores for approximately one month before Defendants realized what was happening.

After shopping at one of Defendants' compromised stores, Plaintiff Holmes incurred a fraudulent credit card charge, cancelled the card, waited two weeks for a replacement card to arrive, and spent time monitoring his financial accounts. Rather than address these well-pled facts - as this Court did in its prior Opinion recognizing Holmes' standing - the district court incorrectly applied a heightened pleading standard and dismissed Holmes' claims because he did not specifically allege he incurred unreimbursed out-of-pocket losses as a result of the credit card fraud.

Plaintiffs also sought to amend their complaint to furnish additional support for the argument that the Data Breach created a sufficiently imminent and serious risk of identity theft to confer Article III standing. The interests of justice and the federal policy in favor of having cases decided on their merits weigh in favor of giving Plaintiffs a chance to amend their complaint to plead their standing. Plaintiffs request 30 minutes of oral argument to address these important questions in data breach cases, which unfortunately, continue to proliferate.

*1  **JURISDICTIONAL STATEMENT**

The district court exercised jurisdiction over Plaintiffs-Appellants' ("Plaintiffs") claims pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, the matter is brought as a class action in which at least one member of a class of plaintiffs is a citizen of a state different from any defendant, and the number of members of all proposed plaintiff classes in the aggregate is 100 or more.

Case 4:23-cv-00195-SHL-SBJ Document 43-1 Filed 03/05/24 Page 5 of 20

Melissa ALLERUZZO; Heidi Bell; Rifet Bosnjak; John..., 2018 WL 2387078...

This Court has jurisdiction pursuant to 28 U.S.C. § 1291 over the final judgment of the district court, entered on March 8, 2018. Plaintiffs timely filed an appeal on March 14, 2018.

*STATEMENT OF ISSUES*

1. After shopping at one of Defendants' compromised stores, Plaintiff Holmes incurred a fraudulent credit card charge, cancelled the card, waited two weeks for a replacement card to arrive, and spent time monitoring his financial accounts. Rather than address these factual allegations, the district court concluded Holmes failed to plead cognizable injury because he did not also specifically allege that he suffered unreimbursed out-of-pocket losses as a result of the credit card fraud he incurred. Does the district court's approach violate established federal notice pleading standards?

**\*2** List of Apposite Cases: *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826 (7th Cir. 2018); *In re SuperValu, Inc.*, 870 F.3d 763 (8th Cir. 2017); *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843 (8th Cir. 2014)

List of Apposite Statutes: 815 Ill. Comp. Stat. 505/2; 15 U.S.C. § 45.

2. Do victims of a merchant payment card data breach face a sufficiently imminent risk of future injury to confer Article III standing when they allege facts showing the sophisticated, intentional, and criminal nature of the data breach that compromised their data, that their data was in fact stolen in the data breach, that one plaintiff has suffered fraudulent charges because of the breach, that financial institutions have observed significant rates of fraud attributable to the data breach among their accountholders, that the rates of fraud among compromised cards in general is significant, and that criminals can misuse such information or sell such information for misuse well into the future to commit financial fraud and use it to phish for more sensitive information and commit more insidious forms of identity theft and other crimes?

List of Apposite Cases: *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334 (2014) *In re SuperValu, Inc.*, 870 F.3d 763 (8th Cir. 2017); *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688 (7th Cir. 2015); *Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963 (7th Cir. 2016).

List of Apposite Constitutional Provisions: U.S. Const., Art. III

**\*3** **STATEMENT OF THE CASE**

**A. Statement of Facts**

Defendants-Appellees Supervalu, Inc., AB Acquisition, LLC, and New Albertson's Inc. ("Defendants") collectively own, operate, and franchise grocery stores throughout the country. Defendant Supervalu provided all of the electronic payment processing services for Defendants' stores. Consolidated Amended Class Action Complaint ("CAC") ¶¶ 2-3; JA-27.

On or about August 14, 2014, it was announced through press releases that for a period of about a month, between June 22, 2014 and July 17, 2014, hackers gained access to Defendants' payment processing systems and installed malicious software that released and disclosed the payment card information of their shoppers (the "Data Breach"). CAC ¶ 36; JA-38. The announcement cautioned that "it is possible that time frames, locations and/or at-risk data in addition to those described above will be identified in the future." CAC ¶ 37; JA-38.

Defendants' network security was inadequate and unreasonable. The hackers used remote access tools, such as LogMeIn or Microsoft Remote Desktop to gain unauthorized access. CAC ¶ 38; JA-38. Once inside, hackers were able to exploit weak authentication requirements and failures to employ lockout security procedures. CAC ¶ 38; JA-38. There were insufficient segregation and firewalls on point-of-sale terminals. CAC ¶ 40; JA-39. Hackers were able to install RAM scraper **\*4** malware

Case 4:23-cv-00195-SHL-SBJ Document 43-1 Filed 03/05/24 Page 6 of 20

Melissa ALLERUZZO; Heidi Bell; Rifet Bosnjak; John..., 2018 WL 2387078...

on multiple point-of-sale terminals in multiple locations and harvest payment card data of Defendants' customers for about a month until the breach was finally noticed and responsive measures were taken. CAC ¶ 40; JA-39.

Defendants bungled their response. Thereafter, on September 29, 2014, another disclosure of payment card data was announced. CAC ¶ 44; JA-40. The second announcement arose out of the same careless and unlawful conduct of Defendants. CAC ¶ 44; JA-40. The Data Breach was entirely avoidable if Defendants had taken known, reasonable security measures. CAC ¶ 46; JA-40.

Plaintiffs shopped at Defendants' stores during the Data Breach. CAC ¶¶ 16-31; JA-30-36. Plaintiffs spent time determining if they were at risk of identity theft and monitoring their accounts to limit their exposure to fraud caused by Defendants' conduct. *Id.* David Holmes noticed a fraudulent charge on his credit card statement and immediately cancelled his credit card, which took two weeks to replace. CAC ¶ 31; JA-36.

**B. Procedural History**

After the announcement of the Data Breach, consumers brought claims against Defendants in Minnesota, Idaho, and Illinois, which were transferred to the District of Minnesota on April 28, 2015, for coordinated or consolidated pretrial proceedings under 28 U.S.C. § 1407. JA-18.

**\*5** Plaintiffs filed their Consolidated Amended Class Action Complaint on June 26, 2015. After briefing on the matter, the district court granted Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(1), concluding that Plaintiffs lacked Article III standing to assert their claims because, even though there might have been substantial evidence of negative consequences arising out of merchant data breaches generally, there was not enough specific evidence of widespread misuse of information Defendants compromised. JA-146-62. Because they were not given leave to amend, Plaintiffs filed a motion to alter or amend the judgment based on clear error and new facts, proffering declarations of bank employees stating that substantial numbers of credit and debit cards were indeed misused and traceable to the Data Breach. JA-258. The district court denied Plaintiffs' motion.

After the district court denied Plaintiffs' motion to alter or amend the judgment, Plaintiffs filed a notice of appeal. JA-268. Defendants cross-appealed, seeking a ruling on the merits of their 12(b)(6) arguments. JA-276.

Reversing the district court, this Court held that Holmes' fraudulent charge on a credit card he used to make a purchase at one of Defendants' stores affected by the Data Breach constitutes present harm sufficient to confer Article III Standing. *In re SuperValu, Inc.*, 870 F.3d 763 (8th Cir. 2017) ("*SuperValu I*"); ADD-13; JA-292. The Court recognized that "other[] [courts] have ruled that a complaint could plausibly plead that the theft of a plaintiff's personal or financial information creates **\*6** a substantial risk that they will suffer identity theft sufficient to constitute a threatened injury in fact." *Id.* at 11-13; ADD-10; JA-289. Relying largely on the language of a 2007 Government Accountability Office Report cited in the Complaint, the Court concluded the Complaint did not include sufficient facts to support a substantial risk of future identity theft resulting from the Data Breach.[1] *See id.*

On remand, Defendants filed motions to dismiss without leave of court. JA-303; JA-355. Shortly thereafter, Plaintiffs, seeing that the district court would permit motions without leave, sought leave to amend their complaint for the first time to add allegations in response to the reasoning of the Eighth Circuit. JA-357. Plaintiffs sought to add allegations that in 2013 the level of existing account fraud among compromised cards within the first year was nearly 40%. Proposed Amended Complaint ("PAC") ¶ 73; JA-388. During 2014, the year of the Data Breach, the FBI estimated that more than 1,000 retailers were under assault by the same malware that compromised Defendants, Target, and Home Depot. PAC ¶ 58; JA-383. Plaintiffs also included details regarding actual fraud rates that three financial institutions were able to attribute to the Data Breach. PAC ¶¶ 76-78; JA-389. The proposed amended **\*7** complaint also explained how linked and linkable data can be used by hackers and identity thieves to acquire additional information on the individuals which can lead to more serious and difficult-to-remedy harms. PAC ¶ 81; JA- 390.

Case 4:23-cv-00195-SHL-SBJ   Document 43-1   Filed 03/05/24   Page 7 of 20

Melissa ALLERUZZO; Heidi Bell; Rifet Bosnjak; John..., 2018 WL 2387078...

The district court denied Plaintiffs' motion for leave to amend their complaint and granted Defendants' motions to dismiss. JA-893. Plaintiffs appealed. JA-932.

**C. Rulings Presented For Review**

Plaintiffs appeal the district court's judgment granting Defendants' motions to dismiss and denying Plaintiffs' motion for leave to amend their complaint. JA-893.

*SUMMARY OF ARGUMENT*

Federal pleading rules require a short and plain statement providing fair notice of the plaintiff's claim and grounds for relief. The district court applied a much higher standard than warranted, requiring that the complaint plead a highly particular set of facts: the specific dates plaintiffs shopped at Defendants' stores, the amounts of fraudulent charges incurred as a result of the Data Breach, and whether the fraudulent charges were reimbursed by third parties. These factual allegations were not required, and the negative inferences the district court drew from their absence were impermissible as a legal and factual matter.

The specific date a plaintiff shopped at Defendants' stores is not determinative of an issue that can be resolved on a motion to dismiss. Defendants' notice expressly **\*8** cautioned that the dates in the announcement could be subject to change. Yet, the district court considered specific shopping dates relevant to whether Plaintiffs' fraud could be attributed to the Data Breach. But the Eighth Circuit's prior opinion held that Plaintiffs adequately alleged that their data was stolen in the Data Breach. There is no basis for assuming the truth of a well-pled factual allegation for purposes of a motion under Rule 12(b)(1) but then disbelieving it for purposes of Rule 12(b)(6). "[E]ach element of Article III standing 'must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.'" *Bennett v. Spear*, 520 U.S. 154, 167-68 (1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

The collateral source rule bars evidence relating to whether Plaintiff's damages were reimbursed by a third party. The issue is irrelevant, so the district court's demand for this detail was also erroneous.

It is enough that a complaint in federal court generally alleges injuries. The level of scrutiny the district court applied was unwarranted. The district court also reached erroneous conclusions with respect to the economic loss doctrine, whether Defendants owed a duty to their customers to maintain reasonable security from foreseeable cyberattacks, and whether Plaintiffs could pursue a claim based on an implied contract.

**\*9** The district court's decision to deny Plaintiffs any opportunity to amend their complaint was also erroneous, especially in light of this Court's conclusion in *Supervalu I* that the Eighth Circuit had not addressed the question and out-of-circuit precedent "came to differing conclusions" on the question of increased risk of future identity theft. Amendment would not be futile. The proposed amended complaint updated allegations regarding the substantial risk Plaintiffs and other class members faced because of the Data Breach. The first complaint had relied upon a Government Accountability Office report from 2007. But circumstances since then have changed considerably. The proposed amended complaint cited more relevant contemporaneous sources that establish a severe risk of identity theft and fraud from the Data Breach, including allegations that financial institutions had experienced significant rates of fraud on payment cards compromised in the Data Breach, that nearly 40% of data breach victims in general experience existing account fraud within the first year, and during the same year as the Data Breach, 1,000 merchants were targeted with the same kind of malware that hit Target and Home Depot, two data breaches that resulted in significant fallout and harm to consumers.

The district court held in the alternative that the amendment was not warranted because Plaintiffs delayed to the prejudice of Defendants. But Plaintiffs did not delay. They sought leave to amend as soon as they were able, and before any investment in defenses and discovery began. The district court failed to balance the **\*10** competing prejudice to both parties. Defendants

Case 4:23-cv-00195-SHL-SBJ   Document 43-1   Filed 03/05/24   Page 8 of 20

Melissa ALLERUZZO; Heidi Bell; Rifet Bosnjak; John..., 2018 WL 2387078...

suffered no prejudice, and even if they did, their prejudice is negligible in comparison to the severe prejudice to Plaintiffs of having their case thrown out entirely before having a chance to prove it.

*ARGUMENT*

The district court committed numerous errors in dismissing this case. The district court's decision granting Defendants' motions to dismiss should be reversed. In addition, the district court committed further reversible error when it refused to permit Plaintiffs an opportunity to amend their complaint upon the Eighth Circuit's remand.

**I. The District Court Erred In Dismissing Holmes' Claims Under Fed. R. Civ. P. 12(b)(6)**

**A. Legal Standard**

The Court of Appeals reviews de novo the grant of a motion to dismiss for failure to state a claim, taking all facts in the complaint as true. *Hughes v. City of Cedar Rapids, Iowa*, 840 F.3d 987, 994 (8th Cir. 2016). All reasonable inferences are drawn in the non-moving party's favor. *Iverson v. Wells Fargo Bank, N.A.*, 502 F. App'x 624, 625 (8th Cir. 2013).

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014) (quoting **\*11** *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). Accordingly, the Federal Rules of Civil Procedure prescribe a "short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* (quoting Fed. R. Civ. P. 8(a)).

A complaint need not contain detailed factual allegations so long as it contains facts that raise a right to relief above the speculative level. *Couzens v. Donohue*, 854 F.3d 508, 515 (8th Cir. 2017) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Topchian*, 760 F.3d at 848 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a sheer possibility," however it is not "a probability requirement." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). "The complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Id.*

**\*12  B. Holmes Plausibly Alleges Cognizable Damages[2]**

The district court concluded that a failure to allege cognizable damages required dismissal of Plaintiffs' negligence, statutory claims, and implied contract claims. These conclusions were erroneous.

Federal Rule of Civil Procedure 8(a)(3) requires the plaintiff to identify the remedy sought, but it does not require detail about the nature of the plaintiff's injury. *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 (7th Cir. 2018). "What's more, Rule 54(c) provides that the prevailing party receives the relief to which it is entitled, whether or not the pleadings have mentioned that relief." *Id.* Generally, a complaint cannot be faulted as insufficient if it does not identify items of loss, except for special damages. *Id.*

Plaintiff Holmes alleges losses as follows:
On information and belief, Holmes' PII was compromised as a result of Defendants' security failures. When the Data Breach was announced, Plaintiff Holmes spent time determining if his card was compromised including, but not limited to, reviewing information released about the Data Breach and the impacted locations. Shortly thereafter, Holmes noticed a fraudulent charge on his credit card statement and immediately cancelled his credit card, which took two weeks to replace. As a result of such

compromise, Holmes suffered losses and damages in an amount yet to be completely determined, as such losses and damages are ongoing and include, but are not limited, time spent monitoring his account information to guard against potential fraud.

**\*13** CAC ¶ 32; JA-37. Plaintiff Holmes further identified the following injuries:

Plaintiffs have suffered, and will continue to suffer, ascertainable losses, economic damages, and other actual injury and harm, including, *inter alia*, (i) invasion of privacy, (ii) breach of the confidentiality of their PII by Defendants' unauthorized release and disclosure, (iii) lost benefit of their bargain, (iv) deprivation of the value of their PII, for which there is a well-established national and international market, (v) diminished value of PII protection services purchased from Defendants, (vi) the untimely and inadequate notification of the Data Breach, (vii) the resulting increased risk of future ascertainable losses, economic damages and other actual injury and harm, and (viii) the opportunity cost and value of lost time they must spend to monitor their financial accounts and payment card accounts.

CAC ¶ 33; JA-37.

*Dieffenbach*, much like this case, was brought by consumers who were victimized by a merchant's data breach. *Id.* Although in *Dieffenbach* the district court had concluded that the plaintiffs had Article III standing, the district court took issue with the sufficiency of their allegations of harm for purposes of Fed. R. Civ. P. 12(b)(6). On appeal, the Seventh Circuit held that the district court gave "a new label for an old error. To say that the plaintiffs have standing is to say that they have alleged injury in fact, and if they have suffered an injury then damages are available (if Barnes & Noble violated the statutes on which the claims rest)." *Id.*

The district court here committed the same error. It held that Plaintiff Holmes had standing (as required by the Eighth Circuit's prior mandate), but nevertheless concluded that his allegations of injury were not sufficient for Rule 12(b)(6). The **\*14** district court mistakenly believed the Federal Rules required the following specifics: (1) the specific date Plaintiff Holmes shopped at the affected store (even though Defendants cautioned that the dates in their announcements were preliminary and actually suffered a second breach shortly after providing assurances that their systems were safe);[3] (2) the amount of the fraudulent charge; and (3) whether or not the fraudulent charge was subsequently reimbursed by a third party. ADD-47; JA-918. These highly particularized specifics cannot be justified under the Federal Rules. *See* Fed. R. Civ. P. 8, 9; *see also Lewert v. P.F. Chang's China Bistro, Inc.*, 819 F.3d 963, 968-69 (7th Cir. 2016) (fact that defendant contested whether plaintiffs' data were exposed in the breach was "immaterial" at pleading stage); *In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1159 (D. Minn. 2014) ("Target ... contend[s] that ... some Plaintiffs do not allege that their expenses **\*15** were unreimbursed or say whether they or their bank closed their accounts.... These arguments gloss over the actual allegations made and set a too-high standard for Plaintiff to meet at the motion-to-dismiss stage.").

### C. Under The Collateral Source Doctrine, Whether Holmes Was Reimbursed Is Irrelevant

The district court's requirement that Holmes plead and prove unreimbursed out-of-pocket losses also violated the collateral source rule. "Under the collateral source rule, benefits received by the injured party from a source wholly independent of, and collateral to, the tortfeasor will not diminish damages otherwise recoverable from the tortfeasor." *Wills v. Foster*, 892 N.E.2d 1018, 1022 (Ill. 2008). The rule has both evidentiary and substantive components. *Id.* The rule operates to prevent the jury from learning anything about collateral income. *Arthur v. Catour*, 833 N.E.2d 847, 852 (Ill. 2005). "For instance, the rule prevents defendants from introducing any evidence that all or part of a plaintiff's losses have been covered by insurance." *Klesowitch v. Smith*, 52 N.E.3d 365, 375 (Ill. App. Ct. 2016). As a substantive rule of damages, the rule bars a defendant from reducing the plaintiff's compensatory award by the amount the plaintiff received from the collateral source. *Wills*, 892 N.E.2d at 1022.

Recovery is permitted even if services were performed gratuitously, such as when a medical provider writes off amounts of bills not paid by Medicare and Medicaid. *Id.* at 1030 ("an arrangement between the plaintiff and a physician who **\*16** agrees to

perform free medical services is a relationship with a third party who is collateral to the tortfeasor"). An issuing bank reimbursing charges is not gratuitous, not relevant, and need not be pled. The arrangement between Plaintiffs and their issuer was not intended to benefit Defendants, and Defendants should be prevented from gaining from it.

In addition, contrary to what the district court concluded, accountholders would be liable for the charge, even if that were legally relevant. Accountholders are generally liable for fraudulent charges unless they are spotted and disputed, and even then there are exceptions. *See, e.g.*, *https://www.visa.com/chip/personal/security/zero-liability.jsp* (last visited May 9, 2018) ("replacement funds" contingent upon timely notification, gross negligence, delay, account standing, and history, among others). At best, Defendants raise fact issues that are not capable of resolution on a motion to dismiss. *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 697 (7th Cir. 2015) (so-called "zero liability reimbursement policies" are variable business policies). The district court's ruling was erroneous on the law and facts.

### D. Mitigation And Remediation Costs In Time And Money Justify Money Damages

Under *Dieffenbach*, unauthorized withdrawals from accounts cause a loss even when banks later restore the principal. In addition, the value of one's own time needed to set things straight is a loss from an opportunity-cost perspective that can justify money damages. 887 F.3d at 828. Time and expense monitoring accounts ***17** have a value to Plaintiffs that also justify money damages. *Id.* at 829-30 (credit monitoring services recoverable). The loss of availability of funds, spending time sorting things out with police or banks, and not having the use of an account are losses in "economic terms." *Id.* at 828-29.

The district court erred when it concluded otherwise. ADD-46; JA-917. Time and expenses incurred in mitigating unreasonable risks of injury are recoverable. *Id.* at 829-30 (credit monitoring recoverable under ICFA); *see also Fogel v. Zell*, 221 F.3d 955, 960 (7th Cir. 2000) ("It is true that when Denver learned it had installed defective pipe, it would have been entitled by the doctrine of mitigation of damages to remove the pipe or take other prophylactic or reparative measures, and to seek restitution of the expense of doing so from Madison, provided the expense was prudent in the circumstances."); *Thompson v. CACH, LLC*, No. 14CV 0313, 2014 WL 5420137, at *8 (N.D. Ill. Oct. 24, 2014) (time, effort, and injuries incurred in disputing unlawful bill are recoverable); *McGrady v. Chrysler Motors Corp.*, 360 N.E.2d 818, 822 (Ill. App. Ct. 1977) ("the jury[] can assess damages for inconvenience, aggravation and loss of use").

Illinois courts have permitted data breach victims to proceed beyond the pleading stage, recognizing that damages encompass much more than just "out-of-pocket" loss. *See Lewert v. P.F. Chang's China Bistro, Inc.*, No. 1:14-cv-04787 (N.D. Ill. Apr. 26, 2017); JA-653 (denying motion to dismiss, even as to plaintiff ***18** Lewert, who alleged he "spent time and effort monitoring his card statements and his credit report to ensure that no fraudulent charges had been made on that card and that no fraudulent accounts had been opened in his name.")[4]; *Remijas v. The Neiman Marcus Grp., LLC*, Case No. 1:14-cv-01735 (N.D. Ill. Jan. 13, 2016); JA-669 (denying motion to dismiss, even as to plaintiffs Remijas and Kao who had not incurred fraudulent charges)[5]; *see also In re Target Corp. Data Sec. Breach Litig.*, 66 F. Supp. 3d 1154, 1158 (D. Minn. 2014) ("many of the 114 named Plaintiffs allege that they actually incurred unauthorized charges; lost access to their accounts; and/or were forced to pay sums such as late fees, card-replacements fees, and credit monitoring costs because the hackers misused their personal financial information").

And Holmes suffered actual costs in addition to his lost time which is valuable. Holmes cancelled his credit card (reasonably mitigating further losses that Defendants would be liable for) and was without it for two weeks while his financial institution replaced the card. Not only did Holmes devote "time and mental energy to notifying merchants that the old numbers are invalid and new ones must be used," *Dieffenbach*, 887 F.3d. at 827, but he lost access for a time to his credit and had to adjust his lifestyle and activities accordingly. That is an easily monetized category of actual damages to pecuniary interests. *See id.* at 829 ("Losing the use of money ***19** for three days may be a trifle to some people (though to others it may be a calamity) ....").

### E. Defendants Owed A Duty To Implement And Maintain Commercially Reasonable Cybersecurity Over Customer Data

There is a clear public policy in favor of reasonable safeguards on customer data. The risks of deficient cybersecurity are apparent, foreseeable, and easily reduced through reasonable measures by the merchant. *See* CAC ¶¶ 77-81; JA-48-49. Courts have repeatedly imposed a duty upon merchants to exercise reasonable care when handling customer data. *See, e.g.*, *In re Sony Gaming Networks and Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 966 (S.D. Cal. Jan. 21, 2014) ("[B]ecause Plaintiffs allege that they provided their Personal Information to Sony as part of a commercial transaction, and that Sony failed to employ reasonable security measures to protect their Personal Information, including the utilization of industry-standard encryption, the Court finds Plaintiffs have sufficiently alleged a legal duty and a corresponding breach."); *Target*, 64 F. Supp. 3d at 1310 ("Plaintiffs have adequately pled that Target owed them a duty of care, and their negligence claim will not be dismissed on this basis"); *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1327-28 (11th Cir. 2012) ("Plaintiffs meet the pleading standards for their allegations on the counts of negligence [and] negligence per se ..."); *In re Zappos.com, Inc.*, 3:12-cv-00325-RCJ, **\*20** 2013 WL 4830497, at \*3 (D. Nev. Sept. 9, 2013) ("Zappos owed Plaintiffs ... the duty to act as a reasonable and prudent person under the same or similar circumstances").

The FTC and the federal courts have concluded that the implementation of deficient cybersecurity measures over consumer financial information constitutes actionable unfair practices in violation of the FTC Act, 15 U.S.C. § 45. *See Fed. Trade Comm'n v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015); *In re LabMD*, No. 9357, 2016 WL 4128215 (F.T.C. July 28, 2016). Illinois incorporates into its Consumer Fraud Act these interpretations and policies. 815 ILCS 505/2.

In *Wyndham*, the Third Circuit affirmed an interpretation of § 45 that considered deficient cybersecurity over consumer information an unfair practice. 799 F.3d at 244-47. There, as here, the defendant was accused of using easily guessed passwords, failing to use readily available security measures (such as firewalls to limit access between network segments), failing to adequately restrict the access of third parties to its network, and failing to employ reasonable measures to detect, prevent, and respond to unauthorized access. *Id.* at 240-41. The court held that a "company does not act equitably when it ... fails to make good on [a] promise by investing inadequate resources in cybersecurity, exposes its unsuspecting customers to substantial financial injury, and retains the profits of their business." *Id.* at 245. The court noted that, even absent such a promise, the court would consider the conduct unfair and not reasonably avoidable by consumers. *See id.* at 246 n.5.

**\*21** Under distinguishable circumstances and the more stringent fact pleading standards of Illinois, *Cooney v. Chicago Public Schools*, 347 N.E.2d 23 (Ill. App. Ct. 2010), held that an employer does not owe a duty to its employees with respect to private information governed by HIPAA. The court reasoned that because employers are specifically excluded from the definition of a covered entity, that HIPAA evinced an intent not to regulate the activities of employers. And, at the time case was decided, the Illinois Personal Information Protection Act ("PIPA"), required only notification to customers, so no duty to safeguard information was created by that law. Since *Cooney*, the PIPA was amended to require data collectors to implement and maintain reasonable security measures to protect records from unauthorized access. 815 ILCS 530/45.

As shown above, there is a clear and strong public policy favoring a duty under the circumstances presented in this case, and numerous courts have held that such a duty exists. The FTC Act's prohibitions on unfair and deceptive trade practices and Illinois law create legal duties on Defendants to maintain reasonable procedures for protecting their customer data and providing adequate notification of unauthorized access to their data and provide rights of action under common law tort and statutory causes of action, such as PIPA and ICFA, when violations cause consumers harm.

### \*22  F. The Economic Loss Doctrine Does Not Bar Holmes' Negligence Claim

Illinois' economic loss doctrine holds that recovery generally cannot be had in tort for what is termed purely economic loss. *Moorman Manuf. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 453 (Ill. 1982). The economic loss doctrine would not be bar to

Plaintiffs' negligence claims because, as shown above, Defendants owed an independent duty to implement and maintain reasonable security. The economic loss doctrine does not bar claims when a duty exists to prevent precisely the type of economic harm alleged. *2314 Lincoln Park West Condo. Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 555 N.E.2d 346, 352 (Ill. 1990).

Plaintiffs are not seeking as damages "defeated expectations of a commercial bargain." *Id.* at 348. For purposes of the economic loss doctrine, "economic losses" is a term of art defined as "damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits--without any claim of personal injury or damage to other property as well as the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold." *Id.* (internal quotes omitted). None of these describe Plaintiffs' losses. Plaintiffs' losses are related to damage to other property: financial accounts, opportunity costs, and other pecuniary interests.

Plaintiffs also allege that a special relationship exists between them and Defendants, arising from the solicitation of payment card information, voluntary **\*23** undertaking to process the payment through their equipment and network, and representations of the existence of reasonable measures to safeguard it. CAC ¶ 120; JA-59. That is, "Plaintiffs' allegations ... are that they reposed trust in [defendants] or that [defendants] bore a fiduciary-like responsibility to safeguard their financial information. The CAC has plausibly pled the existence of a special relationship that ... courts would recognize as an exception to the economic loss rule." *Target*, 66 F. Supp. 3d at 1175-76. Plaintiffs' allegations support the reallocation of risk from consumers to merchants-- the only ones who could implement systems to protect the data. CAC ¶¶ 120-35; JA-59-63.

Importantly, Plaintiffs and the putative class are not engaged in a business or money-making endeavor. Their transactions with Defendants do not envision some further financial or economic advantage, and their lawsuit is not based on disappointed expectations of the transaction, such as their purchase not living up to expectations. Rather, they were buying food and other basic necessities of life. Defendants' negligence and violations of law made them worse off. The economic loss doctrine does not bar Plaintiffs and the putative class from seeking to be made whole.

### G. The CAC States A Claim For Breach Of Implied Contract

The district court's faulty analysis of the issue of damages resulted in the erroneous dismissal of Plaintiffs' implied contract claim. For the reasons above, **\*24** those issues were wrongly decided. The district court also concluded that the prior Eighth Circuit opinion regarding standing foreclosed Plaintiffs' implied contract claim. However, the Eighth Circuit expressly reserved those issues for the district court on remand. *SuperValu*, 870 F.3d at 774 n.7; ADD-17; JA-296.

Courts applying Illinois law have held that victims of a merchant retailer's data breach have stated claims for implied contract. *See, e.g.*, Minute Entry Denying Motion to Dismiss and Tr. of Proceedings of Apr. 26, 2017, *Lewert v. P.F. Chang's China Bistro, Inc.*, Case No. 1:14-cv-04787 (N.D. Ill. Apr. 26, 2017), JA-653-657; *Irwin v. Jimmy John's Franchise, LLC*, 175 F. Supp. 3d 1064, 1070 (C.D. Ill. 2016); Minute Entry Denying Motion to Dismiss, *Remijas v. The Neiman Marcus Grp., LLC*, Case No. 1:14-cv-01735 (N.D. Ill. Jan. 13, 2016), JA-669.

"When the customer uses a credit card for a commercial transaction, he intends to provide the data to the merchant, and not to an unauthorized third party. [citation omitted]. There is an implicit agreement to safeguard the customer's information to effectuate the contract." *Irwin*, 175 F. Supp. 3d at 1070-71. Thus, in Illinois, there is an implied contract obligating a merchant to take reasonable measures to protect information and to timely notify of a breach. *Id.*

Nothing in this Court's prior opinion forecloses such a finding. The Court did not consider this issue and expressly reserved it for the district court on remand. The **\*25** district court also concluded that Plaintiffs' injuries were not sufficient, but as shown above, Plaintiffs sufficiently allege injury.

### H. The CAC States A Claim For Unjust Enrichment

"To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Serv., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 679 (Ill. 1989).

Plaintiffs and the other putative class members conferred benefits upon Defendants in the form of business and revenues. Defendants were reaping these benefits while placing their customers in harm's way because of their inadequate security measures. Plaintiffs allege they would not have shopped with Defendants had they known the true state of their deficient cybersecurity. *Target*, 66 F. Supp. 3d at 1178. Allowing Defendants to retain the benefits of Plaintiffs' patronage would be unjust under the circumstances.

The district court's opinion assumes incorrectly that Defendants merely broke even by selling Plaintiffs and the putative class their groceries, but that cannot be true. Rather, Defendants enjoyed substantial business and derived revenues that were unjust because Defendants were making Plaintiffs worse off and also taking their money.

**\*26  I. The District Court Committed Several Other Errors That Require Reversal**

Defendants never contested Plaintiff's request for injunctive relief under the ICFA. Even if Defendants had sought to dismiss it, because Plaintiffs allege actual damage, the district court erred. Defendants' previous notifications were insufficient and untimely. CAC ¶¶ 108-116; JA-57. Holmes has standing to pursue accurate, individualized notice, which he still has not received. *See* CAC ¶ 116; JA-58.

The district court improperly considered the three and a half years since the filing of the CAC when assessing the claim under the Illinois Uniform Deceptive Trade Practice Act. The district court was required to consider the allegations at the time the complaint was filed. *In re Zappos.com, Inc.*, 2018 WL 1883212, at \*6-7 (9th Cir. Apr. 20, 2018). The notice was insufficient to prevent many putative class members from learning about the risks they faced and continue to face.

The district court rejected Holmes' PIPA claim based on an erroneous conclusion that Plaintiff waived the basis for damages on his prior appeal. But the district court did not reach this issue, instead concluding that it had no jurisdiction. Plaintiff appealed and prevailed on the issue of whether he had standing and states a plausible claim for relief for his mitigation costs, remediation costs, and opportunity costs. The CAC's allegations suffice to state a claim under the PIPA for Defendants' delayed and insufficient notice. *See Target*, 66 F. Supp. 3d at 1171 ("Although Target would like a more detailed explanation of what damages were caused by the **\*27** delayed breach notification, the allegations in the complaint are not fatally insufficient. Rather, those allegations are a 'short and plain statement,' Fed. R. Civ. P. 8(a)(2), that plausibly alleges that Plaintiffs suffered damage as a result of the delay.").

For all of the foregoing reasons, the district court's judgment should be reversed.

**II. The District Court Erred In Denying Plaintiffs' Motion For Leave To Amend Their Complaint**

**A. Legal Standard**

"Rule 15(a) declares that leave to amend shall be freely given when justice so requires; this mandate is to be heeded." *Foman v. Davis*, 371 U.S. 178, 182 (1962). If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. *Id.*

Case 4:23-cv-00195-SHL-SBJ   Document 43-1   Filed 03/05/24   Page 14 of 20

Melissa ALLERUZZO; Heidi Bell; Rifet Bosnjak; John..., 2018 WL 2387078...

The Eighth Circuit takes a "liberal viewpoint towards leave to amend" which "should normally be granted absent good reason for a denial." *Libertarian Party of S. Dakota v. Krebs*, 312 F.R.D. 523, 525 (D.S.D. 2016) (quoting *Popp Telcom v. Am. Sharecom, Inc.*, 210 F.3d 943 (8th Cir. 2000)).

A district court's denial of leave to amend pleadings is appropriate only in those limited circumstances in which undue delay, bad faith on the part of the moving party, futility of the amendment, or unfair prejudice to the non-moving party **\*28** can be demonstrated. *Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001). Delay alone is not reason in and of itself to deny leave to amend. *Sanders v. Clemco Indus.*, 823 F.2d 214, 217 (8th Cir. 1987). The delay must have resulted in significant prejudice to the party opposing amendment. *Id.* The party opposing amendment bears the burden of showing significant prejudice. *Fed. Ins. Co. v. Sammons Fin. Grp., Inc.*, 320 F.R.D. 192, 196 (S.D. Iowa 2013) (quoting *Roberson*, 241 F.3d at 995).

"Ordinarily, the decision of whether to allow a plaintiff leave to amend a complaint is within the district court's discretion, however, when the court denied leave on the basis of futility, it means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss ... and appellate review of this legal conclusion is ... de novo." *Cornelia I. Crowell GST Trust v. Possis Med., Inc.*, 519 F.3d 778, 781-82 (8th Cir. 2008).

### B. The District Court Should Have Granted Plaintiffs Leave To Amend Their Complaint Because Amendment Would Not Be Futile

The district court's prior opinion dismissed without prejudice for lack of standing but did not grant leave to amend. JA-162. Instead, the district court terminated the case. When Plaintiffs requested leave to amend in their post-judgment motion, the district court denied the request in the "interests of finality" under the stringent standards that governed post-judgment motions. JA-267. After the district court was reversed and the case remanded, Plaintiffs timely sought leave again to **\*29** amend their complaint for the first time, but the district court concluded that they were too late and that the amendments would be futile because the new allegations would not have established their standing. JA-910.

A federal court's obligation to hear and decide cases within its jurisdiction is virtually unflagging. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1386 (2014). "Courts have an independent obligation to determine whether subject-matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). Injury in fact can be established by allegations showing a risk of real harm, even if those harms may be difficult to prove or measure. *Id.* at 1549.

"[E]ach element of Article III standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." *Bennett v. Spear*, 520 U.S. 154, 167-68 (1997) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. at 561 (1992)). Thus, while a plaintiff must "set forth" by affidavit or other evidence "specific facts" to survive a motion for summary judgment and must ultimately support any contested facts with evidence adduced at trial, [a]t the **\*30** pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Id.*; *see also Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015) (quoting *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)) ("'the court restricts itself to the face of the pleadings and the non-moving party receives the same protections [under a Rule 12(b)(1) facial attack] as it would defending against a motion brought under Rule 12(b)(6).'"). Only one plaintiff needs to have standing for a class action to proceed. *SuperValu I*, 870 F.3d at 768.

*Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 189 L.E.2d 246 (2014) ( "*SBA List*") is the Supreme Court's most illustrative example of the application of these principles to future injuries. In *SBA List*, a pro-life advocacy group alleged a sufficiently imminent risk that an unidentified future candidate for office in Ohio would seek to prevent speech the group intended to make

concerning that person's position on abortion. *SBA List* had started with a complaint by then-Congressman Steve Driehaus that SBA List had made false statements about his vote on the Affordable Care Act. *Id.* at 2339. The district court concluded that the case ended when Driehaus lost the election and entered the Peace Corps. SBA List pressed on with the case, claiming it intended to engage in the same kinds of speech in future elections against future unknown candidates. SBA List argued it still had standing **\*31** to challenge the Ohio law because it "faced the prospect of its speech and associational rights again being chilled and burdened." *Id.* at 2340.

The Supreme Court found the prospect SBA List faced of future harm sufficiently imminent to confer standing. The Court explained that actually incurring the threatened injury is not a prerequisite. *Id.* at 2342. The Court observed that review is permitted under circumstances that render the threatened injury "sufficiently imminent," as where there are allegations showing an intention to engage in a course of conduct ... and there exists a credible threat ...."*Id.* The Court drew the "obvious" inference that the history of past enforcement of the Ohio false statement law was "good evidence that the threat ... is not chimerical." *Id.* at 2345. The Court also was persuaded by the fact that the proceedings under the Ohio law were "not a rare occurrence," citing about 20-80 cases each year. *Id.* The Court observed that a third-party billboard owner had refused to put up SBA List's ads. *Id.*

Here, Plaintiffs have sufficiently alleged the hackers possess their information and have a criminal intent to misuse it. *SuperValu I*, 870 F.3d at 769. Even if they have not already misused it, actually incurring the threatened harm is not a prerequisite. The hackers infiltrated Defendants' payment processing network to misappropriate credit and debit card information to commit fraud, as hackers (perhaps the very same individuals) had attempted and succeeded in doing in many high-profile breaches during the same time period. CAC ¶ 58, ¶ 60 n.8, ¶¶ 77-81; **\*32** JA-43-49. In fact, 1,000 merchants were targeted with the same or similar types of malware and methods. The targeted and sophisticated nature of the criminal data breach is significant, and in many circuits determinative. *See Attias v. Carefirst, Inc.*, 865 F.3d 620, 629 (D.C. Cir. 2017) ("a substantial risk of harm exists already, simply by virtue of the hack and the nature of the data that the plaintiffs allege was taken"); *Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 388 (6th Cir. 2016) ("Where a data breach targets personal information, a reasonable inference can be drawn that the hackers will use the victims' data for the fraudulent purposes alleged in Plaintiffs' complaints"); *Remijas*, 794 F.3d at 693 ("why else would hackers breach into a store's database and steal consumers' private information? Presumably, the purpose of the hack is, sooner or later, to make fraudulent charges or assume those consumers' identities"). Here, the Data Breach was part of a sophisticated criminal effort involving RAM scraper malware. The criminals risked significant criminal penalties for a reason: to sell and use the information to commit fraud.

This reasoning is consistent with the GAO study cited in *SuperValu I*. The GAO observed that federal officials concluded that intent was a big factor: "[b]reaches that are the result of intentional acts--such as hacking into a server to obtain sensitive data--generally are considered to pose more risk than accidental breaches such as a lost laptop or the unintentional exposure of sensitive data on the Internet." GAO Report, GAO-07-737, Data Breaches and Identity Theft, 30-31, **\*33** available at *https:// www.gao.gov/new.items/d07737.pdft* (last visited, May 11, 2018).[6]

Plaintiff Holmes' experiences because of the fraudulent charges are good evidence that there is a sufficiently imminent risk to the other shoppers and the threat is not chimerical. *See SBA List*, 134 S. Ct. at 2345; *see also In re Zappos.com, Inc.*, 2018 WL 1883212, at \*6 (alleged harm of plaintiffs "undermines Zappos's assertion that the data stolen in the breach cannot be used for fraud or identity theft"); *Remijas*, 794 F.3d at 692 (defendant notified customers that 9,200 out of 350,000 cards, or 2.63%, incurred fraudulent charges). Although the district court was impressed with the incidence of fraud in *Remijas*, JA-157, the occurrence of fraud among Plaintiffs indicates a higher rate of fraud in this Data Breach: 1 in 16 equals 6.25%. The true incidence rate is a matter for discovery, but one in sixteen is certainly not indicative of a lack of risk. And the declarations of the bank employees describing higher rates of fraud and widespread misuse of compromised information more than establish the sufficiency of the risk to Plaintiffs. PAC ¶¶ 76-78; JA-389 (three financial institutions found that, respectively, 58 out of 272; 2 out of 3, and 5 out of 313 compromised cards were used fraudulently so far).

**\*34** If that were not enough, the general trend of identity fraud stemming from data breaches is also informative. In 2014, more than 1,000 retailers were under assault with the same or tweaked versions of the malware that compromised Target and

Home Depot, two highly publicized data breaches with large amounts of fraud. PAC ¶ 58; JA-383. Plaintiffs and the putative class had every reason to guard against the harms that befell the victims of those data breaches. The number of cases of identity fraud and existing account fraud occurring during the time period just prior to the Data Breach are substantial: nearly 40% of data breach victims reported experiencing existing account fraud within the first year. PAC ¶ 73; JA-388. Because the types of harm can take time to occur or notice and may not be noticed at all by the accountholder, the true number is somewhere higher than that. PAC ¶ 84 ("victims suffer immediate and long lasting exposure and are susceptible to further injury over the passage of time"); ¶ 61 n.9 (citing example of fraud occurring more than one year after Home Depot data breach).

Plaintiff and the putative class continue to face risks of harm over and above that, because the stolen information is linked and linkable to other potentially available information. PAC ¶ 81; JA-390. Thus, they face the risk not only of existing account fraud but also more insidious and intractable forms of identity fraud that could affect their creditworthiness, their reputation, and take time, money and significant resources to pinpoint, contain, and remedy. PAC ¶ 79; JA-389.

**\*35** Also relevant to the analysis is the gravity of the threatened harm. *See SBA List*, 134 S. Ct. at 2345. Here, the complaint shows that individuals in Plaintiffs' position face a threat that can wreak havoc on consumers' finances, credit history, and reputation. PAC ¶ 79; JA-389. Consumers should not have to absorb the costs of these risks. In light of such a high risk of severe consequences, Plaintiffs have standing. Given Plaintiffs' allegations that their risk of identity fraud and related harms are increased and that their financial information is in the hands of criminals, "it is easy to presume specific facts under which [they] will be injured." *See Bennett*, 520 U.S. at 168. Indeed, Defendants themselves purported to offer credit monitoring and other advice regarding mitigation and remediation of the harms. CAC ¶ 45; JA-40. The proposed amendment would not be futile.

### C. Defendants Did Not Meet Their Burden To Establish Significant Prejudice

The district court also concluded that leave to amend should be denied because Defendants would suffer prejudice by Plaintiffs' "undue delay," without considering the fact that its decision would result in the dismissal of fifteen plaintiffs from the case before any significant discovery. That was an abuse of discretion.[7]

**\*36** There was no delay. Plaintiffs filed their motion for leave to amend at the earliest practical time, immediately after it became apparent the district court would entertain the filing of motions without leave after Defendants filed renewed motions to dismiss upon remand. The district court did not even attempt to identify any delay in seeking leave to amend because there was none.

In addition, Defendants utterly failed to show significant prejudice, as they must. Defendants allege without any factual support that they were prejudiced because of the prior appeal in which they were unsuccessful. Given the unwarranted scrutiny the district court directed at Plaintiffs' allegations, it is truly fantastic how quickly it embraced Defendants' conclusory allegations that they incurred costs. Defendants did not even attempt to show what costs were spent on what issues and by which parties, or how the amendment would cause any prejudice going forward, given that Holmes has standing and a class action can proceed with just one plaintiff. Defendants filed their own cross appeal and sought to appeal their own issues, which were briefed. And, much of their costs on appeal are attributable to issues on which Plaintiffs prevailed. Had the district court given Plaintiffs leave to amend their CAC prior to terminating the case, perhaps the prior appeal could have been obviated.

The proposed amendment would not prejudice Defendants, who would have had to defend against the class action in any event. *See Kozlov v. Associated Wholesale Grocers, Inc.*, 818 F.3d 380, 395 (8th Cir. 2016) (motions that would **\*37** prejudice the nonmoving party by "requiring a re-opening of discovery with additional costs, a significant postponement of the trial, and a likely major alteration in trial tactics and strategy" are particularly disfavored); *Dennis v. Dillard Dep't Stores, Inc.*, 207 F.3d 523, 526 (8th Cir. 2000) (adverse party's burden of undertaking discovery, standing alone, does not suffice to warrant denial of a motion to amend a pleading). Nothing like that would result from Plaintiffs' amendment.

Case 4:23-cv-00195-SHL-SBJ   Document 43-1   Filed 03/05/24   Page 17 of 20

Melissa ALLERUZZO; Heidi Bell; Rifet Bosnjak; John..., 2018 WL 2387078...

There remains a significant imbalance regarding the facts of the Data Breach. Defendants know them all; Plaintiffs know only a few. *Cf. Buder v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 644 F.2d 690, 694 (8th Cir. 1981) ("where the facts on which a previously unasserted claim is based are all known or available to all parties, there is no prejudice in allowing an amended complaint"). Defendants are aware of the fraud and artfully attempt to escape liability. So, they can suffer no prejudice by the properly pled allegations based on the unrefuted declarations of Greg Anderson, Senior Vice-President and Chief Relationship Officer of the University of Illinois Employees Credit Union, Mark Malinowski, Vice President of Accounting at Raritan Bay Federal Credit Union, and Darren K. Williams, Chief Risk Officer of United Bankshares, Inc. The amendments do not change the causes of action, Defendants' burden of defense, or significantly increase Defendants' potential liability. *See Sanders*, 823 F.2d at 217.

**\*38** And finally, the district court committed an abuse of discretion by failing to weigh what little, if any, prejudice Defendants would experience by the amendment against the extreme prejudice Plaintiffs and the putative class would suffer by disallowing the amendment, which would result in the dismissal of their case. *Buder*, 644 F.2d at 694 (prejudice must be balanced against the hardship to the moving party if amendment is denied). The insignificant costs, if any, of Defendants are nowhere near enough to justify the substantial injustice inherent in the dismissal of Plaintiffs' claims before giving them a chance to prove them.

## CONCLUSION

For the foregoing reasons, the district court's judgment should be reversed.

**\*39** Respectfully submitted,

**BARNOW AND ASSOCIATES, P.C.**

Ben Barnow

One N. LaSalle Street, Ste. 4600

Chicago, IL 60602

(312) 621-2000 (p)

(312) 641-5504 (f)

b.barnow@barnowlaw.com

**LAW OFFICE OF ARON D. ROBINSON**

Aron D. Robinson

180 West Washington St., Suite 700

Chicago, IL 60602

(312) 857-9050 (p)

Adroblaw@aol.com

**THE DRISCOLL FIRM, P.C.**

Case 4:23-cv-00195-SHL-SBJ   Document 43-1   Filed 03/05/24   Page 18 of 20

Melissa ALLERUZZO; Heidi Bell; Rifet Bosnjak; John..., 2018 WL 2387078...

John J. Driscoll

Christopher J. Quinn

211 N. Broadway, 40th Floor

St. Louis, MO 63102

(314) 932-3232 (p)

john@thedriscollfirm.com

chris@thedriscollfirm.com

**STEWARD LAW FIRM, LLC**

John S. Steward

1717 Park Avenue

St. Louis, Missouri 63104

(314) 571-7134 (p)

(314) 594-5950 (f)

Glaw123@aol.com

**CARLSON LYNCH SWEET**

**KILPELA & CARPENTER, LLP**

Edwin J. Kilpela, Jr.

1133 Penn Ave., 5th Floor

Pittsburgh, PA 15212

(412) 322-9243 (p)

(412) 231-0246 (f)

ekilpela@carlsonlynch.com

**MCSWEENEY/LANGEVIN, LLC**

Rhett A McSweeney

Case 4:23-cv-00195-SHL-SBJ   Document 43-1   Filed 03/05/24   Page 19 of 20

Melissa ALLERUZZO; Heidi Bell; Rifet Bosnjak; John..., 2018 WL 2387078...

David M. Langevin

2116 2nd Avenue South

Minneapolis, Minnesota 55404

(612) 746-4646 (p)

(612) 454-2678 (f)

ram@westrikeback.com

**LOCKRIDGE GRINDAL**

**NAUEN PLLP**

Karen H. Riebel

100 Washington Avenue South,

Suite 2200

Minneapolis, MN 55401

(612) 339-6900 (p)

(612) 339-0981 (f)

khriebel@locklaw.com

**THE COFFMAN LAW FIRM**

Richard L. Coffman

505 Orleans St., Suite 505

Beaumont, TX 77701

(409) 833-7700 (p)

(866) 835-8250 (f)

rcoffman@coffmanlawfirm.com

Footnotes

1   The Court recognized "there may be other means--aside from relying on reports and studies--to allege a substantial risk of future injury," but did not comment on those potential methods. *Id.* at 12 n.5; ADD-12; JA-291.

Case 4:23-cv-00195-SHL-SBJ   Document 43-1   Filed 03/05/24   Page 20 of 20

Melissa ALLERUZZO; Heidi Bell; Rifet Bosnjak; John..., 2018 WL 2387078...

| | |
|---|---|
| 2 | The district court relied on its dismissal of Plaintiff Holmes' claims to conclude that the proposed amended complaint would be futile. JA-908. Similarly, Plaintiffs in this appeal incorporate arguments relating to Plaintiff Holmes as if it applies to all of them. |
| 3 | This question goes to causation, which would be Defendants' burden to rebut in a multiple causation case such as this: |

As the Seventh Circuit recognized in *Remijas v. Neiman Marcus Group, LLC*, 794 F.3d 688 (7th Cir. 2015), that "some other store *might* [also] have caused the plaintiffs' private information to be exposed does nothing to negate the plaintiffs' standing to sue" for the breach in question.... In multiple causation cases, ... the common law of torts has long shifted the burden of proof to multiple defendants to prove that their negligent actions were not the 'but-for' cause of the plaintiff's injury."

*In re Zappos.com, Inc.*, No. 16-16860, 2018 WL 1883212, at *7 (9th Cir. Apr. 20, 2018) (quoting *Price Waterhouse v. Hopkins*, 490 U.S. 228, 263 (1989) (O'Connor, J., concurring in the judgment)).

| | |
|---|---|
| 4 | 819 F.3d 963, 965 (7th Cir. 2016). |
| 5 | 794 F.3d 688, 691 (7th Cir. 2015). |
| 6 | The Report defined data breach as "the unauthorized or unintentional exposure, disclosure, or loss of sensitive personal information by a company, government agency, university, or other public or private entity." Report at 42. |
| 7 | The basis for undue delay only relates to the allegations in PAC ¶¶ 76-78 based on financial institutions' declarations submitted in Plaintiffs' motion to alter or amend. The proposed amended complaint establishes Plaintiffs' standing independently of those allegations, and the Court need not address this portion of the district court's opinion in detail, unless the Court determines otherwise. |

---

**End of Document**  © 2024 Thomson Reuters. No claim to original U.S. Government Works.