**THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF IOWA**

| | |
|---|---|
| In re MercyOne Data Breach Litigation | Case No. 4:23-cv-00195-SHL-SBJ |
| | **JURY TRIAL DEMANDED** |

<u>**ANSWER AND AFFIRMATIVE DEFENSES**</u>

Mercy Health Network, Inc. and Mercy Medical Center - Clinton, Inc. (collectively "Defendants")[1] submit the following answer to the Consolidated Class Action Complaint and plead the following affirmative defenses:

## I.    INTRODUCTION

1.      Plaintiffs bring this class action against MercyOne for its failure to properly secure and safeguard Plaintiffs' and other similarly situated MercyOne patients' personally identifiable information ("PII") and protected health information ("PHI"), including name, address, date of birth, driver's license/state identification number, Social Security number, financial account information, medical record number, encounter number, Medicare or Medicaid identification number, mental or physical treatment/condition information, diagnosis code/information, date of service, admission/discharge date, prescription information, billing/claims information, personal representative or guardian name, and health insurance information (the "Private Information"), from criminal hackers.

---

[1] Trinity Health Corporation has been terminated as a Defendant pursuant to Plaintiffs' Consolidated Class Action Complaint at ECF No. 32, wherein Plaintiffs named only Mercy Health Network, Inc. and Mercy Medical Center – Clinton, Inc. as Defendants, and in accordance with this Court's Order Granting in Part and Denying in Part Defendants' Motion to Dismiss, fn. 1, at ECF No. 45. To the extent any answers or responses by Trinity Health Corporation are required, Trinity Health Corporation denies all allegations against it.

> **ANSWER:** **Defendants acknowledge that Plaintiffs have filed the instant lawsuit individually and on behalf of a purported class, but deny Plaintiffs' allegations and deny the remaining allegations contained in Paragraph 1 of Plaintiffs' Consolidated Class Action Complaint.**

2.    MercyOne, based in Des Moines, Iowa, is "an integrated system of hospitals, clinics and other health care facilities[,]" with "more than 2,000 physicians and advanced practice clinicians, across 18 medical centers and 23 affiliated organizations with nearly 18,000 colleagues[.]"

> **ANSWER:** **Defendants admit the quoted language appears on a website identified as www.mercyone.org, but deny all allegations about "MercyOne" as that term is defined in this complaint. Defendants deny the remaining allegations in paragraph 2 of Plaintiffs' Consolidated Class Action Complaint.**

3.    On or about June 2, 2023, MercyOne sent out data breach notice letters (the "Notice") to individuals whose Private Information was compromised as a result of the hacking incident.

> **ANSWER:** **Defendant Mercy Medical Center – Clinton, Inc. d/b/a MercyOne Clinton Medical Center (hereinafter "MercyOne Clinton") admits that it sent notice letters. MercyOne Clinton denies the remaining allegations contained in paragraph 3 of Plaintiffs' Consolidated Class Action Complaint. Mercy Health Network, Inc. (hereinafter "Mercy Health") denies all allegations contained in paragraph 3 of Plaintiffs' Consolidated Class Action Complaint.**

4.    According to the Notice, unusual activity was detected on Defendants' network that disrupted certain systems and, in response, Defendants launched an investigation that revealed an unauthorized party had access to certain files containing sensitive patient information, and such access took place between March 7, 2023, and April 4, 2023 (the "Data Breach").

> **ANSWER:** **MercyOne Clinton admits only that the Notice referenced a network disruption that impacted certain systems, it had launched an investigation, and that the investigation revealed that an unauthorized party had accessed certain portions of its network between March 7, 2023 and April 4, 2023. MercyOne Clinton denies all allegations about the Notice inconsistent with its express content, and denies the**

**remaining allegations contained in paragraph 4 of Plaintiffs' Consolidated Class Action Complaint. Mercy Health denies all allegations contained in paragraph 4 of Plaintiffs' Consolidated Class Action Complaint.**

5.      Plaintiffs and "Class Members" (defined below) were, and continue to be, at significant risk of identity theft and various other forms of personal, social, and financial harm. The risk will remain for their respective lifetimes.

    **ANSWER:**    **Defendants deny the allegations contained in paragraph 5 of Plaintiffs' Consolidated Class Action Complaint.**

6.      The Private Information compromised in the Data Breach contained highly sensitive patient data, representing a gold mine for data thieves.

    **ANSWER:**    **Defendants deny the allegations contained in paragraph 6 of Plaintiffs' Consolidated Class Action Complaint.**

7.      Armed with the Private Information accessed in the Data Breach (and a head start), data thieves can commit a variety of crimes including, e.g., opening new financial accounts in Class Members' names, taking out loans in Class Members' names, using Class Members' names to obtain medical services, using Class Members' information to obtain government benefits, filing fraudulent tax returns using Class Members' information, obtaining driver's licenses in Class Members' names but with another person's photograph, and giving false information to police during an arrest.

    **ANSWER:**    **Defendants deny the allegations contained in paragraph 7 of Plaintiffs' Consolidated Class Action Complaint.**

8.      There has been no assurance offered by MercyOne that all personal data or copies of data have been recovered or destroyed, or that Defendants have adequately enhanced their data security practices sufficient to avoid a similar breach of its network in the future.

    **ANSWER:**    **Defendants deny the allegations contained in paragraph 8 of Plaintiffs' Consolidated Class Action Complaint.**

9.     Therefore, Plaintiffs and Class Members have suffered and are at an imminent, immediate, and continuing increased risk of suffering, ascertainable losses in the form of harm from identity theft and other fraudulent misuse of their Private Information, the loss of the benefit of their bargain, out-of-pocket expenses incurred to remedy or mitigate the effects of the Data Breach, and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach.

**ANSWER:     Defendants deny the allegations contained in paragraph 9 of Plaintiffs' Consolidated Class Action Complaint.**

10.     Plaintiffs bring this class action lawsuit to address MercyOne's inadequate safeguarding of Class Members' Private Information that it collected and maintained.

**ANSWER:     Defendants deny the allegations contained in paragraph 10 of Plaintiffs' Consolidated Class Action Complaint.**

11.     The potential for improper disclosure and theft of Plaintiffs' and Class Members' Private Information was a known risk to MercyOne, and thus MercyOne was on notice that failing to take necessary steps to secure the Private Information left it vulnerable to an attack.

**ANSWER:     Defendants deny the allegations contained in paragraph 11 of Plaintiffs' Consolidated Class Action Complaint.**

12.     Upon information and belief, MercyOne and its employees failed to properly implement security practices with regard to the computer network and systems that housed the Private Information. Had MercyOne properly monitored its networks, it would have discovered the Data Breach sooner.

**ANSWER:     Defendants deny the allegations contained in paragraph 12 of Plaintiffs' Consolidated Class Action Complaint.**

13.     Plaintiffs' and Class Members' identities are now at risk because of MercyOne's negligent conduct as the Private Information that MercyOne collected and maintained is now in the hands of data thieves and other unauthorized third parties.

> **ANSWER:** **Defendants deny the allegations contained in paragraph 13 of Plaintiffs' Consolidated Class Action Complaint.**

14.     Plaintiffs seek to remedy these harms on behalf of themselves and all similarly situated individuals whose Private Information was accessed and/or compromised during the Data Breach.

> **ANSWER:** **Defendants deny the allegations contained in paragraph 14 of Plaintiffs' Consolidated Class Action Complaint.**

15.     Accordingly, Plaintiffs, on behalf of themselves and the Class, assert claims for (1) negligence, (2) negligence per se, (3) breach of contract, (4) breach of implied contract, (5) unjust enrichment, (6) breach of confidence, (7) breach of fiduciary duty, and (8) declaratory judgement.

> **ANSWER:** **Defendants deny that the current action includes claims for breach of contract, breach of implied contract, unjust enrichment, breach of confidence, breach of fiduciary duty, and declaratory judgment, pursuant to the Court's Order at ECF No. 45. Defendants deny the remaining allegations contained in paragraph 15 of Plaintiffs' Consolidated Class Action Complaint.**

## II.    PARTIES

16.     Plaintiff Tiffany Harris is, and at all times mentioned herein was, an individual citizen of the State of Iowa.

> **ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 16.**

17.     Plaintiff Jennifer Medenblik is, and at all times mentioned herein was, an individual citizen of the State of Illinois.

> **ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17.**

18.     Plaintiff Rebecca Oberdorf is, and at all times mentioned herein was, an individual citizen of the State of Iowa.

> **ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18.**

19.     Plaintiff Michael Prins is, and at all times mentioned herein was, an individual citizen of the State of Iowa.

> **ANSWER:    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19.**

20.     Plaintiff Jeremy Shine is, and at all times mentioned herein was, an individual citizen of the State of Iowa.

> **ANSWER:    Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 20.**

21.     Defendant MercyOne Health Network, Inc. is incorporated in Delaware, with its principal place of business located at 1449 NW 128th Street, Bldg. 5, Suite 200 in Clive, Iowa, Polk County.

> **ANSWER:    Defendants admit the allegations contained in paragraph 21 of Plaintiffs' Consolidated Class Action Complaint.**

22.     Defendant Mercy Medical Center – Clinton, Inc. is incorporated in Delaware, with its principal place of business located at 1410 North Fourth Street, Clinton, IA, Clinton County.

> **ANSWER:    Defendants admit the allegations contained in paragraph 22 of Plaintiffs' Consolidated Class Action Complaint.**

## III.    JURISDICTION AND VENUE

23.     The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332 (d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 100, many of whom have different citizenship from MercyOne. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

> **ANSWER:    Defendants admit only that this Court has subject matter jurisdiction over this matter, but deny that Plaintiffs have pled legally sufficient claims against Defendants, deny that the Plaintiffs have a valid basis to seek damages or an amount in excess of $5 million, and deny there is a basis for asserting a class action or certifying a class action.**

24.     This Court has jurisdiction over Defendants because Defendants operate in and/or are incorporated in this District.

> **ANSWER:**   **Defendants admit only that this Court has jurisdiction over them, but deny that Plaintiffs have pled legally sufficient claims against Defendants.**

25.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events giving rise to this action occurred in this District and MercyOne has harmed Class Members residing in this District.

> **ANSWER:**   **Defendants admit that venue is proper. Defendants deny the remaining allegations contained in paragraph 25 of Plaintiffs' Consolidated Class Action Complaint, and further deny that Plaintiffs have pled legally sufficient claims against Defendants.**

## IV.    FACTUAL ALLEGATIONS

### A.    MERCYONE'S BUSINESS AND COLLECTION OF PLAINTIFFS' AND CLASS MEMBERS' PRIVATE INFORMATION

26.     MercyOne, based in Des Moines, Iowa, is an integrated system of hospitals, clinics and other health care facilities, with more than 2,000 physicians and advanced practice clinicians, across 18 medical centers and 23 affiliated organizations with nearly 18,000 colleagues.

> **ANSWER:**   **Defendants deny the allegations contained in paragraph 26 of Plaintiffs' Consolidated Class Action Complaint.**

27.     As a condition of receiving health-related services, MercyOne requires that its patients entrust it with highly sensitive personal and health information. In the ordinary course of receiving service from MercyOne, Plaintiffs and Class Members were required to provide their Private Information to Defendants.

> **ANSWER:**   **Defendants deny the allegations contained in paragraph 27 of Plaintiffs' Consolidated Class Action Complaint.**

28.     In its HIPAA Policy found on its website, MercyOne states its commitment to "protecting the privacy of your health information and records[,]" adding that "MercyOne

employees will not disclose any of the information contained in your medical records to anyone other than those involved in your care including family caregivers unless you have given us advance written permission."

> **ANSWER:** **Defendants admit that the quoted language appears on a website identified as www.mercyone.org. Defendants deny that this paragraph fully characterizes the HIPAA Policy and deny the remaining allegations contained in paragraph 28 of Plaintiffs' Consolidated Class Action Complaint.**

29.     Notably, all patients receive a "Notice of Privacy Practices" when they check into a MercyOne location.

> **ANSWER:** **Defendant MercyOne Clinton admits that it is its practice to provide a Notice of Privacy Practices when patients check, but are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 29. Mercy Health denies all allegations contained in paragraph 29 of Plaintiffs' Consolidated Class Action Complaint.**

30.     Thus, due to the highly sensitive and personal nature of the information MercyOne acquires and stores with respect to its patients, MercyOne promises to, among other things: keep patients' Private Information private; comply with industry standards related to data security and the maintenance of its patients' Private Information; inform its patients of its legal duties relating to data security and comply with all federal and state laws protecting patients' Private Information; only use and release patients' Private Information for reasons that relate to the services it provides; and provide adequate notice to patients if their Private Information is disclosed without authorization.

> **ANSWER:** **Defendants deny the allegations contained in paragraph 30 of Plaintiffs' Consolidated Class Action Complaint.**

31.     By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' Private Information, MercyOne assumed legal and equitable duties it owed to them and knew or should have known that it was responsible for protecting Plaintiffs' and Class Members'

Private Information from unauthorized disclosure and exfiltration.

> **ANSWER:** **Defendants deny the allegations contained in paragraph 31 of Plaintiffs' Consolidated Class Action Complaint.**

32.     Plaintiffs and Class Members relied on MercyOne to keep their Private Information confidential and securely maintained and to only make authorized disclosures of this Private Information, which Defendants ultimately failed to do.

> **ANSWER:** **Defendants deny the allegations contained in paragraph 32 of Plaintiffs' Consolidated Class Action Complaint.**

**B.     THE DATA BREACH AND DEFENDANTS' INADEQUATE NOTICE TO PLAINTIFFS AND CLASS MEMBERS**

33.     According to Defendants' Notice, it learned of unauthorized access to its computer systems on April 4, 2023, with such unauthorized access having taken place between March 7, 2023, and April 4, 2023.

> **ANSWER:** **Defendant MercyOne Clinton admits only that the Notice advised that MercyOne learned of a network disruption that impacted certain systems, that it immediately began an investigation and that the investigation determined that certain portions of the network were accessed by an unauthorized party between March 7, 2023 and April 4, 2023. Defendant MercyOne Clinton denies that this paragraph accurately characterizes its Notice, denies all allegations about that Notice inconsistent with its express content, and denies the remaining allegations contained in paragraph 33 of Plaintiffs' Consolidated Class Action Complaint. Mercy Health denies all allegations contained in paragraph 33 of Plaintiffs' Consolidated Class Action Complaint.**

34.     Through the Data Breach, the unauthorized cybercriminal(s) accessed a cache of highly sensitive Private Information, including Plaintiffs' and Class Members' Social Security numbers and PHI.

> **ANSWER:** **The defendants deny all allegations contained in paragraph 34 of Plaintiffs' Consolidated Class Action Complaint.**

35.     In or around early June of 2023, MercyOne delivered its Notice to Plaintiffs and Class Members, alerting them that their highly sensitive Private Information had been exposed in

a "recent incident."

> **ANSWER:** **Defendant MercyOne Clinton admits only that it delivered Notices in June 2023. Defendant MercyOne Clinton denies that this paragraph accurately characterizes its Notice, denies all allegations about that Notice inconsistent with its express content, and denies the remaining allegations contained in paragraph 35 of Plaintiffs' Consolidated Class Action Complaint. Mercy Health denies all allegations contained in paragraph 35 of Plaintiffs' Consolidated Class Action Complaint.**

36.     Defendant's Notice letter then listed generic and time-consuming steps that victims of data security incidents can take, such as getting a copy of a credit report or notifying law enforcement about suspicious financial account activity. Other than providing limited credit monitoring that Plaintiffs and Class Members would have to affirmatively sign up for, and a call center number that victims could contact, MercyOne offered no other substantive steps to help victims like Plaintiffs and Class Members to remediate the harms done to them. On information and belief, MercyOne sent a similar generic letter to all other individuals affected by the Data Breach.

> **ANSWER:** **Defendant MercyOne Clinton admits only that it offered free credit monitoring services and access to a call center. Defendant MercyOne Clinton denies that this paragraph accurately characterizes its Notice, denies all allegations about that Notice inconsistent with its express content, and denies the remaining allegations contained in paragraph 36 of Plaintiffs' Consolidated Class Action Complaint. Mercy Health denies all allegations contained in paragraph 36 of Plaintiffs' Consolidated Class Action Complaint.**

37.     MercyOne had obligations created by contract, industry standards, common law, and representations made to Plaintiffs and Class Members to keep Plaintiffs' and Class Members' Private Information confidential and to protect it from unauthorized access and disclosure.

> **ANSWER:** **Defendants deny the allegations contained in paragraph 37 of Plaintiffs' Consolidated Class Action Complaint.**

38.     Plaintiffs and Class Members provided their Private Information to MercyOne with the reasonable expectation and mutual understanding that MercyOne would comply with its

obligations to keep such Information confidential and secure from unauthorized access and to provide timely notice of any security breaches.

> **ANSWER:** **Defendants deny the allegations contained in paragraph 38 of Plaintiffs' Consolidated Class Action Complaint.**

39. MercyOne's data security obligations were particularly important given the substantial increase in cyberattacks in recent years.

> **ANSWER:** **Defendants deny the allegations contained in paragraph 39 of Plaintiffs' Consolidated Class Action Complaint.**

40. MercyOne knew or should have known that its electronic records would be targeted by cybercriminals.

> **ANSWER:** **Defendants deny the allegations contained in paragraph 40 of Plaintiffs' Consolidated Class Action Complaint.**

*C. The Healthcare Sector is Particularly Susceptible to Data Breaches*

41. MercyOne was on notice that companies in the healthcare industry are susceptible targets for data breaches.

> **ANSWER:** **Defendants deny the allegations contained in paragraph 41 of Plaintiffs' Consolidated Class Action Complaint.**

42. MercyOne was also on notice that the FBI has been concerned about data security in the healthcare industry. In August 2014, after a cyberattack on Community Health Systems, Inc., the FBI warned companies within the healthcare industry that hackers were targeting them. The warning stated that "[t]he FBI has observed malicious actors targeting healthcare related systems, perhaps for the purpose of obtaining the Protected Healthcare Information (PHI) and/or Personally Identifiable Information (PII)."

> **ANSWER:** **Defendants admit that this paragraph purports to quote an uncited publication. Defendants are without knowledge or information sufficient to form a belief as to the content and accuracy of that third-party publication. Defendants deny the allegations contained in paragraph 42 of Plaintiffs' Consolidated Class Action Complaint.**

43.     The American Medical Association ("AMA") has also warned healthcare companies about the importance of protecting their patients' confidential information:

> Cybersecurity is not just a technical issue; it's a patient safety issue. AMA research has revealed that 83% of physicians work in a practice that has experienced some kind of cyberattack. Unfortunately, practices are learning that cyberattacks not only threaten the privacy and security of patients' health and financial information, but also patient access to care.

**ANSWER:     Defendants admit that this paragraph purports to quote an uncited publication. Defendants are without knowledge or information sufficient to form a belief as to the content and accuracy of that third-party publication and the remaining allegations in paragraph 43.**

44.     The healthcare sector reported the second largest number of data breaches among all measured sectors in 2018, with the highest rate of exposure per breach. In 2022, the largest growth in compromises occurred in the healthcare sector.

**ANSWER:     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 44.**

45.     Indeed, when compromised, healthcare-related data is among the most sensitive and personally consequential. A report focusing on healthcare breaches found that the "average total cost to resolve an identity theft-related incident ... came to about $20,000," and that the victims were often forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.

**ANSWER:     Defendants admit that this paragraph purports to quote an uncited publication.  Defendants are without knowledge or information sufficient to form a belief as to the content and accuracy of that third-party publication.  Defendants.  Defendants deny the remaining allegations in paragraph 45.**

46.     Almost 50 percent of the victims of identity theft lost their healthcare coverage as a result of the incident, while nearly 30 percent said their insurance premiums went up after the event. Forty percent of the customers were never able to resolve their identity theft at all. Data

breaches and identity theft have a crippling effect on individuals and detrimentally impact the economy as a whole.

> **ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 46.**

47.     Healthcare-related breaches have continued to rapidly increase because electronic patient data is seen as a valuable asset. "Hospitals have emerged as a primary target because they sit on a gold mine of sensitive personally identifiable information for thousands of patients at any given time. From social security and insurance policies, to next of kin and credit cards, no other organization, including credit bureaus, have so much monetizable information stored in their data centers."

> **ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 47.**

48.     As a healthcare provider, MercyOne knew, or should have known, the importance of safeguarding its patients' Private Information, including PHI, entrusted to it, and of the foreseeable consequences if such data were to be disclosed. These consequences include the significant costs that would be imposed on MercyOne's patients as a result of a breach. MercyOne failed, however, to take adequate cybersecurity measures to prevent the Data Breach from occurring.

> **ANSWER:** **Defendants deny the allegations contained in paragraph 48 of Plaintiffs' Consolidated Class Action Complaint.**

**C.     THE DATA BREACH WAS FORESEEABLE AND PREVENTABLE**

49.     As explained by the FBI, "[p]revention is the most effective defense against ransomware and it is critical to take precautions for protection."

> **ANSWER:** **Defendants admit that this paragraph purports to quote an uncited publication.  Defendants are without knowledge or information sufficient to form a belief as to the content and accuracy of that third-party publication.**

50.     Defendants' data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in the healthcare industry preceding the date of the breach.

> **ANSWER:     Defendants deny the allegations contained in paragraph 50 of Plaintiffs' Consolidated Class Action Complaint.**

51.     In 2021, a record 1,862 data breaches occurred, resulting in approximately 293,927,708 sensitive records being exposed. In 2022, there was a 41.5% increase in the number of victims impacted. Of the 1,862 recorded data breaches in 2021, 330 of them, or 17.7% were in the medical or healthcare industry. The 330 reported breaches in 2021 exposed nearly 30 million sensitive records (28,045,658), compared to only 306 breaches that exposed nearly 10 million sensitive records (9,700,238) in 2020.

> **ANSWER:     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 51.**

52.     Indeed, cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of, and prepared for, a potential attack.

> **ANSWER:     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 52.**

53.     In fact, according to the cybersecurity firm Mimecast, 90% of healthcare organizations experienced cyberattacks in the past year.

> **ANSWER:     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 53.**

54.     Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendants' industry, including Defendants.

> **ANSWER:     Defendants deny the allegations contained in paragraph 54 of Plaintiffs' Consolidated Class Action Complaint.**

55.     To prevent and detect cyber-attacks Defendants could and should have

implemented, as recommended by the United States Cybersecurity & Infrastructure Security Agency, the following measures:

- **Update and patch your computer**. Ensure your applications and operating systems (OSs) have been updated with the latest patches. Vulnerable applications and OSs are the target of most ransomware attacks ....

- **Use caution with links and when entering website addresses.** Be careful when clicking directly on links in emails, even if the sender appears to be someone you know. Attempt to independently verify website addresses (e.g., contact your organization's helpdesk, search the internet for the sender organization's website or the topic mentioned in the email). Pay attention to the website addresses you click on, as well as those you enter yourself. Malicious website addresses often appear almost identical to legitimate sites, often using a slight variation in spelling or a different domain (e.g., .com instead of .net) ....

- **Open email attachments with caution**. Be wary of opening email attachments, even from senders you think you know, particularly when attachments are compressed files or ZIP files.

- **Keep your personal information safe.** Check a website's security to ensure the information you submit is encrypted before you provide it ....

- **Verify email senders**. If you are unsure whether or not an email is legitimate, try to verify the email's legitimacy by contacting the sender directly. Do not click on any links in the email. If possible, use a previous (legitimate) email to ensure the contact information you have for the sender is authentic before you contact them.

- **Inform yourself**. Keep yourself informed about recent cybersecurity threats and up to date on ransomware techniques. You can find information about known phishing attacks on the Anti-Phishing Working Group website. You may also want to sign up for CISA product notifications, which will alert you when a new Alert, Analysis Report, Bulletin, Current Activity, or Tip has been published.

- **Use and maintain preventative software programs**. Install antivirus software, firewalls, and email filters-and keep them updated-to reduce malicious network traffic ....

**<u>ANSWER:</u>**    **Defendants are without knowledge or information sufficient to form a belief as to the allegations contained in paragraph 55 of Plaintiffs' Consolidated Class Action Complaint.**

56.    To prevent and detect cyber-attacks or ransomware attacks Defendants could and

should have implemented, as recommended by the Microsoft Threat Protection Intelligence Team

the following measures:

- **Secure internet-facing assets**

  o Apply latest security updates
  o Use threat and vulnerability management
  o Perform regular audit; remove privileged credentials;

- **Thoroughly investigate and remediate alerts**

  o Prioritize and treat commodity malware infections as potential full compromise;

- **Include IT Pros in security discussions**

  o Ensure collaboration among (security operations], [security admins], and [information technology] admins to configure servers and other endpoints securely;

- **Build credential hygiene**

  o Use [multifactor authentication] or [network level authentication] and use strong, randomized, just-in-time local admin passwords;

  o **Apply principle of least-privilege**

  o Monitor for adversarial activities
  o Hunt for brute force attempts
  o Monitor for cleanup of Event Logs
  o Analyze logon events;

- **Harden infrastructure**

  o Use Windows Defender Firewall
  o Enable tamper protection
  o Enable cloud-delivered protection
  o Tum on attack surface reduction rules and [Antimalware Scan Interface] for Office [Visual Basic for Applications].

**ANSWER:**    **Defendants are without knowledge or information sufficient to form a belief as to the allegations contained in paragraph 56 of Plaintiffs' Consolidated Class Action Complaint.**

**D.    MERCYONE FAILED TO COMPLY WITH HIPAA**

57.    Title II of HIPAA contains what are known as the Administrative Simplification

provisions. See 42 U.S.C. §§ 1301, et seq. These provisions require that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling PHI similar to the data Defendants left unguarded and vulnerable to attack. HHS has subsequently promulgated five rules under authority of the Administrative Simplification provisions of HIPAA.

> **ANSWER:** **Defendants admit to the existence of HIPAA, but denies that the allegations contained in paragraph 57 of Plaintiffs' Consolidated Class Action Complaint fully and accurately describe any duties imposed by HIPAA, and deny the remaining allegations.**

58.     MercyOne's Data Breach resulted from a combination of insufficiencies that indicate MercyOne failed to comply with safeguards mandated by HIPAA regulations and industry standards. First, it can be inferred from MercyOne's Data Breach that MercyOne either failed to implement, or inadequately implemented, information security policies or procedures to protect Plaintiffs' and Class Members' PHI.

> **ANSWER:** **Defendants deny the allegations contained in paragraph 58 of Plaintiffs' Consolidated Class Action Complaint.**

59.     Plaintiffs' and Class Members' Private Information compromised in the Data Breach included "protected health information" as defined by CFR § 160.103.

> **ANSWER:** **Defendants deny the allegations contained in paragraph 59 of Plaintiffs' Consolidated Class Action Complaint.**

60.     45 CFR § 164.402 defines "breach" as "the acquisition, access, use, or disclosure of protected health information in a manner not permitted under subpart E of this part which compromises the security or privacy of the protected health information."

> **ANSWER:** **Defendants admit that 45 CFR § 164.402 defines "breach" as "the acquisition, access, use, or disclosure of protected health information in a manner not permitted under subpart E of this part which compromises the security or privacy of the protected health information."**

61.     45 CFR § 164.402 also defines "unsecured protected health information" as

"protected health information that is not rendered unusable, unreadable, or indecipherable to unauthorized persons through the use of a technology or methodology specified by the [HHS] Secretary[.]"

> **ANSWER:** **Defendants admit that 45 CFR § 164.402 defines "unsecured protected health information" as "protected health information that is not rendered unusable, unreadable, or indecipherable to unauthorized persons through the use of a technology or methodology specified by the [HHS] Secretary[.]"**

62. Plaintiffs' and Class Members' Private Information included "unsecured protected health information" as defined by 45 CFR § 164.402.

> **ANSWER:** **The allegations in paragraph 62 of Plaintiffs' Consolidated Class Action Complaint contain improper legal conclusions which do not require a response. To the extent a response is required, Defendants deny the allegations contained therein.**

63. Based upon Defendants' Notice to Plaintiffs and Class Members, MercyOne reasonably believes that Plaintiffs' and Class Members' unsecured PHI has been acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E, as a result of the Data Breach.

> **ANSWER:** **Defendants deny the allegations contained in paragraph 63 of Plaintiffs' Consolidated Class Action Complaint.**

64. Plaintiffs' and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach was not rendered unusable, unreadable, or indecipherable to unauthorized persons.

> **ANSWER:** **The allegations in paragraph 64 of Plaintiffs' Consolidated Class Action Complaint contain improper legal conclusions which do not require a response. To the extent a response is required, Defendants deny the allegations contained therein.**

65. Plaintiffs' and Class Members' unsecured PHI that was acquired, accessed, used, and/or disclosed in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach,

and which was not rendered unusable, unreadable, or indecipherable to unauthorized persons, was viewed by unauthorized persons.

> **ANSWER:**    **The allegations in paragraph 65 of Plaintiffs' Consolidated Class Action Complaint contain improper legal conclusions which do not require a response. To the extent a response is required, Defendants deny the allegations contained therein.**

66.     Plaintiffs' and Class Members' unsecured PHI was viewed by unauthorized persons in a manner not permitted under 45 CFR, Subpart E as a result of the Data Breach.

> **ANSWER:**    **Defendants deny the allegations contained in paragraph 66 of Plaintiffs' Consolidated Class Action Complaint.**

67.     After receiving notice that they were victims of the Data Breach (which required the filing of a data breach report in accordance with 45 CFR § 164.408(a)), it is reasonable for recipients of that notice, including Plaintiffs and Class Members in this case, to believe that future harm (including medical identity theft) is real and imminent, and to take steps necessary to mitigate that risk of future harm.

> **ANSWER:**    **Defendants deny the allegations contained in paragraph 67 of Plaintiffs' Consolidated Class Action Complaint.**

68.     In addition, MercyOne's Data Breach could have been prevented if MercyOne had implemented HIPAA-mandated, industry standard policies and procedures for securely disposing of PHI when it was no longer necessary and/or had honored its obligations to its patients.

> **ANSWER:**    **Defendants deny the allegations contained in paragraph 68 of Plaintiffs' Consolidated Class Action Complaint.**

69.     MercyOne's security failures also include, but are not limited to:

a.     Failing to maintain an adequate data security system to prevent data loss;

b.     Failing to mitigate the risks of a data breach and loss of data;

c.      Failing to ensure the confidentiality and integrity of electronic protected health information MercyOne creates, receives, maintains, and transmits in violation of 45 CFR 164.306(a)(1);

d.      Failing to implement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights in violation of 45 CFR 164.312(a)(1);

e.      Failing to implement policies and procedures to prevent, detect, contain, and correct security violations in violation of 45 CFR 164.308(a)(1);

f. Failing to identify and respond to suspected or known security incidents;

g.      Failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity, in violation of 45 CFR 164.308(a)(6)(ii);

h.      Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic protected health information, in violation of 45 CFR 164.306(a)(2);

i. Failing to protect against any reasonably anticipated uses or disclosures of electronic protected health information that are not permitted under the privacy rules regarding individually identifiable health information, in violation of 45 CFR 164.306(a)(3);

j. Failing to ensure compliance with HIPAA security standard rules by Defendants' workforce, in violation of 45 CFR 164.306(a)(94); and

k.      Impermissibly and improperly using and disclosing protected health information that is and remains accessible to unauthorized persons, in violation of 45 CFR 164.502, *et seq.*

> **ANSWER:** **Defendants deny the allegations contained in paragraph 69 and subsections (a)-(e) of Plaintiffs' Consolidated Class Action Complaint.**

70. Because MercyOne has failed to comply with HIPAA, while monetary relief may cure some of Plaintiffs' and Class Members' injuries, injunctive relief is also necessary to ensure MercyOne's approach to information security is adequate and appropriate going forward. MercyOne still maintains the PHI and other highly sensitive PII of its current and former patients, including Plaintiffs and Class Members. Without the supervision of the Court through injunctive relief, Plaintiffs' and Class Members' Private Information remains at risk of subsequent data breaches.

> **ANSWER:** **Defendants deny the allegations contained in paragraph 70 of Plaintiffs' Consolidated Class Action Complaint.**

### E. MERCYONE FAILED TO COMPLY WITH FTC GUIDELINES

71. The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses to highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision making. Indeed, the FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

> **ANSWER:** **Defendants admit to the existence of the FTC and FTCA, but denies that the allegations contained in paragraph 71 of Plaintiffs' Consolidated Class Action Complaint fully and accurately describe any duties imposed by the FTCA, deny that they are subject to the FTC or FTCA, and deny the remaining allegations.**

72. In October 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep, properly

dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

> **ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 72.**

73. The FTC further recommends companies not maintain PII, which includes PHI, longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor the network for suspicious activity, and verify that third-party service providers have implemented reasonable security measures.

> **ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 73.**

74. The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by the FTCA. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

> **ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 74.**

75. As evidenced by the Data Breach, MercyOne failed to properly implement basic data security practices. MercyOne's failure to employ reasonable and appropriate measures to protect against unauthorized access to Plaintiffs' and Class Members' Private Information

constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

>   **ANSWER:** **Defendants deny the allegations contained in paragraph 75 of Plaintiffs' Consolidated Class Action Complaint.**

76.     MercyOne was at all times fully aware of its obligation to protect the Private Information of its patients yet failed to comply with such obligations. Defendants were also aware of the significant repercussions that would result from its failure to do so.

>   **ANSWER:** **Defendants deny the alleged obligations and deny that Plaintiffs have fully and accurately described any such obligations. Further answering, Defendants deny the remaining allegations contained in paragraph 76 of Plaintiffs' Consolidated Class Action Complaint.**

**F.     MERCYONE FAILED TO COMPLY WITH INDUSTRY STANDARDS**

77.     As noted above, experts studying cybersecurity routinely identify businesses as being particularly vulnerable to cyberattacks because of the value of the Private Information which they collect and maintain.

>   **ANSWER:** **Defendants deny the allegations contained in paragraph 77 of Plaintiffs' Consolidated Class Action Complaint.**

78.     Some industry best practices that should be implemented by businesses dealing with sensitive PHI like MercyOne include but are not limited to: educating all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, and limiting which employees can access sensitive data. As evidenced by the Data Breach, Defendants failed to follow some or all of these industry best practices.

>   **ANSWER:** **Defendants deny the allegations contained in paragraph 78 of Plaintiffs' Consolidated Class Action Complaint.**

79.     Other best cybersecurity practices that are standard in the industry include: installing appropriate malware detection software; monitoring and limiting network ports; protecting web browsers and email management systems; setting up network systems such as

firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points. As evidenced by the Data Breach, Defendants failed to follow some or all of these cybersecurity best practices.

> **ANSWER:** **Defendants deny the allegations contained in paragraph 79 of Plaintiffs' Consolidated Class Action Complaint**

80.     Defendants failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

> **ANSWER:** **Defendants deny the allegations contained in paragraph 80 of Plaintiffs' Consolidated Class Action Complaint.**

81.     Defendants failed to comply with these accepted standards, thereby permitting the Data Breach to occur.

> **ANSWER:** **Defendants deny the allegations contained in paragraph 81 of Plaintiffs' Consolidated Class Action Complaint.**

**G.    MERCYONE BREACHED ITS DUTY TO SAFEGUARD PLAINTIFFS' AND CLASS MEMBERS' PRIVATE INFORMATION**

82.     In addition to its obligations under federal and state laws, MercyOne owed a duty to Plaintiffs and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting the Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. MercyOne owed a duty to Plaintiffs and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected the Private Information of Class Members.

**ANSWER:** **Defendants deny the allegations contained in paragraph 82 of Plaintiffs' Consolidated Class Action Complaint.**

83.     MercyOne breached its obligations to Plaintiffs and Class Members and/or was otherwise negligent and reckless because it failed to properly maintain and safeguard its computer systems and data. MercyOne's unlawful conduct includes, but is not limited to, the following acts and/or omissions:

    a.  Failing to maintain an adequate data security system that would reduce the risk of data breaches and cyberattacks;

    b.  Failing to adequately protect patients' Private Information;

    c.  Failing to properly monitor its own data security systems for existing intrusions;

    d.  Failing to sufficiently train its employees regarding the proper handling of its patients Private Information;

    e.  Failing to fully comply with FTC guidelines for cybersecurity in violation of the FTCA;

    f.  Failing to adhere to HIPAA and industry standards for cybersecurity as discussed above; and

    g.  Otherwise breaching its duties and obligations to protect Plaintiffs' and Class Members' Private Information.

**ANSWER:** **Defendants deny the allegations contained in paragraph 83 and subsections (a)-(g) of Plaintiffs' Consolidated Class Action Complaint.**

84.     MercyOne negligently and unlawfully failed to safeguard Plaintiffs' and Class Members' Private Information by allowing cyberthieves to access its computer network and systems which contained unsecured and unencrypted Private Information.

> **ANSWER:** **Defendants deny the allegations contained in paragraph 84 of Plaintiffs' Consolidated Class Action Complaint.**

85.     Had MercyOne remedied the deficiencies in its information storage and security systems, followed industry guidelines, and adopted security measures recommended by experts in the field, it could have prevented intrusion into its information storage and security systems and, ultimately, the theft of Plaintiffs' and Class Members' confidential Private Information.

> **ANSWER:** **Defendants deny the allegations contained in paragraph 85 of Plaintiffs' Consolidated Class Action Complaint.**

86.     Accordingly, Plaintiffs' and Class Members' lives were severely disrupted. What's more, they have been harmed as a result of the Data Breach and now face an increased risk of future harm that includes, but is not limited to, fraud and identity theft. Plaintiffs and Class Members also lost the benefit of the bargain they made with MercyOne.

> **ANSWER:** **Defendants deny the allegations contained in paragraph 86 of Plaintiffs' Consolidated Class Action Complaint.**

**H.     MERCYONE SHOULD HAVE KNOWN THAT CYBERCRIMINALS TARGET PII AND PHI TO CARRY OUT FRAUD AND IDENTITY THEFT**

87.     The FTC hosted a workshop to discuss "informational injuries," which are injuries that consumers like Plaintiffs and Class Members suffer from privacy and security incidents such as data breaches or unauthorized disclosure of data. Exposure of highly sensitive personal information that a consumer wishes to keep private may cause harm to the consumer, such as the ability to obtain or keep employment. Consumers' loss of trust in e-commerce also deprives them of the benefits provided by the full range of goods and services available which can have negative impacts on daily life.

> **ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 87.**

88.     Any victim of a data breach is exposed to serious ramifications regardless of the

nature of the data that was breached. Indeed, the reason why criminals steal information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims or to take over victims' identities in order to engage in illegal financial transactions under the victims' names.

> **ANSWER:** **Defendants deny that any victim of a data breach is exposed to serious ramifications regardless of the nature of the data that was breached. Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 88.**

89. Because a person's identity is akin to a puzzle, the more accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity or to otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

> **ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 89**.

90. In fact, as technology advances, computer programs may scan the Internet with a wider scope to create a mosaic of information that may be used to link compromised information to an individual in ways that were not previously possible. This is known as the "mosaic effect." Names and dates of birth, combined with contact information like telephone numbers and email addresses, are very valuable to hackers and identity thieves as it allows them to access users' other accounts .

> **ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 90.**

91.     Thus, even if certain information was not purportedly involved in the Data Breach, the unauthorized parties could use Plaintiffs' and Class Members' Private Information to access accounts, including, but not limited to, email accounts and financial accounts, to engage in a wide variety of fraudulent activity against Plaintiffs and Class Members.

**ANSWER:**     **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 91.**

92.     For these reasons, the FTC recommends that identity theft victims take several time-consuming steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert on their account (and an extended fraud alert that lasts for 7 years if someone steals the victim's identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a freeze on their credit, and correcting their credit reports. However, these steps do not guarantee protection from identity theft but can only mitigate identity theft's long-lasting negative impacts.

**ANSWER:**     **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 92.**

93.     Identity thieves can also use stolen personal information such as Social Security numbers and PHI for a variety of crimes, including credit card fraud, phone or utilities fraud, bank fraud, to obtain a driver's license or official identification card in the victim's name but with the thief's picture, to obtain government benefits, or to file a fraudulent tax return using the victim's information. In addition, identity thieves may obtain a job using the victim's Social Security number, rent a house in the victim's name, receive medical services in the victim's name, and even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

**ANSWER:**     **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 93.**

94.     In fact, a study by the Identity Theft Resource Center shows the multitude of

harms caused by fraudulent use of PII:



> **ANSWER:**     **Defendants admit that this paragraph purports to quote an uncited publication.  Defendants are without knowledge or information sufficient to form a belief as to the content and accuracy of that third-party publication.  Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 94.**

95.     PHI is also especially valuable to identity thieves. As the FTC recognizes, identity

thieves can use PHI to commit an array of crimes, including identity theft and medical and financial

fraud.

> **ANSWER:**     **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 95.**

96.     Indeed, a robust cyber black market exists in which criminals openly post stolen

PHI on multiple underground Internet websites, commonly referred to as the dark web.

> **ANSWER:**     **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 96.**

97.     While credit card information and associated PII can sell for as little as $1-$2 on

the black market, protected health information can sell for as much as $363 according to the
Infosec Institute.

>   **ANSWER:**   **Defendants are without knowledge or information sufficient to form a
>   belief as to the truth of the allegations contained in paragraph 97.**

98.     PHI is particularly valuable because criminals can use it to target victims with
frauds and scams that take advantage of the victim's medical conditions or victim settlements. It
can be used to create fake insurance claims, allowing for the purchase and resale of medical
equipment, or gain access to prescriptions for illegal use or resale.

>   **ANSWER:**   **Defendants are without knowledge or information sufficient to form a
>   belief as to the truth of the allegations contained in paragraph 98.**

99.     Medical identity theft can result in inaccuracies in medical records and costly false
claims. It can also have life-threatening consequences. If a victim's health information is mixed
with other records, it can lead to misdiagnosis or mistreatment. "Medical identity theft is a growing
and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam
Dixon, executive director of World Privacy Forum. "Victims often experience financial
repercussions and worse yet, they frequently discover erroneous information has been added to
their personal medical files due to the thief's activities."

>   **ANSWER:**   **Defendants are without knowledge or information sufficient to form a
>   belief as to the truth of the allegations contained in paragraph 99.**

100.    The ramifications of MercyOne's failure to keep its patients' Private Information
secure are long lasting and severe. Once it is stolen, fraudulent use of such and damage to victims
may continue for years.

>   **ANSWER:**   **Defendants deny the allegations contained in paragraph 100 of
>   Plaintiffs' Consolidated Class Action Complaint.**

101.    Here, not only was sensitive medical information compromised, but financial and
health insurance information and Social Security numbers were compromised too. The value of

both PII and PHI is axiomatic. The value of "big data" in corporate America is astronomical. The fact that identity thieves attempt to steal identities notwithstanding possible heavy prison sentences illustrates beyond a doubt that the Private Information compromised here has considerable market value.

**ANSWER:**   **Defendants deny the allegations contained in paragraph 101 of Plaintiffs' Consolidated Class Action Complaint.**

102.   It must also be noted that there may be a substantial time lag between when harm occurs and when it is discovered, and also between when PII and/or PHI is stolen and when it is misused. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm

**ANSWER:**   **Defendants admit that this paragraph purports to quote an uncited publication.   Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 102.**

103.   PII and PHI are such valuable commodities to identity thieves that once the information has been compromised, criminals often trade the information on the dark web for years.

**ANSWER:**   **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 103.**

104.   As a result, Plaintiffs and Class Members are at an increased risk of fraud and identity theft, including medical identity theft, for many years into the future. Thus, Plaintiffs and Class Members have no choice but to vigilantly monitor their accounts for many years to come PII of Plaintiffs and members of the proposed Classes to unscrupulous operators, con artists, and

criminals.

> **ANSWER:**   **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 104.**

**I.**   **PLAINTIFFS' AND CLASS MEMBERS' DAMAGES**

105.   Plaintiffs and Class Members entrusted their Private Information to Defendants in order to receive Defendants' services.

> **ANSWER:**   **Defendants deny the allegations contained in paragraph 105 of Plaintiffs' Consolidated Class Action Complaint.**

106.   Their Private Information was subsequently compromised as a direct and proximate result of the Data Breach, which Data Breach resulted from Defendants' inadequate data security practices.

> **ANSWER:**   **Defendants deny the allegations contained in paragraph 106 of Plaintiffs' Consolidated Class Action Complaint.**

107.   As a direct and proximate result of MercyOne's actions and omissions, Plaintiffs and Class Members have been harmed and are at an imminent, immediate, and continuing increased risk of harm, including but not limited to, having medical services billed in their names, loans opened in their names, tax returns filed in their names, utility bills opened in their names, credit card accounts opened in their names, and other forms of identity theft.

> **ANSWER:**   **Defendants deny the allegations contained in paragraph 107 of Plaintiffs' Consolidated Class Action Complaint.**

108.   Further, and as set forth above, as a direct and proximate result of Defendants' conduct, Plaintiffs and Class Members have also been forced to take the time and effort to mitigate the actual and potential impact of the data breach on their everyday lives, including placing "freezes" and "alerts" with credit reporting agencies, contacting their financial institutions, closing or modifying financial accounts, and closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

**ANSWER:** **Defendants deny the allegations contained in paragraph 108 of Plaintiffs' Consolidated Class Action Complaint.**

109.    Plaintiffs and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 109.**

110.    Plaintiffs and Class Members also face a substantial risk of being targeted in future phishing, data intrusion, and other illegal schemes through the misuse of their Private Information, since potential fraudsters will likely use such Private Information to carry out such targeted schemes against Plaintiffs and Class Members.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 110.**

111.    The Private Information maintained by and stolen from Defendants' systems, combined with publicly available information, allows nefarious actors to assemble a detailed mosaic of Plaintiffs and Class Members, which can also be used to carry out targeted fraudulent schemes against Plaintiffs and Class Members.

**ANSWER:** **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 111, and therefore deny the same.**

112.    Plaintiffs and Class Members also lost the benefit of the bargain they made with MercyOne. Plaintiffs and Class Members overpaid for services that were intended to be accompanied by adequate data security but were not. Indeed, part of the price Plaintiffs and Class Members paid to MercyOne (or which was paid on their behalf) was intended to be used by MercyOne to fund adequate security of MercyOne's systems and protect Plaintiffs' and Class Members' Private Information. Thus, Plaintiffs and the Class did not receive the benefit of the

bargain.

> **ANSWER:**   **Defendants deny the allegations contained in paragraph 112 of Plaintiffs' Consolidated Class Action Complaint.**

113.    Additionally, Plaintiffs and Class Members also suffered a loss of value of their PII and PHI when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases. An active and robust legitimate marketplace for Private Information also exists. In 2019, the data brokering industry was worth roughly $200 billion. In fact, the data marketplace is so sophisticated that consumers can sell their non-public information directly to a data broker who in turn aggregates the information and provides it to other companies. Consumers who agree to provide their web browsing history to the Nielsen Corporation can in turn receive up to $50 a year.

> **ANSWER:**   **Defendants deny that Plaintiffs and Class Members suffered a loss of value of their PII and PHI. Further answering, Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 113 of Plaintiffs' Consolidated Class Action Complaint.**

114.    As a result of the Data Breach, Plaintiffs' and Class Members' Private Information, which has an inherent market value in both legitimate and illegal markets, has been harmed and diminished due to its acquisition by cybercriminals. This transfer of valuable information happened with no consideration paid to Plaintiffs or Class Members for their property, resulting in an economic loss. Moreover, the Private Information is apparently readily available to others, and the rarity of the Private Information has been destroyed because it is no longer only held by Plaintiffs and the Class Members, and because that data no longer necessarily correlates only with activities undertaken by Plaintiffs and the Class Members, thereby causing additional loss of value.

> **ANSWER:**   **Defendants deny that Plaintiffs' and Class Members' Private Information has market value, and further deny that such value has been harmed and diminished. Further answering, the remaining allegations contain improper legal conclusions which do not require a**

**response. To the extent a response is required, Defendants are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 114 of Plaintiffs' Consolidated Class Action Complaint.**

115.    Finally, Plaintiffs and Class Members have suffered or will suffer actual injury as a direct and proximate result of the Data Breach in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach. These losses include, but are not limited to, the following:

    a.   Monitoring for and discovering fraudulent charges;

    b.   Canceling and reissuing credit and debit cards;

    c.   Addressing their inability to withdraw funds linked to compromised accounts;

    d.   Taking trips to banks and waiting in line to obtain funds held in limited accounts;

    e.   Spending time on the phone with or at a financial institution to dispute fraudulent charges;

    f.   Contacting financial institutions and closing or modifying financial accounts;

    g.   Resetting automatic billing and payment instructions from compromised credit and debit cards to new ones;

    h.   Paying late fees and declined payment fees imposed as a result of failed automatic payments that were tied to compromised cards that had to be cancelled; and

    i.   Closely reviewing and monitoring bank accounts and credit reports for additional unauthorized activity for years to come.

**ANSWER:**      **Defendants deny the allegations contained in paragraph 112 and subsections (a)-(i) of Plaintiffs' Consolidated Class Action Complaint.**

116.      Moreover, Plaintiffs and Class Members have an interest in ensuring that their Private Information, which is believed to still be in the possession of MercyOne, is protected from future breaches by the implementation of more adequate data security measures and safeguards, including but not limited to, ensuring that the storage of data or documents containing highly sensitive personal and health information of its patients is not accessible online, that access to such data is password-protected, and that such data is properly encrypted.

**ANSWER:**      **Defendants deny the allegations contained in paragraph 116 of Plaintiffs' Consolidated Class Action Complaint.**

117.      As a direct and proximate result of MercyOne's actions and inactions, Plaintiffs and Class Members have suffered a loss of privacy and have suffered cognizable harm, including an imminent and substantial future risk of harm, in the forms set forth above.

**ANSWER:**      **Defendants deny the allegations contained in paragraph 117 of Plaintiffs' Consolidated Class Action Complaint.**

*Plaintiff Tiffany Harris' Experience*

118.      Plaintiff Harris is Defendants' patient and has sought medical care from Defendants in several instances.

**ANSWER:**      **Pursuant to the Court's Order at ECF No. 45, Tiffany Harris has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Ms. Harris. To the extent an answer is required, Defendants deny Ms. Harris' allegations.**

119.      Plaintiff Harris is very careful about sharing her Private Information. Plaintiff Harris has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source. Plaintiff Harris stores any documents containing his sensitive PII in a safe and secure location or destroys the documents. Moreover, Plaintiff Harris diligently chooses unique

usernames and passwords for her various online accounts.

>**ANSWER:** **Pursuant to the Court's Order at ECF No. 45, Tiffany Harris has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Ms. Harris. To the extent an answer is required, Defendants deny Ms. Harris' allegations.**

120.    Plaintiff Harris only allowed Defendants to maintain, store, and use her Private Information because she believed that Defendants would use basic security measures to protect her Private Information, such as requiring passwords and multi-factor authentication to access databases storing his Private Information. As a result, Plaintiff's Private Information was within the possession and control of Defendants at the time of the Data Breach.

>**ANSWER:** **Pursuant to the Court's Order at ECF No. 45, Tiffany Harris has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Ms. Harris. To the extent an answer is required, Defendants deny Ms. Harris' allegations.**

121.    Plaintiff Harris received the Notice of Data Breach Letter that her Private Information was involved in the Data Breach on or around May 23, 2023. It stated, in relevant part, that Plaintiff's name, date of birth, address, and Social Security number were disclosed in the Data Breach.

>**ANSWER:** **Pursuant to the Court's Order at ECF No. 45, Tiffany Harris has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Ms. Harris. To the extent an answer is required, Defendants deny Ms. Harris' allegations.**

122.    Plaintiff Harris suffered injury from a loss of privacy the moment that her Private Information was accessed and exfiltrated by a third party without authorization.

>**ANSWER:** **Pursuant to the Court's Order at ECF No. 45, Tiffany Harris has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Ms. Harris. To the extent an answer is required, Defendants deny Ms. Harris' allegations.**

123.    Plaintiff Harris has also suffered injury in the form of damages to and diminution in the value of her Private Information—a form of intangible property that Plaintiff entrusted to

Defendant.

> **ANSWER:**   **Pursuant to the Court's Order at ECF No. 45, Tiffany Harris has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Ms. Harris. To the extent an answer is required, Defendants deny Ms. Harris' allegations.**

124.   The Data Breach has also caused Plaintiff Harris to suffer imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from her Private Information being placed in the hands of criminals.

> **ANSWER:**   **Pursuant to the Court's Order at ECF No. 45, Tiffany Harris has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Ms. Harris. To the extent an answer is required, Defendants deny Ms. Harris' allegations.**

125.   This risk from the Data Breach has caused Plaintiff Harris to spend significant time dealing with issues related to the Data Breach, which includes time spent verifying the legitimacy of the Notice of Data Breach, and self-monitoring her accounts and credit reports to ensure no fraudulent activity has occurred. This time, which has been lost forever and cannot be recaptured, was spent at Defendants' direction.

> **ANSWER:**   **Pursuant to the Court's Order at ECF No. 45, Tiffany Harris has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Ms. Harris. To the extent an answer is required, Defendants deny Ms. Harris' allegations.**

126.   The substantial risk of imminent harm and loss of privacy have caused Plaintiff Harris to suffer stress, fear, and anxiety. This risk is especially magnified because Plaintiff's Social Security number and name were exposed together, meaning third parties are more likely to access her financial accounts.

> **ANSWER:**   **Pursuant to the Court's Order at ECF No. 45, Tiffany Harris has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Ms. Harris. To the extent an answer is required, Defendants deny Ms. Harris' allegations.**

127.   Plaintiff Harris has a continuing interest in ensuring that her Private Information,

which, upon information and belief, remains backed up in Defendants' possession, is protected, and safeguarded from future breaches.

>**ANSWER:** **Pursuant to the Court's Order at ECF No. 45, Tiffany Harris has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Ms. Harris. To the extent an answer is required, Defendants deny Ms. Harris' allegations.**

*Plaintiff Rebecca Oberdorf's Experience*

128.   When Plaintiff Oberdorf became a patient of Defendants, they required that she provide them with substantial amounts of her PII and PHI.

>**ANSWER:** **Pursuant to the Court's Order at ECF No. 45, Rebecca Oberdorf has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Ms. Oberdorf. To the extent an answer is required, Defendants deny Ms. Oberdorf's allegations.**

129.   On or around June 2, 2023, Plaintiff Oberdorf received a letter from Defendants informing her that her PII and PHI had been accessed during the Data Breach. The notice letter informed her that the Private Information impacted may have included her "name, address, date of birth, driver's license/state identification number, Social Security number, financial account information, medical record number, encounter number, Medicare or Medicaid identification number, mental or physical treatment/condition information, diagnosis code/information, date of service, admission/discharge date, prescription information, billing/claims information, personal representative or guardian name, and health insurance information."

>**ANSWER:** **Pursuant to the Court's Order at ECF No. 45, Rebecca Oberdorf has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Ms. Oberdorf. To the extent an answer is required, Defendants deny Ms. Oberdorf's allegations.**

130.   Plaintiff Oberdorf suffered actual injury in the form of time spent dealing with the Data Breach and the increased risk of fraud resulting from the Data Breach and/or monitoring her accounts for fraud.

**ANSWER:** **Pursuant to the Court's Order at ECF No. 45, Rebecca Oberdorf has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Ms. Oberdorf. To the extent an answer is required, Defendants deny Ms. Oberdorf's allegations.**

131.   Plaintiff Oberdorf would not have provided her PII and PHI to Defendants had Defendants timely disclosed that its systems lacked adequate computer and data security practices to safeguard its patients' personal and health information from theft, and that those systems were subject to a data breach.

**ANSWER:** **Pursuant to the Court's Order at ECF No. 45, Rebecca Oberdorf has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Ms. Oberdorf. To the extent an answer is required, Defendants deny Ms. Oberdorf's allegations.**

132.   Plaintiff Oberdorf suffered actual injury in the form of having her PII and PHI compromised and/or stolen as a result of the Data Breach.

**ANSWER:** **Pursuant to the Court's Order at ECF No. 45, Rebecca Oberdorf has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Ms. Oberdorf. To the extent an answer is required, Defendants deny Ms. Oberdorf's allegations.**

133.   Plaintiff Oberdorf suffered actual injury in the form of damages to and diminution in the value of her personal, health, and financial information – a form of intangible property that Plaintiff Oberdorf entrusted to Defendants for the purpose of receiving healthcare services from Defendants and which was compromised in, and as a result of, the Data Breach.

**ANSWER:** **Pursuant to the Court's Order at ECF No. 45, Rebecca Oberdorf has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Ms. Oberdorf. To the extent an answer is required, Defendants deny Ms. Oberdorf's allegations.**

134.   Plaintiff Oberdorf suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft, and misuse posed by her Private Information being placed in the hands of criminals.

> **ANSWER:** **Pursuant to the Court's Order at ECF No. 45, Rebecca Oberdorf has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Ms. Oberdorf. To the extent an answer is required, Defendants deny Ms. Oberdorf's allegations.**

135.    Plaintiff Oberdorf has a continuing interest in ensuring that her PII and PHI, which remain in the possession of Defendants, are protected and safeguarded from future breaches.

> **ANSWER:** **Pursuant to the Court's Order at ECF No. 45, Rebecca Oberdorf has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Ms. Oberdorf. To the extent an answer is required, Defendants deny Ms. Oberdorf's allegations.**

136.    As a result of the Data Breach, Plaintiff Oberdorf made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing financial accounts for any indications of actual or attempted identity theft or fraud, and researching the credit monitoring offered by Defendants. Plaintiff Oberdorf has spent several hours dealing with the Data Breach, valuable time she otherwise would have spent on other activities.

> **ANSWER:** **Pursuant to the Court's Order at ECF No. 45, Rebecca Oberdorf has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Ms. Oberdorf. To the extent an answer is required, Defendants deny Ms. Oberdorf's allegations.**

137.    As a result of the Data Breach, Plaintiff Oberdorf has suffered anxiety as a result of the release of her PII and PHI, which she believed would be protected from unauthorized access and disclosure. These feelings include anxiety about unauthorized parties viewing, selling, and/or using her PII and PHI for purposes of committing cyber and other crimes against her including, but not limited to, fraud and identity theft. Plaintiff Oberdorf is very concerned about this increased, substantial, and continuing risk, as well as the consequences that identity theft and fraud resulting from the Data Breach would have on her life.

> **ANSWER:** **Pursuant to the Court's Order at ECF No. 45, Rebecca Oberdorf has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Ms. Oberdorf. To the extent an answer is required, Defendants deny Ms. Oberdorf's allegations.**

138.     As a result of the Data Breach, Plaintiff Oberdorf anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the many harms caused by the Data Breach.

> **ANSWER:**     **Pursuant to the Court's Order at ECF No. 45, Rebecca Oberdorf has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Ms. Oberdorf. To the extent an answer is required, Defendants deny Ms. Oberdorf's allegations.**

*Plaintiff Michael Prins' Experience*

139.     When Plaintiff Prins became a patient of Defendants, they required that he provide them with substantial amounts of his PII and PHI.

> **ANSWER:**     **Pursuant to the Court's Order at ECF No. 45, Michael Prins has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Mr. Prins. To the extent an answer is required, Defendants deny Mr. Prins' allegations.**

140.     On or around June 2, 2023, Plaintiff Prins received a letter from Defendants informing him that his PII and PHI had been accessed during the Data Breach. The notice letter informed him that the Private Information impacted may have included his "name, address, date of birth, driver's license/state identification number, Social Security number, financial account information, medical record number, encounter number, Medicare or Medicaid identification number, mental or physical treatment/condition information, diagnosis code/information, date of service, admission/discharge date, prescription information, billing/claims information, personal representative or guardian name, and health insurance information."

> **ANSWER:**     **Pursuant to the Court's Order at ECF No. 45, Michael Prins has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Mr. Prins. To the extent an answer is required, Defendants deny Mr. Prins' allegations.**

141.     Plaintiff Prins suffered actual injury in the form of time spent dealing with the Data Breach and the increased risk of fraud resulting from the Data Breach and/or monitoring his

accounts for fraud.

> **ANSWER:** **Pursuant to the Court's Order at ECF No. 45, Michael Prins has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Mr. Prins. To the extent an answer is required, Defendants deny Mr. Prins' allegations.**

142.    Plaintiff Prins would not have provided his PII and PHI to Defendants had Defendants timely disclosed that its systems lacked adequate computer and data security practices to safeguard its patients' personal and health information from theft, and that those systems were subject to a data breach.

> **ANSWER:** **Pursuant to the Court's Order at ECF No. 45, Michael Prins has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Mr. Prins. To the extent an answer is required, Defendants deny Mr. Prins' allegations.**

143.    Plaintiff Prins suffered actual injury in the form of having his PII and PHI compromised and/or stolen as a result of the Data Breach.

> **ANSWER:** **Pursuant to the Court's Order at ECF No. 45, Michael Prins has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Mr. Prins. To the extent an answer is required, Defendants deny Mr. Prins' allegations.**

144.    Plaintiff Prins suffered actual injury in the form of damages to and diminution in the value of his personal, health, and financial information – a form of intangible property that Plaintiff Prins entrusted to Defendants for the purpose of receiving healthcare services from Defendants and which was compromised in, and as a result of, the Data Breach.

> **ANSWER:** **Pursuant to the Court's Order at ECF No. 45, Michael Prins has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Mr. Prins. To the extent an answer is required, Defendants deny Mr. Prins' allegations.**

145.    Plaintiff Prins suffered imminent and impending injury arising from the substantially increased risk of future fraud, identity theft, and misuse posed by his Private Information being placed in the hands of criminals.

> **ANSWER:** **Pursuant to the Court's Order at ECF No. 45, Michael Prins has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Mr. Prins. To the extent an answer is required, Defendants deny Mr. Prins' allegations.**

146.    Plaintiff Prins has a continuing interest in ensuring that his PII and PHI, which remain in the possession of Defendants, are protected and safeguarded from future breaches.

> **ANSWER:** **Pursuant to the Court's Order at ECF No. 45, Michael Prins has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Mr. Prins. To the extent an answer is required, Defendants deny Mr. Prins' allegations.**

147.    As a result of the Data Breach, Plaintiff Prins made reasonable efforts to mitigate the impact of the Data Breach, including but not limited to researching the Data Breach, reviewing financial accounts for any indications of actual or attempted identity theft or fraud, and researching the credit monitoring offered by Defendants. Plaintiff Prins has spent several hours dealing with the Data Breach, valuable time he otherwise would have spent on other activities.

> **ANSWER:** **Pursuant to the Court's Order at ECF No. 45, Michael Prins has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Mr. Prins. To the extent an answer is required, Defendants deny Mr. Prins' allegations.**

148.    As a result of the Data Breach, Plaintiff Prins has suffered anxiety as a result of the release of his PII and PHI, which he believed would be protected from unauthorized access and disclosure. These feelings include anxiety about unauthorized parties viewing, selling, and/or using his PII and PHI for purposes of committing cyber and other crimes against him including, but not limited to, fraud and identity theft. Plaintiff Prins is very concerned about this increased, substantial, and continuing risk, as well as the consequences that identity theft and fraud resulting from the Data Breach would have on his life.

> **ANSWER:** **Pursuant to the Court's Order at ECF No. 45, Michael Prins has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Mr. Prins. To the extent an answer is required, Defendants deny Mr. Prins' allegations.**

149.     As a result of the Data Breach, Plaintiff Prins anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the many harms caused by the Data Breach.

> **ANSWER:** **Pursuant to the Court's Order at ECF No. 45, Michael Prins has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Mr. Prins. To the extent an answer is required, Defendants deny Mr. Prins' allegations.**

*Plaintiff Jennifer Medenblik's Experience*

150.     When Plaintiff Medenblik became a patient of Defendants, they required that she provide them with substantial amounts of her PII and PHI.

> **ANSWER:** **Pursuant to the Court's Order at ECF No. 45, Jennifer Mendenblik has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Ms. Mendenblik. To the extent an answer is required, Defendants deny Ms. Mendenblik's allegations.**

151.     On or around June 2, 2023, Plaintiff Medenblik received a letter from Defendants informing her that her PII and PHI had been accessed during the Data Breach. The notice letter informed her that the Private Information impacted may have included her "name, address, date of birth, driver's license/state identification number, Social Security number, financial account information, medical record number, encounter number, Medicare or Medicaid identification number, mental or physical treatment/condition information, diagnosis code/information, date of service, admission/discharge date, prescription information, billing/claims information, personal representative or guardian name, and health insurance information."

> **ANSWER:** **Pursuant to the Court's Order at ECF No. 45, Jennifer Mendenblik has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Ms. Mendenblik. To the extent an answer is required, Defendants deny Ms. Mendenblik's allegations.**

152.     Plaintiff Medenblik suffered actual injury in the form of time spent dealing with the Data Breach and the increased risk of fraud resulting from the Data Breach and/or monitoring

her accounts for fraud.

> **ANSWER:** **Pursuant to the Court's Order at ECF No. 45, Jennifer Mendenblik has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Ms. Mendenblik. To the extent an answer is required, Defendants deny Ms. Mendenblik's allegations.**

153.     Plaintiff Medenblik would not have provided her PII and PHI to Defendants had Defendants timely disclosed that its systems lacked adequate computer and data security practices to safeguard its patients' personal and health information from theft, and that those systems were subject to a data breach.

> **ANSWER:** **Pursuant to the Court's Order at ECF No. 45, Jennifer Mendenblik has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Ms. Mendenblik. To the extent an answer is required, Defendants deny Ms. Mendenblik's allegations.**

154.     Plaintiff Medenblik suffered actual injury in the form of having her PII and PHI compromised and/or stolen as a result of the Data Breach. Plaintiff Medenblik also received a notification through Experian alerting her that her personal information was found on the dark web.

> **ANSWER:** **Pursuant to the Court's Order at ECF No. 45, Jennifer Mendenblik has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Ms. Mendenblik. To the extent an answer is required, Defendants deny Ms. Mendenblik's allegations.**

155.     Plaintiff Medenblik suffered actual injury in the form of damages to and diminution in the value of her personal, health, and financial information – a form of intangible property that Plaintiff Medenblik entrusted to Defendants for the purpose of receiving healthcare services from Defendants and which was compromised in, and as a result of, the Data Breach.

> **ANSWER:** **Pursuant to the Court's Order at ECF No. 45, Jennifer Mendenblik has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Ms. Mendenblik. To the extent an answer is required, Defendants deny Ms. Mendenblik's allegations.**

156.     Plaintiff Medenblik suffered imminent and impending injury arising from the

substantially increased risk of future fraud, identity theft, and misuse posed by her Private

Information being placed in the hands of criminals.

> **ANSWER:** **Pursuant to the Court's Order at ECF No. 45, Jennifer Mendenblik has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Ms. Mendenblik. To the extent an answer is required, Defendants deny Ms. Mendenblik's allegations.**

157.     Plaintiff Medenblik has a continuing interest in ensuring that her PII and PHI,

which remain in the possession of Defendants, are protected and safeguarded from future breaches.

> **ANSWER:** **Pursuant to the Court's Order at ECF No. 45, Jennifer Mendenblik has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Ms. Mendenblik. To the extent an answer is required, Defendants deny Ms. Mendenblik's allegations.**

158.     As a result of the Data Breach, Plaintiff Medenblik made reasonable efforts to

mitigate the impact of the Data Breach, including but not limited to researching the Data Breach,

reviewing financial accounts for any indications of actual or attempted identity theft or fraud, and

researching the credit monitoring offered by Defendants. Plaintiff Medenblik has spent several

hours dealing with the Data Breach, valuable time she otherwise would have spent on other

activities.

> **ANSWER:** **Pursuant to the Court's Order at ECF No. 45, Jennifer Mendenblik has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Ms. Mendenblik. To the extent an answer is required, Defendants deny Ms. Mendenblik's allegations.**

159.     As a result of the Data Breach, Plaintiff Medenblik has suffered anxiety as a result

of the release of her PII and PHI, which she believed would be protected from unauthorized access

and disclosure. These feelings include anxiety about unauthorized parties viewing, selling, and/or

using her PII and PHI for purposes of committing cyber and other crimes against her including,

but not limited to, fraud and identity theft. Plaintiff Medenblik is very concerned about this

increased, substantial, and continuing risk, as well as the consequences that identity theft and fraud

resulting from the Data Breach would have on her life.

> **ANSWER:** **Pursuant to the Court's Order at ECF No. 45, Jennifer Mendenblik has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Ms. Mendenblik. To the extent an answer is required, Defendants deny Ms. Mendenblik's allegations.**

160.     As a result of the Data Breach, Plaintiff Medenblik anticipates spending considerable time and money on an ongoing basis to try to mitigate and address the many harms caused by the Data Breach.

> **ANSWER:** **Pursuant to the Court's Order at ECF No. 45, Jennifer Mendenblik has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Ms. Mendenblik. To the extent an answer is required, Defendants deny Ms. Mendenblik's allegations.**

161.     In sum, Plaintiffs and Class Members have been damaged by the compromise of their Private Information in the Data Breach.

> **ANSWER:** **Pursuant to the Court's Order at ECF No. 45, Jennifer Mendenblik has been dismissed from the matter. Therefore, Defendant makes no answer to the allegations put forth by Ms. Mendenblik. To the extent an answer is required, Defendants deny Ms. Mendenblik's allegations.**

*Plaintiff Jeremy Shine*

162.     Plaintiff Shine is Defendants' patient and has sought medical care from Defendants in several instances.

> **ANSWER:** **Defendant MercyOne Clinton admits that Plaintiff Shine sought medical care from it and was a patient of MercyOne Clinton. Mercy Health denies all allegations contained in paragraph 162 of Plaintiffs' Consolidated Class Action Complaint.**

163.     Plaintiff Shine is very careful about sharing his Private Information. Plaintiff Harris has never knowingly transmitted unencrypted sensitive PII over the internet or any other unsecured source. Plaintiff Shine stores any documents containing his sensitive PII in a safe and secure location or destroys the documents. Moreover, Plaintiff Shine diligently chooses unique usernames and passwords for his various online accounts.

**ANSWER:**   **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 163.**

164.   Plaintiff Shine only allowed Defendant to maintain, store, and use his Private Information because he believed that Defendant would use basic security measures to protect his Private Information, such as requiring passwords and multi-factor authentication to access databases storing his Private Information. As a result, Plaintiff's Private Information was within the possession and control of Defendant at the time of the Data Breach.

**ANSWER:**   **Defendants deny the allegations contained in paragraph 164 of Plaintiffs' Consolidated Class Action Complaint.**

165.   Plaintiff Shine received the Notice of Data Breach Letter that his Private Information was involved in the Data Breach on or around May 23, 2023. It stated, in relevant part, that Plaintiff's name, date of birth, address, and Social Security number were disclosed in the Data Breach.

**ANSWER:**   **Defendant MercyOne Clinton admits that it sent a Notice of Privacy Incident to Plaintiff Shine. Defendant MercyOne Clinton denies the remaining allegations contained in paragraph 165 of Plaintiffs' Consolidated Class Action Complaint. Mercy Health denies all allegations contained in paragraph 165 of Plaintiffs' Consolidated Class Action Complaint.**

166.   Plaintiff Shine suffered injury from a loss of privacy the moment that his Private Information was accessed and exfiltrated by a third party without authorization.

**ANSWER:**   **Defendants deny the allegations contained in paragraph 166 of Plaintiffs' Consolidated Class Action Complaint.**

167.   Plaintiff Shine has also suffered injury in the form of damages to and diminution in the value of his Private Information—a form of intangible property that Plaintiff entrusted to Defendant.

**ANSWER:**   **Defendants deny the allegations contained in paragraph 167 of Plaintiffs' Consolidated Class Action Complaint.**

168.     As a result of the Data Breach, Plaintiff Shine has received notifications that his information was shared on the dark web on at least 12 occasions.

**ANSWER:     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 168.**

169.     As a result of the Data Breach, Plaintiff Shine has seen fraudulent vehicles on his credit report.

**ANSWER:     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 169.**

170.     As a result of the Data Breach, Plaintiff Shine saw a third party attempted to obtain a new line of credit through Plaintiff's credit card account.

**ANSWER:     Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 170.**

171.     The Data Breach has also caused Plaintiff Shine to suffer imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from his Private Information being placed in the hands of criminals.

**ANSWER:     Defendants deny the allegations contained in paragraph 171 of Plaintiffs' Consolidated Class Action Complaint.**

172.     This risk from the Data Breach has caused Plaintiff Shine to spend significant time dealing with issues related to the Data Breach, which includes time spent verifying the legitimacy of the Notice of Data Breach, and self-monitoring his accounts and credit reports to ensure no fraudulent activity has occurred. This time, which has been lost forever and cannot be recaptured, was spent at Defendants' direction.

**ANSWER:     Defendants deny the allegations contained in paragraph 172 of Plaintiffs' Consolidated Class Action Complaint.**

173.     The substantial risk of imminent harm and loss of privacy have caused Plaintiff Harris to suffer stress, fear, and anxiety. This risk is especially magnified because Plaintiff's Social

Security number and name were exposed together, meaning third parties are more likely to access his financial accounts.

> **ANSWER:**   **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 173, but deny that Plaintiff suffered a "substantial risk of imminent harm and loss of privacy."**

174.   Plaintiff Harris has a continuing interest in ensuring that his Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected, and safeguarded from future breaches.

> **ANSWER:**   **Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 174.**

## V.   CLASS ACTION ALLEGATIONS

175.   Plaintiffs bring this action individually and on behalf of all other persons similarly situated, pursuant to Fed R. Civ. P. 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and 23(c)(4).

> **ANSWER:**   **Defendants acknowledge that Plaintiffs have filed the instant lawsuit individually and on behalf of a purported class, but deny the allegations.**

176.   Specifically, Plaintiffs propose the following Class, subject to amendment as appropriate:

> All individuals in the United States who had their Private Information either accessed or acquired as a result of the Data Breach, including all who were sent a notice of the Data Breach.

> **ANSWER:**   **Defendants acknowledge that Plaintiffs have filed the instant lawsuit individually and on behalf of a purported class, but deny the allegations.**

177.   Excluded from the Class are Defendants and their parents or subsidiaries, any entities in which they have a controlling interest, as well as their officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded is any Judge to whom this case is assigned as well as their judicial staff and immediate family members.

> **ANSWER:** **Defendants acknowledge that Plaintiffs have filed the instant lawsuit individually and on behalf of a purported class, but deny the allegations.**

178.     Plaintiffs reserve the right to modify or amend the definitions of the proposed Class before the Court determines whether certification is appropriate.

> **ANSWER:** **Defendants acknowledge that Plaintiffs have filed the instant lawsuit individually and on behalf of a purported class, but deny the allegations.**

179.     Numerosity. The Class Members are so numerous that joinder of all members is impracticable. Though the exact number and identities of Class Members are unknown at this time, based on information and belief, the Class consists of over 20,000 patients of MercyOne whose data was compromised in the Data Breach. The identities of Class Members are ascertainable through MercyOne's records, Class Members' records, publication notice, self-identification, and other means.

> **ANSWER:** **Defendants deny the allegations contained in paragraph 179 of Plaintiffs' Consolidated Class Action Complaint.**

180.     <u>Commonality</u>. There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

a.     Whether MercyOne engaged in the conduct alleged herein;

b.     Whether MercyOne's conduct violated the FTCA and/or HIPAA;

c.     When MercyOne learned of the Data Breach;

d.     Whether MercyOne's response to the Data Breach was adequate;

e.     Whether MercyOne unlawfully lost or disclosed Plaintiffs' and Class Members' Private Information;

f.     Whether MercyOne failed to implement and maintain reasonable security

procedures and practices appropriate to the nature and scope of the Private Information compromised in the Data Breach;

g. Whether MercyOne's data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

h. Whether MercyOne's data security systems prior to and during the Data Breach were consistent with industry standards;

i. Whether MercyOne owed a duty to Class Members to safeguard their Private Information;

j. Whether MercyOne breached its duty to Class Members to safeguard their Private Information;

k. Whether hackers obtained Class Members' Private Information via the Data Breach;

l. Whether MercyOne had a legal duty to provide timely and accurate notice of the Data Breach to Plaintiffs and the Class Members;

m. Whether MercyOne breached its duty to provide timely and accurate notice of the Data Breach to Plaintiffs and Class Members;

n. Whether MercyOne knew or should have known that its data security systems and monitoring processes were deficient;

o. What damages Plaintiffs and Class Members suffered as a result of MercyOne's misconduct;

p. Whether MercyOne's conduct was negligent;

q. Whether MercyOne's conduct was per se negligent;

r. Whether MercyOne was unjustly enriched;

s.      Whether Plaintiffs and Class Members are entitled to actual and/or statutory

damages;

t.      Whether Plaintiffs and Class Members are entitled to additional credit or identity

monitoring and monetary relief; and

u.      Whether Plaintiffs and Class Members are entitled to equitable relief, including

injunctive relief, restitution, disgorgement, and/or the establishment of a

constructive trust.

**ANSWER:**      **Defendants deny the allegations contained in paragraph 180 and subsections (a)-(u) of Plaintiffs' Consolidated Class Action Complaint.**

181.    <u>Typicality</u>. Plaintiffs' claims are typical of those of other Class Members because

Plaintiffs' Private Information, like that of every other Class Member, was compromised in the

Data Breach. Plaintiffs' claims are typical of those of the other Class Members because, *inter alia*,

all Class Members were injured through the common misconduct of MercyOne. Plaintiffs are

advancing the same claims and legal theories on behalf of themselves and all other Class Members,

and there are no defenses that are unique to Plaintiffs. The claims of Plaintiffs and those of Class

Members arise from the same operative facts and are based on the same legal theories.

**ANSWER:**      **Defendants deny the allegations contained in paragraph 181 of Plaintiffs' Consolidated Class Action Complaint, and further deny that Plaintiffs have pled legally sufficient claims on behalf of themselves or any purported class.**

182.    <u>Adequacy of Representation</u>. Plaintiffs will fairly and adequately represent and

protect the interests of Class Members. Plaintiffs' counsel is competent and experienced in

litigating class actions, including data privacy litigation of this kind.

**ANSWER:**      **Defendants deny the allegations contained in paragraph 182 of Plaintiffs' Consolidated Class Action Complaint.**

183.    <u>Predominance</u>. MercyOne has engaged in a common course of conduct toward

Plaintiffs and Class Members in that all of Plaintiffs' and Class Members' data was stored on the same computer systems and unlawfully accessed and exfiltrated in the same way. The common issues arising from MercyOne's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

> **ANSWER:** **Defendants deny the allegations contained in paragraph 183 of Plaintiffs' Consolidated Class Action Complaint.**

184.    <u>Superiority</u>. A class action is superior to other available methods for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for MercyOne. In contrast, conducting this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

> **ANSWER:** **Defendants deny the allegations contained in paragraph 184 of Plaintiffs' Consolidated Class Action Complaint.**

185.    Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2). MercyOne has acted and/or refused to act on grounds generally applicable to the Class such that final injunctive relief and/or corresponding declaratory relief is appropriate as to the Class as a whole.

> **ANSWER:** **Defendants acknowledge that Plaintiffs have filed the instant lawsuit individually and on behalf of a purported class, but deny the allegations.**

186.     Likewise, particular issues under Rule 23(c)(4) are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to:

a.      Whether Defendants owed a legal duty to Plaintiffs and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

b.      Whether Defendants breached a legal duty to Plaintiffs and Class Members to exercise due care in collecting, storing, using, and safeguarding their Private Information;

c.      Whether Defendants failed to comply with their own policies and applicable laws, regulations, and industry standards relating to data security;

d.      Whether an implied contract existed between Defendants on the one hand, and Plaintiffs and Class Members on the other, and the terms of that implied contract;

e.      Whether Defendants breached the implied contract;

f.      Whether Defendants adequately and accurately informed Plaintiffs and Class Members that their Private Information had been compromised;

g.      Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

h.      Whether Class Members are entitled to actual, consequential, and/or nominal damages, and/or injunctive relief as a result of Defendants' wrongful conduct.

**ANSWER:     Defendants deny the allegations contained in paragraph 186 and subsections (a)-(h) of Plaintiffs' Consolidated Class Action Complaint.**

187.     Finally, all members of the proposed Class are readily ascertainable. MercyOne has access to the names and addresses and/or email addresses of Class Members affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by MercyOne.

**ANSWER:     Defendants acknowledge that Plaintiffs have filed the instant lawsuit individually and on behalf of a purported class, but deny the allegations.**

## CLAIMS FOR RELIEF

## COUNT I
## NEGLIGENCE
## (ON BEHALF OF PLAINTIFFS AND THE CLASS)

188.     Plaintiffs restate and reallege all of the allegations stated above and hereafter as if fully set forth herein.

**ANSWER:**     **Defendants hereby adopt and incorporate their responses to the allegations contained in paragraphs 1 through 188 of Plaintiffs' Consolidated Class Action Complaint as their answers to paragraph 188 as if fully set forth herein.**

189.     MercyOne knowingly collected, came into possession of, and maintained Plaintiffs' and Class Members' Private Information, and had a duty to exercise reasonable care in safeguarding, securing, and protecting such Information from being disclosed, compromised, lost, stolen, and misused by unauthorized parties.

**ANSWER:**     **Defendants deny that the allegations contained in paragraph 189 of Plaintiffs' Consolidated Class Action Complaint fully and accurately describe any duty owed by Defendants to Plaintiffs and other putative members of the alleged Class, and therefore said allegations are denied. Further answering, Defendant MercyOne Clinton admits only that it may have collected and maintained certain information in the course of providing medical services. Further answering, Defendant MercyOne Clinton denies the remaining allegations. Mercy Health denies the remaining allegations contained in paragraph 189 of Plaintiffs' Consolidated Class Action Complaint.**

190.     MercyOne knew or should have known of the risks inherent in collecting the Private Information of Plaintiffs and Class Members and the importance of adequate security. MercyOne was on notice because, on information and belief, it knew or should have known that it would be an attractive target for cyberattacks.

**ANSWER:**     **Defendants deny the allegations contained in paragraph 190 of Plaintiffs' Consolidated Class Action Complaint.**

191.     MercyOne owed a duty of care to Plaintiffs and Class Members whose Private

Information was entrusted to it. MercyOne's duties included, but were not limited to, the following:

    a.  To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information in its possession;

    b.  To protect patients' Private Information using reasonable and adequate security procedures and systems compliant with industry standards;

    c.  To have procedures in place to prevent the loss or unauthorized dissemination of Private Information in its possession;

    d.  To employ reasonable security measures and otherwise protect the Private Information of Plaintiffs and Class Members pursuant to HIPAA and the FTCA;

    e.  To implement processes to quickly detect a data breach and to timely act on warnings about data breaches; and

    f.  To promptly notify Plaintiffs and Class Members of the Data Breach, and to precisely disclose the type(s) of information compromised

    **ANSWER:**    **Defendants deny that they breached any duty of care owed to Plaintiffs and putative members of the alleged Class, and further deny that the allegations contained in paragraph 191 of Plaintiffs' Consolidated Class Action Complaint fully and accurately describe any duties owed by Defendants to Plaintiffs and other putative members of the alleged Class, and therefore said allegations are denied.**

192.    MercyOne's duty to employ reasonable data security measures arose, in part, under Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair practice of failing to use reasonable measures to protect confidential data.

    **ANSWER:**    **Defendants admit to the existence of the Federal Trade Commission Act, but deny that the allegations contained in paragraph 192 of Plaintiffs' Consolidated Class Action Complaint fully and accurately describe any duties imposed by the Federal Trade Commission Act, or**

**that they are subject to that act.  Defendants deny the remaining allegations in Paragraph 192.**

193.    MercyOne's duty also arose because Defendants were bound by industry standards to protect patients' confidential Private Information.

> **ANSWER:    Defendants deny that the allegations contained in paragraph 193 fully and accurately describe any "industry standards," and therefore said allegations are denied. Further answering, Defendants deny the remaining allegations contained in Paragraph 193 of Plaintiffs' Consolidated Class Action Complaint.**

194.    Plaintiffs and Class Members were foreseeable victims of any inadequate security practices on the part of Defendants, and MercyOne owed them a duty of care to not subject them to an unreasonable risk of harm.

> **ANSWER:    Defendants deny the allegations contained in paragraph 194 of Plaintiffs' Consolidated Class Action Complaint.**

195.    MercyOne, through its actions and/or omissions, unlawfully breached its duty to Plaintiffs and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class Members' Private Information within MercyOne's possession.

> **ANSWER:    Defendants deny the allegations contained in paragraph 195 of Plaintiffs' Consolidated Class Action Complaint.**

196.    MercyOne, by its actions and/or omissions, breached its duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the Private Information of Plaintiffs and Class Members.

> **ANSWER:    Defendants deny the allegations contained in paragraph 196 of Plaintiffs' Consolidated Class Action Complaint.**

197.    MercyOne, by its actions and/or omissions, breached its duty of care by failing to promptly identify the Data Breach and then failing to provide prompt notice of the Data Breach to the persons whose Private Information was compromised.

> **ANSWER:**   **Defendants deny the allegations contained in paragraph 197 of Plaintiffs' Consolidated Class Action Complaint.**

198.   MercyOne breached its duties, and thus was negligent, by failing to use reasonable measures to protect Class Members' Private Information. The specific negligent acts and omissions committed by Defendants include, but are not limited to, the following:

  a.   Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information;

  b.   Failing to adequately monitor the security of its networks and systems;

  c.   Failing to periodically ensure that its email system maintained reasonable data security safeguards;

  d.   Allowing unauthorized access to Class Members' Private Information;

  e.   Failing to comply with the FTCA; and

  f.   Failing to detect in a timely manner that Class Members' Private Information had been compromised.

> **ANSWER:**   **Defendants deny the allegations contained in paragraph 198 and subsections (a)-(f) of Plaintiffs' Consolidated Class Action Complaint.**

199.   MercyOne had a special relationship with Plaintiffs and Class Members. Plaintiffs' and Class Members' willingness to entrust MercyOne with their Private Information was predicated on the understanding that MercyOne would take adequate security precautions. Moreover, only MercyOne had the ability to protect its systems (and the Private Information that it stored on them) from attack.

> **ANSWER:**   **Defendants are without knowledge or information sufficient to form a belief as to the allegations contained in this paragraph as it pertains to Plaintiffs' and Class Members' "willingness to entrust MercyOne," and/or their "understanding." Defendants deny the remaining allegations contained in paragraph 197 of Plaintiffs' Consolidated Class Action Complaint.**

200.     MercyOne's breach of duties owed to Plaintiffs and Class Members caused Plaintiffs' and Class Members' Private Information to be compromised, exfiltrated, and/or misused, as alleged herein.

> **ANSWER:     Defendants deny the allegations contained in paragraph 200 of Plaintiffs' Consolidated Class Action Complaint.**

201.     As a result of MercyOne's ongoing failure to notify Plaintiffs and Class Members regarding exactly what Private Information has been compromised, Plaintiffs and Class Members have been unable to take the necessary precautions to prevent future fraud and mitigate damages.

> **ANSWER:     Defendants deny the allegations contained in paragraph 200 of Plaintiffs' Consolidated Class Action Complaint.**

202.     MercyOne's breaches of duty also caused a substantial, imminent risk to Plaintiffs and Class Members of identity theft, loss of control over their Private Information, and/or loss of time and money to monitor their accounts for fraud.

> **ANSWER:     Defendants deny the allegations contained in paragraph 202 of Plaintiffs' Consolidated Class Action Complaint.**

203.     As a result of MercyOne's negligence in breach of its duties owed to Plaintiffs and Class Members, Plaintiffs and Class Members are in danger of imminent harm in that their Private Information, which is still in the possession of third parties, will be used for fraudulent purposes.

> **ANSWER:     Defendants deny the allegations contained in paragraph 203 of Plaintiffs' Consolidated Class Action Complaint.**

204.     MercyOne also had independent duties under state laws that required it to reasonably safeguard Plaintiffs' and Class Members' Private Information and promptly notify them about the Data Breach.

> **ANSWER:     Defendants deny the allegations contained in paragraph 204 of Plaintiffs' Consolidated Class Action Complaint.**

205.     As a direct and proximate result of MercyOne's negligent conduct, Plaintiffs and

Class Members have suffered damages as alleged herein and are at imminent risk of further harm.

> **ANSWER:**   **Defendants deny the allegations contained in paragraph 205 of Plaintiffs' Consolidated Class Action Complaint.**

206.    The injury and harm that Plaintiffs and Class Members suffered was reasonably foreseeable.

> **ANSWER:**   **Defendants deny the allegations contained in paragraph 206 of Plaintiffs' Consolidated Class Action Complaint.**

207.    Plaintiffs and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

> **ANSWER:**   **Defendants deny the allegations contained in paragraph 207 of Plaintiffs' Consolidated Class Action Complaint.**

208.    In addition to monetary relief, Plaintiffs and Class Members are also entitled to injunctive relief requiring MercyOne to, inter alia, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Member .

> **ANSWER:**   **Defendants deny the allegations contained in paragraph 208 of Plaintiffs' Consolidated Class Action Complaint.**

## COUNT II
### NEGLIGENCE *PER SE*
### (ON BEHALF OF PLAINTIFFS AND THE CLASS)

209.    Plaintiffs restate and reallege the allegations in the preceding paragraphs as if fully set forth herein.

> **ANSWER:**   **Defendants hereby adopt and incorporate their responses to the allegations contained in paragraphs 1 through 208 of Plaintiffs' Consolidated Class Action Complaint as their answers to paragraph 209 as if fully set forth herein.**

210.    Pursuant to Section 5 of the FTCA, MercyOne had a duty to provide fair and adequate computer systems and data security to safeguard the Private Information of Plaintiffs and Class Members.

> **ANSWER:** **Defendants admit to the existence of the Federal Trade Commission Act, but deny that the allegations contained in paragraph 210 of Plaintiffs' Consolidated Class Action Complaint fully and accurately describe any duties imposed by the Federal Trade Commission Act, and deny that they are subject to that Act. Defendants deny the remaining allegations in Paragraph 210.**

211. Pursuant to HIPAA, 42 U.S.C. § 1302(d), et seq., MercyOne had a duty to implement reasonable safeguards to protect Plaintiffs' and Class Members' Private Information.

> **ANSWER:** **Defendants admit to the existence of HIPAA, but deny that the remaining allegations contained in paragraph 211 of Plaintiffs' Consolidated Class Action Complaint.**

212. Specifically, pursuant to HIPAA, Defendants had a duty to render the electronic PHI it maintained unusable, unreadable, or indecipherable to unauthorized individuals by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without the use of a confidential process or key." See definition of "encryption" at 45 C.F.R. § 164.304.

> **ANSWER:** **Defendants admit to the existence of HIPAA and that this paragraph purports to quote from 45 C.F.R. § 164.304, but deny that the remaining allegations contained in paragraph 212 of Plaintiffs' Consolidated Class Action Complaint.**

213. MercyOne breached its duties to Plaintiffs and Class Members under the FTCA and HIPAA by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' Private Information.

> **ANSWER:** **Defendants deny the allegations contained in paragraph 213 of Plaintiffs' Consolidated Class Action Complaint.**

214. Specifically, MercyOne breached its duties by failing to employ industry-standard cybersecurity measures in order to comply with the FTCA, including but not limited to proper segregation, access controls, password protection, encryption, intrusion detection, secure destruction of unnecessary data, and penetration testing.

> **ANSWER:**   **Defendants deny the allegations contained in paragraph 214 of Plaintiffs' Consolidated Class Action Complaint.**

215.    The FTCA prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice of failing to use reasonable measures to protect PII and PHI (such as the Private Information compromised in the Data Breach). The FTC rulings and publications described above, together with the industry-standard cybersecurity measures set forth herein, form part of the basis of MercyOne's duty in this regard.

> **ANSWER:**   **Defendants admit to the existence of the FTCA, but deny the remaining allegations in paragraph 215 of Plaintiffs' Consolidated Class Action Complaint.**

216.    MercyOne also violated the FTCA and HIPAA by failing to use reasonable measures to protect the Private Information of Plaintiffs and the Class and by not complying with applicable industry standards, as described herein.

> **ANSWER:**   **Defendants deny the allegations contained in paragraph 216 of Plaintiffs' Consolidated Class Action Complaint.**

217.    It was reasonably foreseeable, particularly given the growing number of data breaches of Private Information, that the failure to reasonably protect and secure Plaintiffs' and Class Members' Private Information in compliance with applicable laws would result in an unauthorized third-party gaining access to MercyOne's networks, databases, and computers that stored Plaintiffs' and Class Members' unencrypted Private Information.

> **ANSWER:**   **Defendants deny the allegations contained in paragraph 217 of Plaintiffs' Consolidated Class Action Complaint.**

218.    Plaintiffs and Class Members are within the class of persons that the FTCA and HIPAA are intended to protect and MercyOne's failure to comply with both constitutes negligence per se.

> **ANSWER:**   **Defendants deny the allegations contained in paragraph 218 of Plaintiffs' Consolidated Class Action Complaint.**

219.    Plaintiffs' and Class Members' Private Information constitutes personal property that was stolen due to MercyOne's negligence, resulting in harm, injury, and damages to Plaintiffs and Class Members.

>   **ANSWER:    The allegations contained in paragraph 219 of Plaintiffs' Consolidated Class Action Complaint include improper legal conclusions which do not require a response. To the extent a response is required, Defendants deny the allegations contained in paragraph 219 of Plaintiffs' Consolidated Class Action Complaint.**

220.    As a direct and proximate result of MercyOne's negligence per se, Plaintiffs and the Class have suffered, and continue to suffer, injuries and damages arising from the unauthorized access of their Private Information, including but not limited to damages from the actual and/or future risk of misuse of their Private Information and the lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives.

>   **ANSWER:    Defendants deny the allegations contained in paragraph 220 of Plaintiffs' Consolidated Class Action Complaint.**

221.    As a direct and proximate result of MercyOne's negligent conduct, Plaintiffs and Class Members have suffered injury and are entitled to compensatory and consequential damages in an amount to be proven at trial.

>   **ANSWER:    Defendants deny the allegations contained in paragraph 221 of Plaintiffs' Consolidated Class Action Complaint.**

222.    In addition to monetary relief, Plaintiffs and Class Members are also entitled to injunctive relief requiring MercyOne to, inter alia, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members.

>   **ANSWER:    Defendants deny the allegations contained in paragraph 222 of Plaintiffs' Consolidated Class Action Complaint.**

**COUNT III**
**BREACH OF CONTRACT**
**(ON BEHALF OF PLAINTIFFS AND THE CLASS)**

Pursuant to the Court's June 26, 2024 Order, at ECF No. 45, Count III of Plaintiffs' Consolidated Class Action Complaint for Breach of Contract is dismissed. Therefore, Defendants make no answer to the allegations in Count III of Plaintiffs' Consolidated Class Action Complaint. To the extent an answer is required, all allegations pertaining to Count III are denied.

**COUNT IV**
**BREACH OF IMPLIED CONTRACT**
**(ON BEHALF OF PLAINTIFFS AND THE CLASS)**

Pursuant to the Court's June 26, 2024 Order, at ECF No. 45, Count IV of Plaintiffs' Consolidated Class Action Complaint for Breach of Implied Contract is dismissed. Therefore, Defendants make no answer to the allegations in Count IV of Plaintiffs' Consolidated Class Action Complaint. To the extent an answer is required, all allegations pertaining to Count IV are denied.

**COUNT V**
**UNJUST ENRICHMENT**
**(ON BEHALF OF PLAINTIFFS AND THE CLASS)**

Pursuant to the Court's June 26, 2024 Order, at ECF No. 45, Count V of Plaintiffs' Consolidated Class Action Complaint for Unjust Enrichment is dismissed. Therefore, Defendants make no answer to the allegations in Count V of Plaintiffs' Consolidated Class Action Complaint. To the extent an answer is required, all allegations pertaining to Count V are denied.

**COUNT VI**
**BREACH OF CONFIDENCE**
**(ON BEHALF OF PLAINTIFFS AND THE CLASS)**

Pursuant to the Court's June 26, 2024 Order, at ECF No. 45, Count VI of Plaintiffs' Consolidated Class Action Complaint for Breach of Confidence is dismissed. Therefore, Defendants make no answer to the allegations in Count VI of Plaintiffs' Consolidated Class Action Complaint. To the extent an answer is required, all allegations pertaining to Count VI are denied.

**COUNT VII**
**BREACH OF FIDUCIARY DUTY**
**(ON BEHALF OF PLAINTIFFS AND THE CLASS)**

Pursuant to the Court's June 26, 2024 Order, at ECF No. 45, Count VII of Plaintiffs' Consolidated Class Action Complaint for Breach of Fiduciary Duty is dismissed. Therefore, Defendants make no answer to the allegations in Count VII of Plaintiffs' Consolidated Class Action Complaint. To the extent an answer is required, all allegations pertaining to Count VII are denied.

## COUNT VIII
## DECLARATORY AND INJUNCTIVE RELIEF
## (ON BEHALF OF PLAINTIFFS AND THE CLASS)

Pursuant to the Court's June 26, 2024 Order, at ECF No. 45, Count VIII of Plaintiffs' Consolidated Class Action Complaint for Declaratory and Injunctive Relief is dismissed. Therefore, Defendants make no answer to the allegations in Count VIII of Plaintiffs' Consolidated Class Action Complaint. To the extent an answer is required, all allegations pertaining to Count VIII are denied.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class described above, seek the following relief:

a. An order certifying this action as a Class action under Fed. R. Civ. P. 23, defining the Class as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiffs are proper representatives of the Class requested herein;

b. Judgment in favor of Plaintiffs and Class Members awarding them appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs;

c. interests of the Class as requested herein, including but not limited to, the following measures:

1. engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on MercyOne's systems on a periodic basis, and ordering MercyOne to promptly correct any problems or issues detected by such third-party security auditors;

2. engaging third-party security auditors and internal personnel to run automated security monitoring;

3.  auditing, testing, and training its security personnel regarding any new or modified procedures;

4.  segmenting its user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of MercyOne's systems;

5.  conducting regular database scanning and security checks;

6.  routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach; and

7.  meaningfully educating its users about the threats they face with regard to the security of their Private Information, as well as the steps MercyOne's patients should take to protect themselves.

d.  An order instructing MercyOne to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members;

e.  An order requiring MercyOne to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

f.  A judgment in favor of Plaintiffs and Class Members awarding them prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

g.  An award of such other and further relief as this Court may deem just and proper.

**ANSWER:**   **Defendants deny that Plaintiffs, on behalf of themselves or the purported class, have sustained any damages whatsoever and further deny that the allegations contained in the Prayer for Relief represent legally cognizable damages and deny all remaining allegations.**

WHEREFORE, Defendants, Mercy Health Network, Inc. and Mercy Medical Center - Clinton, Inc., pray for judgment in their favor, and asks that this Honorable Court (1) dismiss Plaintiffs' Consolidated Class Action Complaint and enter judgment in Defendants' favor; (2) deny class certification; (3) award Defendants their attorney's fees and costs of suit incurred in defense of this action; and (4) grant such other and further relief as this Court deems just and proper.

## AFFIRMATIVE DEFENSES

Without admitting, acknowledging, or assuming any burden of proof that Defendants, Mercy Health Network, Inc. and Mercy Medical Center - Clinton, Inc., would not otherwise bear under law, and reserving the right to assert additional affirmative defenses as discovery progresses in this case, Defendants, by the undersigned counsel, hereby assert the following Affirmative Defenses to Plaintiffs' Consolidated Class Action Complaint, and state as follows:

### FIRST AFFIRMATIVE DEFENSE

Without admitting, acknowledging, or assuming any burdens of proof, Plaintiffs and the purported members of the alleged Class are not similarly situated. The claims of the Plaintiffs and the purported members of the alleged Class do not comport with Federal Rule of Civil Procedure 23, especially as they contain variable damages.

### SECOND AFFIRMATIVE DEFENSE

Without admitting, acknowledging, or assuming any burdens of proof, at all times, Defendants acted in good faith and had reasonable grounds for believing their actions were in compliance with state and federal regulations, including but not limited to, HIPAA and the FTCA.

### THIRD AFFIRMATIVE DEFENSE

Pursuant to this Court's June 26, 2024 Order, at ECF No. 45, to the extent Plaintiffs seek damages not recoverable under the economic loss doctrine, Plaintiffs are barred from such recovery.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiffs and the putative Class Members failed to mitigate their damages, if any, as required by law, and consequently are barred in whole or in part from recovering any damages from Defendants.  Plaintiffs and the putative Class Members' alleged injuries, losses, and damages, if any, were aggravated by their failure to use reasonable diligence to mitigate them.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiffs and the putative Class Members cannot recover to the extent that they were comparatively at fault.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiffs and the putative Class Members cannot recover to the extent that they were failed to file suit within the statute of limitations.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiffs and the putative Class Members cannot recover because they lack standing and compensable damages.

Defendants reserve the right to seek leave to plead additional defenses as information becomes available which could form the bases for such defenses.

### **DEFENDANTS DEMAND TRIAL BY JURY**

Dated: July 24, 2024

Respectfully submitted,

*/s/ Scott L. Schmookler*
Scott L. Schmookler (*pro hac vice*)
Jenna M. Miller (*pro hac vice*)
**GORDON REES SCULLY
MANSUKHANI, LLP**
One North Franklin, Suite 800
Chicago, IL 60606
(312) 565-1400
*sschmookler@grsm.com*
*jmmiller@grsm.com*

Thomas J. Joensen
**GORDON REES SCULLY
MANSUKHANI, LLP**
666 Grand Avenue, Suite 1701
Des Moines, IA 50309
*tjoensen@grsm.com*

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on July 24, 2024, I caused to be filed and served a true and correct copy of the foregoing document using the Court's Electronic Case Filing (ECF) system, which will send notification of such filing to all counsel of record registered to receive ECF Notices.

*/s/ Scott L. Schmookler*